Ira D. Tokayer, Esq. (IT-4734)
LAW OFFICES OF IRA DANIEL TOKAYER
42 West 38th Street, Suite 802
New York, NY 10018
Telephone:  (212) 695-5250
Facsimile:  (212) 695-5450
Email:  imtoke@mindspring.com

Peter M. Cho (State Bar No. 213870)
DAVID M. BASS & ASSOCIATES
1900 Avenue of the Stars
Suite 200
Los Angeles, California 90067
Telephone: (310) 789-1152
Facsimile:  (310) 789-1149
Email:  dbass@basslawla.com

Attorneys for Defendant SAMANTHA RONSON

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVIS & GILBERT LLP,<br><br>                Plaintiff,<br><br>    vs.<br><br>SAMANTHA RONSON,<br><br>            Defendant. | Index No. 08-CV-02876-JSR<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SAMANTHA RONSON'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; OR, IN THE ALTERNATIVE, TO DISMISS FOR IMPROPER VENUE; OR, IN THE ALTERNATIVE, TO TRANSFER FOR IMPROPER VENUE; OR, IN THE ALTERNATIVE, TO TRANSFER FOR CONVENIENCE**<br><br>Date:        July 15, 2008<br>Time:       5:00 p.m.<br>Courtroom:  14B |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT. ...................................................1

II.   FACTUAL BACKGROUND. .......................................................................................3
      A.    Ronson's Lack of Contacts with New York. ...........................................3
      B.    Lavandeira's False and Defamatory Postings Concerning Ronson. ........3
      C.    Ronson Meets Garbus in California and Retains Him in California to File
            the Defamation Action in California. .......................................................4
      D.    Lavandeira Files a Motion to Strike the Complaint, Which Garbus Fails to
            Properly Oppose. .....................................................................................5
      E.    D&G and Garbus Become Adverse to Ronson in October 2007. ...........6
      F.    Garbus Threatens to Sue and Publicly Embarrass Ronson. ...................7
      G.    Garbus Falsely Informs the Court and Opposing Counsel that Ronson has
            Discharged Him and D&G. ......................................................................8
      H.    Garbus Falsely Informs Ronson that She will have to Represent Herself at
            the Hearing on the Motion to Strike. .......................................................8
      I.    D&G and Garbus Abandon any Opposition to the Motion to Strike. ......9
      J.    D&G Files an Action Against Ronson while Still Counsel in the
            Defamation Action. ..................................................................................9
      K.    Ronson's Malpractice Action against D&G and Garbus. ......................10

III.  THIS COURT SHOULD DISMISS THIS ACTION BECAUSE IT MAY NOT
      PROPERLY EXERCISE PERSONAL JURISDICTION OVER RONSON ...................11
      A.    This Court May Not Properly Exercise General Jurisdiction over Ronson
            under Section 301 of the CPLR. .............................................................11
      B.    This Court May Not Properly Exercise Long-Arm Jurisdiction over
            Ronson under Section 302(a)(1) of the CPLR. ......................................14

IV.   THIS COURT SHOULD DISMISS THIS ACTION BECAUSE VENUE IS
      IMPROPER IN THIS DISTRICT. ...................................................................16

V.    ALTERNATIVELY, THIS COURT SHOULD TRANSFER THIS ACTION TO
      THE CENTRAL DISTRICT OF CALIFORNIA FOR THE CONVENIENCE OF
      THE PARTIES AND WITNESSES. ...................................................................19
      A.    Convenience of Witnesses. ....................................................................19
      B.    Convenience of the Parties. ....................................................................20
      C.    Locus of Operative Facts. .......................................................................20
      D.    Availability of Process to Compel Attendance of Unwilling Witnesses. .............20
      E.    Location of Documents and the Relative Ease of Access to Sources of
            Proof. .....................................................................................................20
      F.    A Forum's Familiarity with the Governing Law. ....................................21
      G.    Trial Efficiency and the Interest of Justice. ...........................................21
      H.    The Weight Accorded a Plaintiff's Choice of Forum. ............................21

VI.   CONCLUSION. ...................................................................................................21

## TABLE OF AUTHORITIES

**Page**

## CASES

*Avecmedia, Inc. v. Gottschalk,*
 2004 WL 1586411, at *6 n.2 (S.D.N.Y., July 14, 2004) .................................................. 13

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
 171 F.3d 779 (2d Cir.1999) ............................................................................................ 14

*Beatie and Osborn LLP v. Pacific Scientific Corp.,*
 431 F.Supp.2d 367 (S.D.N.Y. 2006) .............................................................................. 19

*Caulfield v. Imagine Advisors, Inc.,*
 2007 WL 4615504, *5 (S.D.N.Y. 2007) ........................................................................ 11

*Cooper, Robertson & Partners, L.L.P. v. Vail,*
 143 F.Supp.2d 367 (S.D.N.Y. 2001) .............................................................................. 15

*CutCo Indus., Inc. v. Naughton,*
 806 F.2d 361 (2d Cir. 1986) ........................................................................................... 14

*D'Amato v. Starr,*
 2007 WL 895793, *3 (E.D.N.Y. 2007) .......................................................................... 16

*D'Anton Jos, S.L. v. Doll Factory, Inc.,*
 937 F.Supp. 320 (S.D.N.Y. 1996) .................................................................................. 17

*Falconwood Fin. Corp. v. Griffin,*
 838 F.Supp. 836 (S.D.N.Y.1993) ................................................................................... 20

*French Transit, Ltd. v. Modern Coupon Sys. Inc.,*
 858 F.Supp. 22 (S.D.N.Y.1994) ..................................................................................... 17

*Gulf Ins. Co. v. Glasbrenner,*
 417 F.3d 353 ............................................................................................................. 16, 17

*Gulf Oil Corp. v. Gilbert,*
 330 U.S. 501, 67 S.Ct. 839 (1947) ................................................................................. 19

*Haar v. Armendaris Corp.,*
 31 N.Y.2d 1040, 342 N.Y.S.2d 70 (1973) ..................................................................... 16

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,*
 763 F.2d 55 (2d Cir.1985) ........................................................................................ 12, 13

*I.M.D. USA, Inc. v. Shalit,*
 92 F.Supp.2d 315 (S.D.N.Y. 2000) .......................................................................... 17, 18

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.,*
 131 F.Supp.2d 544 (S.D.N.Y. 2001) .............................................................................. 12

*Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,*
 918 F.2d 1039 (2d Cir.1990) ............................................................................... 12, 13, 14

## TABLE OF AUTHORITIES

**Page**

*McGowan v. Smith,*
52 N.Y.2d 268, 437 N.Y.S.2d 643 (1981) ............................................................ 12, 14

*Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l,*
245 F.Supp.2d 523 (S.D.N.Y. 2003) ....................................................................... 21

