Ira D. Tokayer, Esq. (IT-4734)
LAW OFFICES OF IRA DANIEL TOKAYER
42 West 38th Street, Suite 802
New York, New York 10018
Telephone: (212) 695-5250
Facsimile: (212) 695-5450
Email: imtoke@mindspring.com

Peter M. Cho (State Bar No. 213870)
DAVID M. BASS & ASSOCIATES
1900 Avenue of the Stars
Suite 200
Los Angeles, California 90067
Telephone: (310) 789-1152
Facsimile: (310) 789-1149
Email: pcho@basslawla.com

Attorneys for Defendant SAMANTHA RONSON

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVIS & GILBERT LLP,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>SAMANTHA RONSON,<br><br>　　　　　Defendant. | Index No. 08-CV-02876-JSR<br><br>**DECLARATION OF SAMANTHA RONSON IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; OR, IN THE ALTERNATIVE, TO DISMISS FOR IMPROPER VENUE; OR, IN THE ALTERNATIVE, TO TRANSFER FOR IMPROPER VENUE; OR, IN THE ALTERNATIVE, TO TRANSFER FOR CONVENIENCE**<br><br>Date:　　　　July 15, 2008<br>Time:　　　　5:00 p.m.<br>Courtroom:　14B |

　　　　I, Samantha Ronson, hereby declare, under penalty of perjury, as follows:

　　　　1.　　I am the Defendant in this action. Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called upon to testify as a witness, I could and would competently testify to these facts.

### *My Lack Of Contacts With New York*

2.     I am a resident of Los Angeles, California. I have resided in Los Angeles since at least January 1, 2007. I earn my living as a professional disc jockey for various nightclubs, events and corporate functions. I operate my business out of California.

3.     Since January 1, 2007, I have not resided or been domiciled in the State of New York. Since that time, I have not had a mailing address or a telephone listing in New York. In addition, I have not owned, leased or maintained an office, a residence or a place of business in New York since January 1, 2007.

4.     Since January 1, 2007, I have not owned, leased, maintained or had any interest in any real property in New York. Since that time, I have never owned, leased, maintained or had any interest in any tangible personal property in New York.

5.     Since January 1, 2007, I have not had or maintained any bank or savings and loan accounts in New York. Since that time, I have not owned any stocks, securities, negotiable or non-negotiable instruments or commercial paper of any kind in New York.

6.     Since January 1, 2007, I have not appeared in any court in New York, whether in connection with any action in the state or otherwise.

7.     Plaintiff's claims in this action do not arise from any business that I transacted in the State of New York or the County of New York. Plaintiff's claims do not relate to any contacts that I may have with the State of New York or the County of New York or any activities that I may have undertaken in the State of New York or the County of New York.

8.     At no time while I was in New York did I engage in any activities that form the basis for Plaintiff's claims against me or that have any connection to the allegations of the Complaint in this action. Rather, as explained below, the events giving rise to Plaintiff's claims in this action took place in Los Angeles, California.

9.     I have never met anyone from D&G in the State of New York, either in connection with the events relating to this action or for any other reason. The only person from

D&G whom I have ever met is Martin Garbus, Esq., who formerly represented me in the Defamation Action discussed below. I only had two in-person meetings with Mr. Garbus, both of which took place at the Shutters Hotel in the City of Santa Monica, County of Los Angeles, California.

10. It would be unfair and seriously inconvenient for me to have to defend this action in New York. I am a resident of Los Angeles, California. As discussed below, I entered into the Retainer Agreement with D&G that forms the basis of this action in Los Angeles, California. In addition, it is my understanding that all of the potential witnesses in this action other than Mr. Garbus are located in the Los Angeles area.

*Lavandeira's Postings Concerning Me*

11. On May 26, 2007, actress Lindsay Lohan ("Lohan") was involved in a minor traffic accident in Los Angeles County (the "Accident"). I was a passenger in Lohan's car at the time of the Accident.

12. On or about June 1, 2007, I was shocked to learn that Mario Lavandeira, also known as Perez Hilton ("Lavandeira"), had begun publishing a series of posts (the "Postings") on his tabloid website, www.perezhilton.com, concerning the Accident. (True and correct copies of the Postings are attached as Exhibit B to the Declaration of David M. Bass, submitted separately herewith [the "Bass Declaration"].)