*Patel v. Patel,*
497 F.Supp.2d 419 (E.D.N.Y. 2007) ..................................................... 11, 12, 13, 14, 15

*PI, Inc. v. Quality Products, Inc.,*
907 F.Supp. 752 (S.D.N.Y. 1995) ............................................................................ 17

*Posven, C.A. v. Liberty Mut. Ins. Co.,*
303 F.Supp.2d 391 (S.D.N.Y. 2004) ....................................................................... 19

*Royal & Sunalliance v. British Airways,*
167 F.Supp.2d 573 (S.D.N.Y. 2001) ....................................................................... 21

*Saferstein v. Paul, Mardinly, Durham, James, Flandreu & Rodger, P.C.,*
927 F.Supp. 731 (S.D.N.Y. 1996) ............................................................................ 17

*Schnabel v. Ramsey Quantitative Sys., Inc.,*
322 F.Supp.2d 505 (S.D.N.Y.2004) ........................................................................ 19

*Solé Resort, S.A. de C.V. v. Allure Resorts Management, LLC,*
450 F.3d 100 (2d Cir. 2006) .................................................................................... 14

*Sunward Elec., Inc. v. McDonald,*
362 F.3d 17 (2d Cir.2004) ........................................................................................ 15

*Sunward Elecs., Inc. v. McDonald,*
362 F.3d 17 (2d Cir. 2004) ...................................................................................... 14

*Whitaker v. Am. Telecasting, Inc.,*
261 F.3d 196 (2d Cir.2001) ...................................................................................... 11

*Woodke v. Dahm,*
70 F.3d 983 (8th Cir. 1995) ...................................................................................... 17

## STATUTES

28 U.S.C. § 1391(a)(2) ..................................................................................... 16, 17

28 U.S.C. § 1404(a) ................................................................................................ 19

28 U.S.C. § 1406 ................................................................................................ 2, 18

California Code of Civil Procedure § 425.16 ...................................................... 1, 4, 5

CPLR § 301 ...................................................................................... 11, 12, 13, 14

CPLR § 302 ..................................................................................... 2, 11, 14, 15

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

### <u>OTHER AUTHORITIES</u>

14D C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 3d* (Thomson/West 2007) § 3806.1, at 233 .......................................................................... 17

### <u>RULES</u>

Federal Rules of Civil Procedure Rule 12(b)(2) ...................................................... 11, 16, 17, 18

## I.    <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>.

Defendant Samantha Ronson ("Ronson"), a Los Angeles resident, entered into a retainer agreement in Los Angeles with Plaintiff Davis & Gilbert, LLP, a New York law firm ("D&G"), in June, 2007, under which D&G agreed to represent Ronson in a libel suit against those who had defamed her.  D&G attorney Martin Garbus ("Garbus") filed a Complaint on behalf of Ronson in the Los Angeles County Superior Court (the "Defamation Action") and traveled to Los Angeles on several occasions in connection with the Defamation Action.

Unfortunately for Ronson, D&G's representation was utterly incompetent.  D&G and Garbus breached their fiduciary duty to Ronson by, among other things: (i) failing to advise Ronson that the Complaint might be subject to a Motion to Strike under section 425.16 of the California Code of Civil Procedure, thereby exposing Ronson to liability for attorneys' fees; (ii) failing to adequately respond to a Motion to Strike the Complaint; (iii) failing to depose a defendant pursuant to Court Order; (iv) becoming adverse to Ronson during the Defamation Action by threatening her with litigation and negative publicity; (v) misleading Ronson into believing she had to represent herself at the hearing on the Motion to Strike; (vi) failing to inform Ronson of a settlement proposal; and (vii) suing Ronson in New York for their exorbitant fees while they were still her counsel in the Defamation Action.[1]  D&G has now sued Ronson in New York a second time,[2] seeking more than $164,000 in fees.  This Court should grant this Motion, and bar D&G from suing Ronson in New York, for several separate reasons.

First, this Court should dismiss this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because it cannot properly exercise personal jurisdiction over Ronson.  D&G cannot demonstrate that Ronson's contacts with New York are substantial, continuous and

---

[1] As a result of their misconduct, on May 1, 2008, Ronson sued D&G and Garbus in an action entitled *Samantha Ronson v. Martin Garbus, et al.,* Los Angeles County Superior Court Case No. BC390043 (the "Malpractice Action"), alleging claims for breach of fiduciary duty and breach of contract, among others.  *See* Declaration of David M. Bass, submitted separately herewith ("Bass Decl."), ¶ 39 and Exhibit II.

[2] As this Court is aware, D&G dismissed its first lawsuit against Ronson in January 2008.  *See* Bass Decl., ¶ 37.

systematic so as to subject her to general jurisdiction.  Furthermore, D&G cannot establish that its claim for fees arises from any business activity transacted by Ronson in New York, so as to allow this Court to exercise "long arm jurisdiction" over her under CPLR § 302(a)(1).  On the contrary, Ronson's activities that form the basis for this action – her meetings with Garbus, her entry into a retainer agreement, and her alleged failure to pay D&G's fees and costs – all took place in Los Angeles.  Ronson simply does not have "minimum contacts" with New York sufficient for this Court to exercise jurisdiction over her.  For this reason alone, this Court should grant the Motion [*see* Section III, below].

Even if this Court determines that it properly may exercise jurisdiction over Ronson, it still should dismiss this action because venue is improper in this district.  Ronson is a resident of Los Angeles, California.  Moreover, D&G cannot satisfy its burden of establishing that a substantial part of the events or omissions giving rise to its claim occurred in this district.  Accordingly, this Court should dismiss the Complaint under 28 U.S.C. § 1406 [*see* Section IV, below].[3]

Finally, this Court should transfer this action to the Central District of California under the doctrine of *forum non conveniens,* even if it determines that personal jurisdiction and venue are proper.  With the exception of Garbus, all of the relevant witnesses, and all of those witnesses' documents, are located in Los Angeles.  It would be seriously inconvenient for these witnesses to travel to New York for trial.  Under these circumstances, it would be extremely burdensome and contrary to the interests of justice to force Ronson to defend herself in New York.  By contrast, it would not be burdensome for D&G to proceed against Ronson in Los Angeles.  Indeed, Garbus traveled to Los Angeles on several occasions during the course of the

---

[3] This Court should not transfer this action to the Central District of California.  Ronson already has sued D&G and Garbus in the Malpractice Action, which is pending in the Los Angeles County Superior Court.  Bass Decl., ¶ 39.  D&G already has appeared in Malpractice Action.  *Id.* It can bring its claim for fees as a Cross-Complaint in that action.  Under these circumstances, allowing separate actions involving the same underlying events to go forward in both state and federal court would violate the interest of justice.  *See* 28 U.S.C. § 1406(a) (where venue is improper, district court may transfer case to another judicial district where the action could have been brought only where the transfer "is in the interest of justice.")