13. In the Postings, Lavandeira made the following statements concerning the Accident: (i) the cocaine found in Lohan's car belonged to me, (ii) I had been selling out Lohan to the paparazzi, (iii) I entered into an agreement with a photo agency to tip them off to my whereabouts with Lohan, (iv) I created photo-ops of Lohan for the paparazzi, and (v) I was a "lezbot DJ" who betrayed Lohan.

14. Each of Lavandeira's statements about me is false. Had Lavandeira contacted me, requested the police report or made any investigation at all into the Accident, he would have

3

discovered that the police had (i) found no evidence linking the cocaine to me; (ii) identified me as a victim in the Accident; and (iii) found the cocaine in personal property belonging to Lohan.

### *Garbus Contacts Me In Los Angeles*

15. As a result of the Postings, I began to lose business and suffer extreme emotional distress and public condemnation.

16. At the time of the Postings, I did not have an attorney who regularly represented me. Accordingly, in early June 2007, I contacted a friend of mine who works as a publicist and crisis manager, to discuss how to respond to the Postings. My friend said she would contact an attorney that she knew in Los Angeles to discuss the Postings and whether I could take legal action.

17. Shortly thereafter, I had a telephone conversation at my home in Los Angeles with a New York attorney, Martin Garbus, Esq. ("Garbus"). During the telephone conversation, Garbus proposed that we meet in person at the Shutters Hotel in Santa Monica, California, to discuss my possible lawsuit against Lavandeira.

### *I Meet with Garbus in California and Retain Him*
### *in California to Pursue an Action in California*

18. In early June 2007, I met Garbus in person for the first time at Shutters Hotel in Santa Monica, California. Garbus told me that he and D&G, his law firm, would file an action on my behalf in the Los Angeles County Superior Court and represent me throughout the litigation. Garbus assured me that he could competently litigate my case against Lavandeira in a California court even though he was only licensed to practice in New York. Garbus never advised me that my claims might be subject to a "SLAPP" motion under Section 425.16 of the California Code of Civil Procedure, which would expose me to liability for Lavandeira's attorneys' fees.

19. On or about June 15, 2007, I received an "Engagement Letter" from D&G (the "Retainer Agreement") at my home in Los Angeles, California. The Retainer Agreement states, among other things, "Please sign the enclosed copy of this letter to indicate your agreement with the terms of this retainer." I signed the Retainer Agreement on June 19, 2007 at my home in Los Angeles, California. (A true and correct copy of the Retainer Agreement is attached hereto as Exhibit A.) In addition, in or about late June 2007, I paid D&G a $25,000 retainer.

*D&G and Garbus File the Defamation Action in Los Angeles*

20. On or about July 12, 2007, D&G and Garbus filed an action for defamation on my behalf against Lavandeira and others in the Los Angeles County Superior Court, entitled *Samantha Ronson v. Sunset Photo and News, LLC et al.*, Los Angeles County Superior Court Case No. BC374174 (the "Defamation Action"). (A true and correct copy of the Complaint in the Defamation Action is attached as Exhibit C to the Bass Declaration.)

*Settlement Discussions*

21. In or about September 2007, I learned that Garbus was having discussions with counsel for Lavandeira regarding the settlement of the Defamation Action. At that time, Garbus informed me that Lavandeira would not settle on terms that included a retraction of the Postings. In response, I told Garbus that I would not settle without a retraction.

22. I subsequently learned that counsel for Lavandeira had offered to settle the Defamation Action as against Lavandeira under the following terms: (i) I would stipulate to an Order granting a Special Motion to Strike Plaintiff's Complaint that Lavandeira had filed (the "Motion to Strike"); and (ii) Lavandeira would waive any right to recover attorneys' fees in connection with the Motion to Strike. Garbus failed to disclose this settlement proposal to me in or about September 2007. Garbus failed to discuss with me the risk of not settling with Lavandeira or disclose to me the possibility that I could be liable for Lavandeira's attorneys' fees if the Motion to Strike was granted.