Defamation Action.  Moreover, D&G already is defending itself against Ronson in Los Angeles

in the Malpractice Action.  Accordingly, this Court should grant Ronson's Motion under

28 U.S.C. § 1404 to transfer this action to the Central District of California [*see* Section V,

below].

## II.     FACTUAL BACKGROUND.

### A.     Ronson's Lack of Contacts with New York.

Ronson is a professional disc jockey who operates her business out of California.  Since

January 1, 2007, Ronson has resided in Los Angeles, California.  During that time, Ronson has

not: (i) owned, leased or maintained an office, a residence or a place of business in New York;

(ii) had a mailing address or a telephone listing in New York; (iii) had an interest in any real

property or tangible personal property in New York; (iv) had a  bank or savings and loan account

in New York; (v) appeared in any court in New York; and (vi) owned any stocks or securities in

New York.  Declaration of Samantha Ronson in support of the Motion, submitted separately

herewith ("Ronson Decl."), ¶¶ 2-6.

### B.     Lavandeira's False and Defamatory Postings Concerning Ronson.

On May 26, 2007, actress Lindsay Lohan ("Lohan") was involved in a minor traffic

accident in Los Angeles County (the "Accident").  Ronson was a passenger in Lohan's car at the

time of the Accident.  *Id.,* ¶ 11; Bass Decl., ¶ 4 and Exhibit A.  Less than one week later, Ronson

was shocked to learn that Mario Lavandeira, also known as Perez Hilton ("Lavandeira"), had

begun publishing a series of posts (the "Postings") concerning the Accident on his tabloid

website, www.perezhilton.com.  In the Postings, Lavandeira made various false and defamatory

statements regarding Ronson, including: (i) the cocaine found in Lohan's car belonged to

Ronson; (ii) Ronson had been selling out Lohan to the paparazzi; and (iii) Ronson was a "lezbot

DJ" who betrayed Lohan.  Ronson Decl., ¶¶ 13-14; Bass Decl., ¶ 5 and Exhibit B.  As a result of

the Postings, Ronson began to lose business and suffer extreme emotional distress and public

condemnation.  Ronson Decl., ¶ 15.

C.    **Ronson Meets Garbus in California and Retains Him in California to File the Defamation Action in California.**

At the time of the Postings, Ronson did not have an attorney who regularly represented her. Accordingly, in early June 2007, Ronson contacted a friend who worked as a publicist and crisis manager to discuss how to respond to the Postings. Ronson's friend promised to contact an attorney she knew in Los Angeles to discuss the Postings and whether Ronson could take legal action. Ronson Decl., ¶ 16.

Shortly thereafter, Ronson had a telephone conversation at her Los Angeles home with Garbus, a New York attorney who worked at D&G. Garbus proposed to meet Ronson in person at the Shutters Hotel in Santa Monica, California, to discuss her possible lawsuit against Lavandeira. That meeting, which took place at Shutters in early June 2007, was the first time that Ronson met Garbus. *Id., ¶¶* 17-18.

At the meeting, Garbus told Ronson that he and D&G would file an action on her behalf in the Los Angeles County Superior Court and represent her throughout the litigation. Garbus assured Ronson that he could competently litigate her case against Lavandeira in a California court, even though he was only licensed to practice in New York. Garbus never advised Ronson, however, that her claims might be subject to a "SLAPP" motion under section 425.16 of the California Code of Civil Procedure, which would expose Ronson to liability for Lavandeira's attorneys' fees. *Id., ¶* 18.

On or about June 15, 2007, Ronson received an "Engagement Letter" from D&G (the "Retainer Agreement") at her Los Angeles home. Ronson signed the Retainer Agreement at her home on June 19, 2007. In addition, Ronson paid D&G a $25,000 retainer in or about late June 2007. *Id., ¶* 19 and Exhibit A. Garbus retained Bingham McCutchen ("Bingham") to serve as local counsel. On or about July 12, 2007, D&G and Garbus filed the Defamation Action in the Los Angeles County Superior Court against Lavandeira and others. *Id., ¶* 20; Bass Decl., ¶ 6 and Exhibit C.

**D.    Lavandeira Files a Motion to Strike the Complaint, Which Garbus Fails to Properly Oppose.**

On or about September 4, 2007, Lavandeira filed a Motion to Strike the Complaint in the Defamation Action under section 425.16 of the California Code of Civil Procedure (the "Motion to Strike").  Lavandeira argued that: (i) section 425.16 applied to the Complaint because Ronson was a public figure; and (ii) Ronson lacked evidence that Lavandeira's statements were made with actual malice, and therefore could not establish an essential element of her defamation claim.  Bass Decl., ¶ 7 and Exhibit D.

On or about September 13, 2007, D&G and Garbus filed Ronson's opposition to the Motion to Strike (the "Opposition").  The Opposition was a two-page memorandum which only requested that the Court allow Ronson to conduct limited discovery for the purpose of opposing the Motion to Strike.  The Opposition did not give sufficient notice under the California Code of Civil Procedure to obtain such discovery.  Moreover, the Opposition did not substantively oppose the Motion to Strike, other than to summarily conclude that Lavandeira had not met his burden.  *Id.,* ¶ 8 and Exhibit E.  As Lavandeira noted in his Reply in support of the Motion to Strike, the Opposition filed by D&G and Garbus

> is, in actuality, no opposition at all.  In fact, **her entire argument in opposition literally consists of one sentence:** 'As Plaintiff's Opposition sets forth, defendants have not met their burden.'

*Id.,* ¶ 9 and Exhibit F (emphasis in original.)  The Reply added that, "[t]o make matters worse, **the Opposition appears to be a sloppily prepared 'cut and paste' from a different document**." *Id.,* (emphasis in original.)

On or about September 26, 2007, Garbus flew to Los Angeles to appear at the hearing on the Motion to Strike.  That day, Garbus filed an *Ex Parte* Application to Appear *Pro Hac Vice* in the Defamation Action, which the Court denied.  The Court continued the hearing on the Motion to Strike to October 10, 2007, and ordered the parties to file supplemental briefs concerning the public figure and malice issues on or before October 3, 2007.  *Id.,* ¶ 10 and Exhibit G.  D&G and Garbus timely filed Ronson's supplemental brief.  Ronson's supplemental brief, however, offered only conclusory arguments on the public figure and malice issues.  *Id.,* ¶ 11 and Exhibit H.

Garbus again traveled to Los Angeles to appear at the October 10, 2007 hearing on the Motion to Strike. At the hearing, the Court: (i) granted Ronson's request to depose Lavandeira on or before October 19, 2007; (ii) ordered the parties to submit further supplemental briefs following the deposition; and (iii) continued the hearing to November 1, 2007. *Id.,* ¶ 12 and Exhibit I. Counsel for the parties then set Lavandeira's deposition for October 19, 2007. *Id.,* ¶ 12.