### *D&G and Garbus Abandon Me and the Defamation Action*

23. On or about October 10, 2007, I received an invoice from D&G. My business manager, Tom Reed ("Reed"), who has offices in Beverly Hills and Calabasas, California, also received a copy of this invoice. This was the first invoice regarding the Defamation Action that I recall receiving from D&G. (A true and correct copy of the invoice is attached hereto as Exhibit B.)

24. As shown on Exhibit B, the invoice states that D&G had incurred $96,606 in attorneys' fees and almost $3,000 in costs from August 8, 2007 until October 7, 2007. More than $95,000 of the total fees were incurred by Garbus. The invoice describes many of the tasks performed by D&G in brief, general terms, such as "Work on litigation."

25. I was shocked to learn that D&G allegedly had incurred such a large amount of fees over a two-month period. Garbus never explained to me the amount of fees that D&G had incurred in the Defamation Action.

26. On or about October 11, 2007, Garbus sent an email to me in which he stated that Reed had told Garbus that I "had some questions about the bill." Garbus did not attempt to answer these questions in the email. (A true and correct copy of Garbus's October 11, 2007 email is attached as Exhibit J to the Bass Declaration.)

27. On or about October 12, 2007, Garbus sent an email to Reed and me in which he attached copies of three invoices from D&G for work in connection with the Defamation Action, dated July 18, 2007, August 27, 2007 and October 8, 2007. This was the first time that I recall receiving the July 18 and August 27, 2007 invoices. Garbus states in the email that "Since I now understand that Samantha doesn't yet have a new attorney, I will continue to represent her until she does have a new attorney." (A true and correct copy of Garbus's October 12, 2007 email, together with the attachments, is attached as Exhibit L to the Bass Declaration.)

28. On or about October 17, 2007, Garbus sent an email to Reed, with a copy to me, which attached what Garbus described as "my final bill which, including the outstanding statements, totals $141,590.55," and a promissory "note for five payments of the outstanding bills, starting November 1, 2007, at $28,318.11 each . . ." (A true and correct copy of Garbus's October 17, 2007 email, together with the attachments, is attached as Exhibit N to the Bass Declaration.)

29. On or about October 18, 2007, Garbus sent an email to me, with a copy to Reed, attaching a draft of his declaration in support of a motion to be relieved as counsel for me in the Defamation Action. Garbus stated in the email that "I do not want to file this declaration." (A true and correct copy of Garbus's October 18, 2007 email, together with the attachment, is attached as Exhibit O to the Bass Declaration.)

30. On or about October 18, 2007, Garbus sent an email to Reed, with a copy to me, stating that "[t]he affidavit I sent you will get picked up on the blogs. Avoid it." (A true and correct copy of Garbus's October 18, 2007 email is attached as Exhibit P to the Bass Declaration.)

31. On or about October 18, 2007, Garbus sent another email to Reed, with a copy to me, in which he stated as follows:

> I told both Samantha and you that the costs for this month until we stopped the litigation would be about $25,000 per week. The mere fact that no one responded does not mean that one can walk away from the case. A lawyer can't. You can't prejudice a client by not doing certain things.

(A true and correct copy of Garbus's October 18, 2007 email is attached as Exhibit Q to the Bass Declaration.)

32. On or about October 23, 2007, Garbus sent an email to Reed and me, in which he threatened to sue me in New York and warned of the resulting negative publicity:

7

>Unless I hear from you by Wednesday [October 24, 2007] on the bills, I shall file a suit in New York for the payment of the legal bills. A copy of the draft Summons and Verified Complaint is attached. [¶] Please don't force me to do it. The blogs will pick it up.

(A true and correct copy of Garbus's October 23, 2007 email, together with the attachments, is attached as Exhibit R to the Bass Declaration.)

33. On or about October 24, 2007, Garbus sent an email to Reed and me in which he stated that that unless I had found a new attorney, I would have to "appear on [my] own behalf" at a November 1, 2007 hearing on the Motion to Strike filed by Lavandeira. (A true and correct copy of Garbus's October 24, 2007 email is attached as Exhibit W to the Bass Declaration.)

34. Although I had been searching for a new attorney, I had not yet found one to replace D&G and Garbus in the Defamation Action. Accordingly, in response to Garbus's email warning that I would have to appear at the hearing on the Motion to Strike by myself, I sent Garbus an email asking him to dismiss the case. (A true and correct copy of my October 24, 2007 email is attached as Exhibit X to the Bass Declaration.)