**E.    D&G and Garbus Become Adverse to Ronson in October 2007.**

In October 2007, while proceedings in connection with the Motion to Strike were continuing, a dispute arose between Ronson and her attorneys, D&G and Garbus, over the payment of their fees and costs. Ronson and her business manager, Tom Reed ("Reed"), received an invoice from D&G, dated October 8, 2007 – the first invoice from the Defamation Action that Ronson recalls receiving. Ronson was shocked to learn that D&G had incurred $96,606 in attorneys' fees and almost $3,000 in costs in the two months from August 8, 2007 until October 7, 2007. More than $95,000 of the total fees were incurred by Garbus. Garbus never explained to Ronson the amount of fees that D&G had incurred in the Defamation Action. Ronson Decl., ¶¶ 23-25 and Exhibit B; Bass Decl., ¶ 13.

Thereafter, the relationship between Garbus and Ronson began to deteriorate. On October 11, 2007, Garbus acknowledged in an email that Ronson "had some questions" about the October 8, 2007 bill, but did not attempt to answer those questions in the email. Ronson Decl., ¶ 26; Bass Decl., ¶ 14 and Exhibit J. The next day, Garbus stated that he would not continue to "run up fees" and represent Ronson without a "substantial payment and a [payment] plan." Bass Decl., ¶ 15 and Exhibit K. On October 16, 2007, Garbus asked his co-counsel, Bingham attorney D. Wayne Jeffries ("Jeffries"), how to place "a lien on a file to protect fees." *Id.,* ¶ 17 and Exhibit M.

On October 17, 2007, Garbus sent Ronson an invoice for work in connection with the Defamation Action. Garbus described the invoice as "my final bill which, including the outstanding statements, totals $141,590.55." Garbus also attached a promissory "note for five

payments of the outstanding bills, starting November 1, 2007, at $28,318.11 each . . ."  Ronson never signed the promissory note.  Ronson Decl., ¶ 28; Bass Decl., ¶ 18 and Exhibit N.

**F.      Garbus Threatens to Sue and Publicly Embarrass Ronson.**

In addition to demanding payment from Ronson, Garbus threatened to sue Ronson for the attorneys' fees she allegedly owed, even though he was still her counsel.  On October 18, 2007, Garbus sent Ronson a draft declaration in support of a motion to withdraw as her counsel.  Garbus stressed that "I do not want to file this declaration.  Please call me."  Ronson Decl., ¶ 29; Bass Decl., ¶ 19 and Exhibit O.  Later that same day, Garbus sent an email to Ronson and Reed, in which he turned the prospect of filing the declaration into a threat against Ronson:  "The affidavit I sent you will get picked up on the blogs.  Avoid it."  Ronson Decl., ¶ 30; Bass Decl., ¶ 20 and Exhibit P.

On October 23, 2007, only nine days before the final hearing on the Motion to Strike, Garbus once again threatened to sue Ronson and warned of the resulting negative publicity.  This time, Garbus attached a draft Complaint against Ronson:

> Unless I hear from you by Wednesday [October 24, 2007] on the bills, I shall file a suit in New York for the payment of the legal bills.  A copy of the draft Summons and Verified Complaint is attached.  [¶]  Please don't force me to do it.  The blogs will pick it up.

Ronson Decl., ¶ 32; Bass Decl., ¶ 22 and Exhibit R.[4]

Notwithstanding his threats and demands for payment, Garbus recognized that he still owed certain obligations to Ronson because he was her lawyer.  In an October 12, 2007 email to Ronson and Reed, Garbus represented that he would "continue to represent [Ronson] until she does have a new attorney."  Ronson Decl., ¶ 27; Bass Decl., ¶ 16 and Exhibit L.  Furthermore, in an October 18, 2007 email to Ronson and Reed, Garbus noted that he could not stop representing Ronson until he received a consent to withdrawal:  "The mere fact that no one responded ***does not mean that one can walk away from the case.  A lawyer can't.  You can't prejudice a client***

---

[4] The draft Summons and Verified Complaint attached by Garbus are almost identical to the Summons and Verified Complaint filed by D&G in New York Supreme Court on November 13, 2007, only three weeks later.  *Compare* Bass Decl., ¶ 22 and Exhibit R (draft Complaint), *with id.,* ¶ 34 and Exhibit GG (Verified Complaint in the First New York Action).

***by not doing certain things.***" Ronson Decl., ¶ 31; Bass Decl., ¶ 21 and Exhibit Q (emphasis added).

### G.    Garbus Falsely Informs the Court and Opposing Counsel that Ronson has Discharged Him and D&G.

Garbus' recognition that he still owed certain duties to Ronson did not prevent him from misstating their relationship to others. In an October 16, 2007 letter to Lavandeira's counsel, Garbus incorrectly asserted that: (i) D&G and Bingham "have been discharged by" Ronson; (ii) they "no longer represent her in the suit" against Lavandeira; and (iii) they "have no authorization to take any actions on her behalf." Bass Decl., ¶ 23 and Exhibit S. In that same letter, Garbus confirmed his abandonment of Ronson in the Defamation Action: "[I]t is clear that [Ronson] will not have an attorney capable of taking the October 19th deposition [of Lavandeira] and will require that that deposition be taken at a later date." *Id.* In addition, Garbus incorrectly contended, in an October 16, 2007 letter to the Court, that his "firm and the Bingham McCutchen firm have been discharged" by Ronson. *Id.,* ¶ 24 and Exhibit T.

### H.    Garbus Falsely Informs Ronson that She will have to Represent Herself at the Hearing on the Motion to Strike.

On October 24, 2007, only one week before the November 1, 2007 hearing on the Motion to Strike, Garbus's co-counsel, Jeffries, sent an email to Garbus in which he made clear to Garbus that, without a new attorney in place, D&G would have to file a motion to withdraw as Ronson's counsel and that "[s]omeone has to represent her in this case." Bass Decl., ¶ 25 and Exhibit V. Nevertheless, Garbus sent an email to Ronson and Reed that same day, in which he advised Ronson that unless she had a new lawyer before the November 1, 2007 hearing, ***Ronson "must appear on her own behalf."*** *Id.,* ¶ 26 and Exhibit W (emphasis added); Ronson Decl., ¶ 33.

Faced with the possibility that she would have to appear at the hearing and represent herself, Ronson asked Garbus to dismiss the case. *Id.,* ¶ 27 and Exhibit X; Ronson Decl., ¶ 34. In response, Garbus simply asked: "Will I be getting paid[?]" *Id.,* ¶ 28 and Exhibit Y; Ronson Decl., ¶ 35. Furthermore, just one day before the November 1, 2007 hearing on the Motion to

Strike, Garbus once again threatened to file his complaint for fees against Ronson unless he received a "payment of substantial funds" by November 2, 2007.  *Id.,* ¶ 29 and Exhibit Z.