35. In response to my email, Garbus sent me an email later that day, which only states: "Will I be getting paid[?]" (A true and correct copy of Garbus's October 24, 2007 email is attached as Exhibit Y to the Bass Declaration.)

*D&G Sues Me in New York While it is Still My Counsel in the Defamation Action*

36. Sometime after November 13, 2007, I learned that D&G had filed an action against me in New York to recover the attorneys' fees it alleged were owed by me in connection with the Defamation Action (the "First New York Action").

8

37. On or about December 18, 2007, I retained David M. Bass & Associates to represent me in the Defamation Action in place of D&G and Garbus. Before retaining David M. Bass & Associates, I did not fire or discharge D&G or Garbus as my attorneys in the Defamation Action.

Dated: Los Angeles, California  
June 2, 2008

_____  
SAMANTHA RONSON



Exhibit A

DAVIS & GILBERT LLP
1740 BROADWAY
NEW YORK, NEW YORK 10019
(212) 468-4800

DIRECT DIAL NUMBER
212-468-4800

PERSONAL FACSIMILE
212-621-0836

MAIN FACSIMILE
212-468-4888

EMAIL ADDRESS
MGARBUS@DGLAW.COM

June 8, 2007

Ms. Samantha Ronson
5210 North Rossmore Avenue
Apt. 102
Los Angeles, CA 90004

<u>Engagement Letter</u>

Dear Samantha:

It was good meeting you. Neither of us has two heads.

I will represent you in a libel suit against those who have defamed you.

The purpose of this letter is to set forth the terms of our representation and the basis for our fees.

My retainer fee is $25,000.

I will assume primary responsibility for the work. My firm's fees are determined in accordance with our standard hourly billing rates. My current hourly rate is $750. The rates of other partners who may work on this matter are between $435 to $600 per hour and the rates of associates are between $255 to $450 per hour. Legal assistants are billed at an hourly rate of $190 to $200.

We will bill you for fees and expenses on a monthly basis. My statements will contain descriptions of our work and a listing by category of all other charges directly attributable to this matter or to your account. My monthly statements for legal fees and expenses are due and payable within 30 days after the date of our statement.

Unless we make a different arrangement in writing, this agreement will govern all future services that I may perform for you.

DAVIS & GILBERT LLP

   Please sign the enclosed copy of this letter to indicate your agreement with the terms of this retainer.

   If you have any questions at any time during the course of our relationship, ask me.

Very truly yours,

*Davis & Gilbert LLP*

Agreed to and Accepted:

_____

Name: Samantha Ronson
Date: 6-19-07



Exhibit B

DAVIS & GILBERT LLP
1740 BROADWAY
NEW YORK, N.Y. 10019
(212) 468-4800

EIN # 13-1504385

Samantha Ronson　　　　　　　　　　　　　　　　　　October 8, 2007
5210 North Rossmore Avenue
Apt 102　　　　　　　　　　　　　　　　　　　　　　Bill Number   178108
Los Angeles, CA 90004　　　　　　　　　　　　　　　File Number   022736