    **I.**      **D&G and Garbus Abandon any Opposition to the Motion to Strike.**

On October 15, 2007, Jeffries, Garbus's co-counsel at Bingham, sent Garbus an email in which he informed Garbus that "[y]ou are going to have to take the depo on [F]riday unless [F]reedman [Lavandeira's counsel] agrees to move it."  Bass Decl., ¶ 30 and Exhibit AA. Nevertheless, Garbus failed to conduct Lavandeira's deposition on October 19, 2007.  *Id.,* ¶ 32. As a result, Lavandeira was able to accurately note, in a Supplemental Brief in support of the Motion to Strike filed on or about October 29, 2007, that "no motion to be relieved as counsel or substitution of attorney form has been filed with the Court," and that Lavandeira's "deposition did not take place by October 19, 2007 as ordered by the Court."  *Id.,* ¶ 31 and Exhibit BB. Garbus failed to file an additional supplemental brief in advance of the November 1, 2007 hearing, as ordered by the Court.  *Id.,* ¶ 32.

Shortly before the November 1, 2007 hearing on the Motion to Strike, Garbus and Jeffries sent emails to each other in which each assumed that the other person would attend and argue on Ronson's behalf at the hearing.  *Id.,* ¶ 32 and Exhibits CC, DD.  In the end, Jeffries, and not Garbus, appeared at the hearing on behalf of Ronson, but did not make a single argument in opposition to the Motion to Strike.  *Id.,* ¶ 33.  At the conclusion of the hearing, the Court granted the Motion to Strike.  In granting the Motion to Strike, the Court stated, among other things, that Ronson "***has not filed any supplemental papers, notwithstanding the fact that the court gave [Ronson] an opportunity to take the deposition of Lavandeira and to file supplemental papers***. Thus, plaintiff has not met her burden to show a probability of prevailing even on the minimum evidentiary standard that is required in a SLAPP motion."  *Id.,* ¶ 33 and Exhibit EE (Transcript of Hearing of November 1, 2007, at 16:5-13 [emphasis added].)

    **J.**      **D&G Files an Action Against Ronson while Still Counsel in the Defamation Action.**

On or about November 13, 2007, Garbus, on behalf of D&G, filed an action against Ronson in the Supreme Court of the City of New York (the "First New York Action").  D&G

alleged in the First New York Action that it was owed $141,590.55 and Bingham was owed $23,340.17 in attorneys' fees and costs in connection with their work in the Defamation Action. Bass Decl., ¶ 34 and Exhibit GG.

At the time Garbus and D&G commenced the First New York Action, they were still counsel for Ronson in the Defamation Action, and had not withdrawn, been fired, or been discharged. It was not until December 18, 2007 that David M. Bass & Associates ("DBA") substituted in as counsel of record for Ronson in the Defamation Action, in place of Garbus and D&G. *Id.,* ¶ 36 and Exhibit HH.

On or about December 11, 2007, Ronson removed the First New York Action to this Court. Less than two months later, on or about January 22, 2008, D&G dismissed the First New York Action without prejudice. *Id.,* ¶ 37. Less than two months after that, on or about March 18, 2008, D&G filed this action.

### K.  Ronson's Malpractice Action against D&G and Garbus.

As the above discussion demonstrates, D&G and Garbus breached their obligations to Ronson by: (i) failing to adequately advise her; (ii) failing to adequately respond to a Motion to Strike the Complaint; (iii) failing to depose Lavandeira pursuant to Court Order; (iv) becoming adverse to Ronson during the Defamation Action by threatening her with litigation and negative publicity; (v) misleading Ronson into believing she had to represent herself at the hearing on the Motion to Strike; (vi) failing to inform Ronson of a settlement proposal; and (vii) suing Ronson in New York for their exorbitant fees while they were still her counsel in the Defamation Action. Accordingly, on or about May 1, 2008, DBA, on behalf of Ronson, filed a Complaint in the Malpractice Action, alleging claims for negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duties against D&G, Garbus, and Bingham. Bass Decl., ¶ 39 and Exhibit II. Counsel for D&G and Garbus already has appeared in the Malpractice Action and has served Notices of Deposition upon DBA, seeking to take the depositions of Ronson, Reed, and others in Los Angeles, California. *Id.,* ¶ 39.

## III.    THIS COURT SHOULD DISMISS THIS ACTION BECAUSE IT MAY NOT PROPERLY EXERCISE PERSONAL JURISDICTION OVER RONSON.

This Court should dismiss D&G's Complaint because Ronson lacks sufficient contacts with New York so as to allow this Court to exercise personal jurisdiction over her.  In a federal diversity case such as this action, personal jurisdiction over a non-resident defendant such as Ronson is determined by the law of the forum state.  *Patel v. Patel*, 497 F.Supp.2d 419, 423 (E.D.N.Y. 2007).  In New York, the requirements for personal jurisdiction are set forth in the Civil Practice Law and Rules (the "CPLR").  *Id.  See also Caulfield v. Imagine Advisors, Inc.*, 2007 WL 4615504, *5 (S.D.N.Y. 2007) ("New York law recognizes two types of personal jurisdiction over non-domiciliaries: general jurisdiction and long-arm personal jurisdiction.").  Section 301 of the CPLR provides for general jurisdiction over a defendant.  Section 302 of the CPLR establishes New York's "long-arm" jurisdiction over non-resident defendants.

When a defendant makes a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of demonstrating that the Court has jurisdiction over the defendant.  *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir.2001); *Patel,* 497 F.Supp.2d at 423.  Moreover, "conclusory allegations are insufficient to support a prima facie showing of personal jurisdiction."  *Patel,* 497 F.Supp.2d at 423.

Here, as explained below, D&G cannot satisfy its burden of showing that this Court properly may exercise either general jurisdiction over Ronson under CPLR § 301 or "long-arm" jurisdiction under CPLR § 302.  Accordingly, this Court should dismiss this action.

### A.    This Court May Not Properly Exercise General Jurisdiction over Ronson under Section 301 of the CPLR.

Section 301 of the CPLR provides that a "court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  CPLR § 301.  "[T]he traditional bases of jurisdiction covered by this rule include physical presence, domicile, consent, and corporate presence by virtue of a defendant 'doing business' in New York."  *Patel,* 497

F.Supp.2d at 424. Here, D&G cannot demonstrate that Ronson was physically present in the State of New York or that she consented to jurisdiction in the state. Moreover, it is undisputed that Ronson is a resident of Los Angeles, California. Complaint, ¶ 2 ("Plaintiff is an individual residing in the State of California, City of Los Angeles"); Ronson Decl., ¶ 2;. Accordingly, the only way for D&G to establish that Ronson is subject to general jurisdiction is to demonstrate that she is "doing business" in New York under section 301 of the CPLR.