FOR PROFESSIONAL SERVICES RENDERED
Through October 8, 2007

**Libel Action**
File Number   022736-0001-000

| Date | Atty | Description | Hours |
|---|---|---|---|
| 08/08/07 | MG | Emails Samantha. | 2.00 Hrs |
| 08/08/07 | JL | Reviewing website reports; searching for and circulating to M. Garbus at his request | 0.10 Hrs |
| 08/20/07 | JL | Call with M. Garbus re: next steps | 0.10 Hrs |
| 08/22/07 | JL | Reviewing court order and case correspondence; reviewing case docs and taking notes in prep for calls; call with local counsel re: status of case; email to client re: next steps; calculating and calendaring court deadlines per court order; reviewing materials / email from client | 1.00 Hrs |
| 08/23/07 | RG | Open Docket, docket information. | 0.30 Hrs |
| 09/06/07 | MG | Work on litigation. | 3.50 Hrs |
| 09/07/07 | MG | Work on litigation. | 4.50 Hrs |
| 09/10/07 | MG | Work on litigation. | 6.50 Hrs |
| 09/10/07 | JL | Reviewing court filings / motions and email correspondence | 1.00 Hrs |
| 09/11/07 | MG | Work on litigation. | 10.00 Hrs |
| 09/12/07 | MG | Work on litigation. | 7.50 Hrs |
| 09/13/07 | MG | Work on litigation. | 8.20 Hrs |
| 09/14/07 | MG | Spoke to all defendants; worked out retractions. | 3.00 Hrs |
| 09/17/07 | MG | Spoke to Samantha, Perez Hilton, 2 other defendants; filed papers. | 2.00 Hrs |
| 09/20/07 | MG | Meeting with Samantha; emails with Bryan Freedman; telephone conversation with Bill Voyatzis. | 1.00 Hrs |
| 09/21/07 | MG | Discussions with opposing counsel; discussion with Samantha. Meet with Samantha. Spoke to Blair Berk. | 4.00 Hrs |

## DAVIS & GILBERT LLP

| Date | Atty | Description | Hours |
|---|---|---|---|
| 09/24/07 | MG | Prepare papers for argument; telephone call Wainer, Voyatzis. Telephone calls and emails with Bingham McCutchen firm. | 11.00 Hrs |
| 09/25/07 | MG | Prepare for oral argument; flight to LA; discussions and emails with Voyatzis, Wainer, Jeffries. | 12.00 Hrs |
| 09/25/07 | RG | Docket information. | 0.30 Hrs |
| 09/26/07 | MG | Oral argument. | 3.00 Hrs |
| 09/27/07 | SC | Research Services: Research and retrieval of numerous cases related to Slapp law in CA. Retrieval of CA Civil Code 48a. Retrieval of articles related to Perez Hilton claiming that Fidel Castro is dead - For Martin Garbus | 1.00 Hrs |
| 09/27/07 | MG | Preparation of motion papers. | 11.00 Hrs |
| 09/28/07 | MG | Preparation of motion papers; emails, phone calls Gina Simas, Wayne. | 9.50 Hrs |
| 10/01/07 | MG | Work on briefs; emails, telephone conversations with CA counsel. | 8.00 Hrs |
| 10/02/07 | MG | Trying to work out settlement agreements; finishing affidavits and declarations; filing brief; preparing for October 10 oral argument; discussions with Blair Berk. | 6.00 Hrs |
| 10/04/07 | MG | Work on papers. Telephone calls re: retraction. | 8.00 Hrs |
| 10/05/07 | MG | Emails, phone calls Voyatzis, Wainer, Samantha. | 3.50 Hrs |
| 10/06/07 | MG | Telephone calls to Samantha, Maurice Wainer | 1.50 Hrs |
| 10/07/07 | MG | Telephone calls. | 1.50 Hrs |

**SUBTOTAL LEGAL SERVICES** $96,606.00

**LEGAL SERVICES SUMMARY**

| Name | Hours | Amount |
|---|---|---|
| Levine, James | 2.20 Hrs | $902.00 |
| Garbus, Martin | 127.20 Hrs | $95,400.00 |
| Gomez, Richard | 0.60 Hrs | $114.00 |
| Cohen, Steven | 1.00 Hrs | $190.00 |
| | 131.00 Hrs | $96,606.00 |

**OTHER CHARGES**
Through October 8, 2007

| | |
|---|---|
| Out of Town Travel | $1,267.96 |
| Courier Services | $174.66 |
| Court Services | $2.56 |
| Duplicating | $447.95 |
| Lexis/Westlaw/Saegis | $577.00 |
| Postage | $0.41 |
| Long Distance Telephone | $23.54 |
| Fax | $139.50 |

Page 2

## DAVIS & GILBERT LLP

Word Processing $265.00

| | |
|---|---|
| SUBTOTAL OTHER CHARGES | $2,898.58 |
| MATTER TOTAL | $99,504.58 |
| TOTAL LEGAL SERVICES | $96,606.00 |
| TOTAL OTHER CHARGES | $2,898.58 |
| TOTAL THIS BILL | $99,504.58 |

PREVIOUS BILLS OUTSTANDING
176467    08/20/07    229.64
$229.64

TOTAL DUE    $99,734.22