In order to demonstrate that a nonresident defendant such as Ronson is "doing business" in New York under CPLR § 301, the plaintiff must show that the defendant is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F.Supp.2d 544, 547-48 (S.D.N.Y. 2001), *quoting McGowan v. Smith*, 52 N.Y.2d 268, 272, 437 N.Y.S.2d 643 (1981). "New York law requires that the defendant be present in New York 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc*., 918 F.2d 1039, 1043 (2d Cir.1990) (quotation omitted).

To determine whether a defendant "does business" in New York, courts have focused on the following factors:

> the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state.

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd*., 763 F.2d 55, 58 (2d Cir.1985). Here, Ronson has no office, bank accounts or other property in New York. Ronson Decl., ¶¶ 3-5. Accordingly, application of these factors compels the conclusion that Ronson is not "doing business" in New York under Section 301.

The district court's opinion in *Patel* likewise compels this conclusion. Plaintiffs in *Patel* did not allege that the defendant maintained an office or employees in New York, had a bank account in New York, or had any dealings with plaintiffs while was in New York. Instead, plaintiffs only alleged "several isolated acts by the defendant that took place in connection with

the parties' agreement regarding the recovery of their investments," including that the defendant "sent billing statements to and had telephone conversations with one of the plaintiffs in New York . . . and sent two emails to one of the plaintiffs." *Patel,*497 F.Supp.2d at 425.

In declining to exercise general jurisdiction under these facts, the *Patel* court held as follows:

> The 'doing business' standard contemplates a substantial and continuous relationship between the defendant and the forum state, with some degree of permanency. The acts alleged by the plaintiffs are too few in number, and much too isolated and sporadic to establish the type of 'continuous and systematic' conduct necessary to find jurisdiction under CPLR 301.

*Id.* In declining to confer personal jurisdiction upon the defendant, the court cited "numerous cases where a court declined to find jurisdiction under CPLR 301 notwithstanding allegations of New York contacts significantly more substantial than the plaintiffs allege here." *Id*. at 426, *citing Landoil Res. Corp. v. Alexander & Alexander Servs., Inc*., 918 F.2d 1039, 1045 (2d Cir.1990) (thirteen business trips made by employees of the defendants to New York during an eighteen-month period were "insufficient to establish the systematic and continuous presence within the state that New York law requires"); *Hoffritz*, 763 F.2d at 57-58 ("extensive" correspondence regarding the parties' business relationship and fifty-four visits to New York to discuss business with the plaintiff was insufficient); *Avecmedia, Inc. v. Gottschalk,* 2004 WL 1586411, at *6 n.2 (S.D.N.Y., July 14, 2004) (defendants' presence at a meeting in New York, in addition to telephone and email communications to New York plaintiffs, was insufficient to satisfy CPLR § 301).

Here, D&G alleges only that "Ronson transacts business in New York and plaintiff's claim arises from said transaction." Complaint, ¶ 4. This allegation is insufficient and contrary to fact. Ronson never met with Garbus or any other D&G employee in the State of New York. Rather, she had only two in-person meetings with Garbus, both of which occurred at the Shutters Hotel located in Santa Monica, California. Ronson Decl., ¶ 9. Furthermore, D&G cannot show that its claim for fees arises from any transaction undertaken by Ronson in New York. Finally,

D&G cannot show that any contact between Ronson and Garbus is sufficient to establish "the type of 'continuous and systematic' conduct necessary to find jurisdiction under CPLR 301." *Patel,* 497 F.Supp.2d at 425. *See also Landoil,* 918 F.2d at 1045. Accordingly, this Court cannot properly find that Ronson is subject to general jurisdiction.

### B.    This Court May Not Properly Exercise Long-Arm Jurisdiction over Ronson under Section 302(a)(1) of the CPLR.

D&G also cannot establish that this Court properly may exercise "long-arm" jurisdiction over Ronson under section 302 of the CPLR. "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Solé Resort, S.A. de C.V. v. Allure Resorts Management, LLC,* 450 F.3d 100, 103 (2d Cir. 2006), *citing McGowan,* 52 N.Y.2d at 273, 437 N.Y.S.2d at 645; *Sunward Elecs., Inc. v. McDonald,* 362 F.3d 17, 22 (2d Cir. 2004); *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 365 (2d Cir. 1986). D&G cannot show that Ronson's conduct satisfies either of those requirements.

First, D&G cannot demonstrate that Ronson was "transacting business" within the State of New York. In order to satisfy this element under Section 302(a)(1), a plaintiff must show that the defendant "purposefully availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir.1999). To determine whether a party in a contract action has "transacted business" within the meaning of CPLR section 302(a)(1), courts focus primarily on the following factors:

> (i) whether the defendant has an ongoing contractual relationship with a New York [plaintiff]; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [the defendant] to send notices and payments into the forum state or subjects them to supervision by [a] corporation in the forum state.

*Patel*, 497 F.Supp.2d at 427.  *See Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 22-23 (2d

Cir.2004).  Another important factor is whether the contract is to be performed in New York. *See*

*Cooper, Robertson & Partners, L.L.P. v. Vail*, 143 F.Supp.2d 367, 371 (S.D.N.Y. 2001).

These factors compel the conclusion that Ronson did not transact business in New York

for purposes of its "long-arm" statute.  First, Ronson did not have an ongoing contractual

relationship with D&G.  Rather, D&G and Garbus abandoned Ronson in October 2007, and sent

a letter to the Court in the Defamation Action falsely claiming that they had been discharged by

Ronson.  Ronson Decl., ¶¶ 23-35; Bass Decl., ¶ 24 and Exhibit T.

Second, the Retainer Agreement between Ronson and D&G was negotiated and executed

in Los Angeles, not New York.  Moreover, after executing the Retainer Agreement, Ronson never

visited New York to meet with any D&G employee.  On the contrary, Ronson had two in-person

meetings with Garbus regarding the parties' relationship that took place in Santa Monica,

California.  Ronson Decl., ¶ 9.

Third, the Retainer Agreement contains no choice of law provision or instructions

regarding where to send payment.  *Id.,* Exhibit A.  By contrast, the promissory note that Garbus

sent to Ronson on October 17, 2007 in order for her to pay off the attorneys' fees she allegedly

had incurred contained a New York choice of law provision.  *Id.,* ¶ 28; Bass Decl., ¶ 18 and

Exhibit N.

Finally, the Retainer Agreement was executed by Ronson in Los Angeles and provided

that D&G and Garbus would file suit on behalf of Ronson in Los Angeles County Superior

Court.  *Id.,* ¶ 19 and Exhibit A.  Moreover, Garbus traveled to Los Angeles on at least three

occasions to meet with Ronson and appear at the hearing on the Motion to Strike in Los Angeles.

*Id.,* ¶ 9; Bass Decl., ¶¶ 10, 12.  Under these circumstances, this Court should not exercise

jurisdiction over Ronson because she did not "transact business" in New York for purposes of

CPLR § 302(1).

Even if D&G were able to establish that Ronson transacted business in New York, it

cannot satisfy the second requirement of section 302(a)(1): that its claim for fees arises from any

business activity by Ronson in New York.  In order to satisfy this requirement, a plaintiff must

demonstrate a "strong nexus between the plaintiff's cause of action and the defendant's in-state

conduct" for long-arm jurisdiction to apply.  *D'Amato v. Starr*, 2007 WL 895793, *3 (E.D.N.Y.

2007).  A plaintiff may not rely  "on his own activities within the State, rather than on defendant's

independent activities" to invoke long-arm jurisdiction.  *Haar v. Armendaris Corp.*, 31 N.Y.2d

1040, 342 N.Y.S.2d 70 (1973) [adopting dissenting memorandum at 40 A.D.2d 769, 769-770,

337 N.Y.S.2d 285 (1972)]. Here, D&G cannot point to any nexus between its claim for fees and

Ronson's conduct in New York, because any conduct that Ronson may have undertaken in New

York has nothing to do with D&G's claim.  Ronson Decl., ¶¶ 7-8.  For this reason as well, this

Court may not properly exercise "long-arm" jurisdiction over Ronson.  Accordingly, Ronson is

entitled to dismissal of this action under Rule 12(b)(2) of the Federal Rules of Civil Procedure.


## IV.    THIS COURT SHOULD DISMISS THIS ACTION BECAUSE VENUE IS IMPROPER IN THIS DISTRICT.

This Court should dismiss this action for the separate reason that venue is improper in the

Southern District of New York.  Section 1391(a) provides, in relevant part, that a civil action

based on diversity of citizenship may be brought only in "a judicial district in which a substantial

part of the events or omissions giving rise to the claim occurred . . ."  28 U.S.C. § 1391(a)(2).[5]

The Second Circuit has "caution[ed] district courts to take seriously the adjective 'substantial,'"

and stressed the need "to construe the venue statute strictly."  *Gulf Ins. Co. v. Glasbrenner,* 417

F.3d 353, 357 (2d Cir. 2005).  As the court has explained:

> [F]or venue to be proper, *significant* events or omissions *material*
> to the plaintiff's claim must have occurred in the district in
> question, even if other material events occurred elsewhere. It
> would be error, for instance, to treat the venue statute's "substantial

---

[5] Section 1391(a)(1) is inapplicable because Ronson resides in the Central District of California.
*See* Ronson Decl., ¶ 2; 28 U.S.C. § 1391(a)(1) (venue proper in "a judicial district where any
defendant resides, if all defendants reside in the same State").  Furthermore, D&G could have
brought this action in the Central District of California under Section 1391(a)(1).  Therefore,
Section 1391(a)(3), which applies only "if there is no district in which the action may otherwise
be brought," also is inapplicable.

part" test as mirroring the minimum contacts test employed in
personal jurisdiction inquiries.

*Id.* (emphasis in original).  *See also* 14D C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction 3d* (Thomson/West 2007) § 3806.1, at 233 ("more activity is required in venue cases than is necessary to satisfy constitutional due process when the question of amenability to service of process is raised on the identical facts").

On a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper.  *French Transit, Ltd. v. Modern Coupon Sys. Inc., 858 F.Supp. 22, 25 (S.D.N.Y.1994).  See also D'Anton Jos, S.L. v. Doll Factory, Inc.*, 937 F.Supp. 320, 321 (S.D.N.Y. 1996); *Saferstein v. Paul, Mardinly, Durham, James, Flandreu & Rodger, P.C.*, 927 F.Supp. 731, 736 (S.D.N.Y. 1996).  Accordingly, in order to defeat the Motion, D&G must demonstrate that a "substantial part" of the events or omissions giving rise to its claim for fees occurred in this district.

In determining whether events or omissions are sufficiently "substantial" to justify venue under Section 1391(a)(2) in a breach of contract claim such as this action, courts consider such factors as: (1) the location at which the contract was negotiated or executed; (2) the location at which the contract was to be performed; and (3) the location of the alleged breach.  *PI, Inc. v. Quality Products, Inc.*, 907 F.Supp. 752, 757-758 (S.D.N.Y. 1995).  Moreover, when applying Section 1391 in determining whether venue is proper, ***"the focus under Section 1391(a)(2) is on the activities of the defendant, not the plaintiff."***  *I.M.D. USA, Inc. v. Shalit*, 92 F.Supp.2d 315 (S.D.N.Y. 2000) (emphasis added).  As the Eighth Circuit has explained, "by referring to 'events or omissions giving rise to the claim [in Section 1391(a)(2)],' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff."  *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir. 1995).   Therefore, D&G must establish that significant events or omissions ***involving Ronson*** that are material to its claim occurred in this district in order to satisfy its burden of proof with respect to venue.

The evidence submitted herewith conclusively establishes that D&G cannot satisfy its burden of showing that venue is proper in this district.  First, the Retainer Agreement between

D&G and Ronson was negotiated and executed in Los Angeles.  Ronson Decl., ¶¶ 18-19.

Second, Ronson was to perform under the Retainer Agreement by paying for legal services from

her Los Angeles residence.  Similarly, D&G's performance under the Retainer Agreement also

was to be in Los Angeles.  D&G filed the Defamation Action on behalf of Ronson in the Los

Angeles County Superior Court and Garbus traveled to Los Angeles on several occasions in

order to conduct the litigation.  *Id.,* ¶¶ 9, 20; Bass Decl., ¶¶ 10, 12.  Third, Ronson's alleged

breach – her purported failure to pay the fees and costs due D&G – also took place in Los

Angeles.  In sum, a "substantial part" of the events or omissions giving rise to D&G's claim did

not occur in this district.  On the contrary, ***the*** underlying event giving rise to this action – the

Defamation Action itself – occurred in Los Angeles.  D&G simply cannot point to any significant

events or omissions involving Ronson that are material to its claim and that occurred in this

district.  Accordingly, this Court should determine that venue is improper in the Southern District

of New York and grant the Motion.

Such a conclusion is compelled by the District Court's opinion in *I.M.D.*  Plaintiff in

*I.M.D.,* a New York-based diamond wholesaler, and defendant, a South Carolina resident,

entered into a consignment agreement at a meeting in Brooklyn.  *I.M.D.,* 92 F.Supp.2d at 315.

When defendant failed to remit full payment to New York for a shipment of diamonds, plaintiff

sued in this district.  In ruling that venue was improper, the District Court explained that "[t]he

fact that the events and omissions most closely related to the alleged breach – [defendant's]

failure to pay for or return the diamonds – unmistakably occurred in South Carolina is material."

*Id*. at 318.  Here, as well, the events and omissions most closely related to Ronson's alleged

breach – the failure to pay for legal services in connection with an action pending in the Los

Angeles County Superior Court – unquestionably occurred outside this district.  Therefore, venue

is improper in this district and the Court should dismiss this action pursuant to Fed. R. Civ. P.

12(b)(3).[6]

---

[6] As explained in footnote 3, above, this Court should dismiss this action rather than transfer it to
the Central District of California under 28 U.S.C. § 1406(a).  Such a transfer would be contrary
to the interest of justice because Ronson's Malpractice Action currently is pending in Los

## V.    ALTERNATIVELY, THIS COURT SHOULD TRANSFER THIS ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA FOR THE CONVENIENCE OF THE PARTIES AND WITNESSES.

Even if this Court determines that it properly may exercise personal jurisdiction over Ronson and that venue is proper in this district (and it should not, for all of the reasons discussed in Sections III and IV, above), this Court still should transfer this action to the Central District of California under the doctrine of *forum non conveniens*. The statute governing such transfers provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). It is undisputed that this action might have been brought in Central District of California, where Ronson resides. As explained below, consideration of the relevant factors under Section 1404(a) compels this Court to grant the Motion. *See, e.g., Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839 (1947); *Posven, C.A. v. Liberty Mut. Ins. Co.,* 303 F.Supp.2d 391, 404 (S.D.N.Y. 2004) (identifying the factors).

### A.    Convenience of Witnesses.

The convenience of the forum for witnesses "is probably considered the single most important factor in the analysis of whether a transfer should be granted." *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F.Supp.2d 505, 516 (S.D.N.Y.2004). When weighing this factor, courts must consider the materiality, nature, and quality of each witness, in addition to the mere number of witnesses in each district. *Beatie and Osborn LLP v. Pacific Scientific Corp.,* 431 F.Supp.2d 367, 396 (S.D.N.Y. 2006). Here, all of the potential third-party witnesses – including Ronson's local counsel from Bingham and the attorneys who represented Lavandeira and the other Defendants in the Defamation Action – are located in Los Angeles. It would be extremely burdensome and inconvenient for them to go to New York to testify. Bass Decl., ¶¶ 40-41. This factor weighs heavily in favor of transferring the action.

---

Angeles County Superior Court. Bass Decl., ¶ 39. Transferring this action to the Central District of California thus would create parallel proceedings in state and federal court involving similar facts, witnesses, and circumstances.

### B.    Convenience of the Parties.

It would also be burdensome and inconvenient for Ronson to defend this action in New York.  Ronson Decl., ¶ 10.  By contrast, it would be less burdensome for D&G to litigate in Los Angeles.  D&G already is defending the Malpractice Action in the Los Angeles County Superior Court.  Moreover, Garbus demonstrated that it would not be inconvenient for D&G to litigate in the Central District of California by undertaking to represent Ronson in Los Angeles and traveling to Los Angeles on several occasions in connection with the Defamation Action.  Bass Decl., ¶¶ 10, 12, 39.  This factor also weighs in favor of transferring the action.

### C.    Locus of Operative Facts.

This factor likewise favors transfer to a California forum.  The Retainer Agreement was executed in Los Angeles, Ronson's alleged breach took place in Los Angeles, and the key events relating to D&G's claims involve the litigation of the Defamation Action in Los Angeles.

### D.    Availability of Process to Compel Attendance of Unwilling Witnesses.

If Ronson is forced to defend this action in this district, she may not be able to compel potential third-party witnesses, all of whom are located in Los Angeles, to attend a trial in New York.  Bass Decl., ¶ 42.  By contrast, if this action is transferred to the Central District of California, all of these witnesses, as well as Garbus, will be able to be compelled to participate.  Once again, this factor favors the transfer sought by Ronson.

### E.    Location of Documents and the Relative Ease of Access to Sources of Proof.

This factor generally is insignificant when the question is merely one of transporting documents.  Here, documents pertaining to D&G's representation of Ronson likely are located both in Los Angeles and New York.  Transfer of this action to the Central District of California, however, will bring documents in the possession of third party witnesses, such as defense counsel in the Defamation Action, within the subpoena power.  See *Falconwood Fin. Corp. v. Griffin*, 838 F.Supp. 836, 841 (S.D.N.Y.1993).  For this reason, this factor favors transfer.

F.    **A Forum's Familiarity with the Governing Law**.

The Central District of California likely will be more familiar with California law and its application to this action than this district.  Once again, this factor favors transfer.

G.    **Trial Efficiency and the Interest of Justice**.

Whether transfer is in the interest of justice is "based on the totality of the circumstances" and "relates primarily to issues of judicial economy."  *Mitsui Marine & Fire Ins. Co. v. Nankai Travel Int'l*, 245 F.Supp.2d 523, 527 (S.D.N.Y. 2003) (citation and quotation omitted).  This factor slightly favors transfer, because the Central District of California likely has easier access to documents from the Defamation Action and witnesses residing in Los Angeles than does this Court.

H.    **The Weight Accorded a Plaintiff's Choice of Forum**.

As one court has explained, Plaintiff's choice of forum "is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal & Sunalliance v. British Airways*, 167 F.Supp.2d 573, 576 (S.D.N.Y. 2001).  All of the other factors discussed above, however, weigh in favor of transfer.  Accordingly, this one factor should not prevent this Court from transferring this action to the Central District of California.

In sum, transferring this action to the Central District of California will serve the ends of judicial economy because all of the third-party witnesses reside there, California has the strongest connection to this dispute, and the underlying Defamation Action was filed there. California would be a more efficient and less burdensome place to resolve this action. Accordingly, if this Court does not dismiss D&G's Complaint, it should transfer this action to the United States District Court for the Central District of California.

VI.    **CONCLUSION**.

For all of the foregoing reasons, Ronson respectfully requests that this Court dismiss D&G's Complaint because Ronson is not subject to personal jurisdiction in the Southern District of New York.  In addition, this Court should dismiss the Complaint because venue is improper in

this district.  Alternatively, if this Court denies the Motion on both of these grounds, the Court

should transfer this action to the United States District Court for the Central District of

California, because that forum is a significantly more convenient, economical, and efficient

forum to resolve this action.


Dated: New York, New York
June 2, 2008

                                              /s/
                             IRA DANIEL TOKAYER, ESQ. (IT-4734)
                             42 West 38th Street, Suite 802
                             New York, New York 10018
                             (212) 695-5250

                             Peter M. Cho (State Bar No. 213870)
                             DAVID M. BASS & ASSOCIATES
                             1900 Avenue of the Stars
                             Suite 200
                             Los Angeles, California 90067
                             Telephone: (310) 789-1152

                             Attorney for Defendant Samantha Ronson