Ira D. Tokayer, Esq. (IT-4734)
LAW OFFICES OF IRA DANIEL TOKAYER
42 West 38th Street, Suite 802
New York, New York 10018
Telephone:  (212) 695-5250
Facsimile:  (212) 695-5450
Email:  imtoke@mindspring.com

Peter M. Cho (State Bar No. 213870)
DAVID M. BASS & ASSOCIATES
1900 Avenue of the Stars
Suite 200
Los Angeles, California 90067
Telephone: (310) 789-1152
Facsimile:  (310) 789-1149
Email:  pcho@basslawla.com

Attorneys for Defendant SAMANTHA RONSON

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVIS & GILBERT LLP,<br><br>     Plaintiff,<br><br> vs.<br><br>SAMANTHA RONSON,<br><br>     Defendant. | Index No. 08-CV-02876-JSR<br><br>**DECLARATION OF DAVID M. BASS IN SUPPORT OF DEFENDANT SAMANTHA RONSON'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION; OR, IN THE ALTERNATIVE, TO DISMISS FOR IMPROPER VENUE; OR, IN THE ALTERNATIVE, TO TRANSFER FOR IMPROPER VENUE; OR, IN THE ALTERNATIVE, TO TRANSFER FOR CONVENIENCE**<br><br>Date:   July 15, 2008<br>Time:   5:00 p.m.<br>Courtroom: 14B |

  I, David M. Bass, hereby declare, under penalty of perjury, as follows:

   1.  I am an attorney duly licensed to practice law in the State of California.  My firm, David M. Bass & Associates ("DBA"), is assisting Ira David Tokayer, Esq., who is counsel of record for Defendant Samantha Ronson ("Ronson") in this action.  My colleague,  Peter M. Cho, who is admitted to practice law in the State of New York, is co-counsel for Ronson in this action.  I am also counsel of record for Ronson in an action entitled *Samantha Ronson v. Sunset Photo and News, LLC et al*., Los Angeles County Superior Court Case No. BC374174 (the

"Defamation Action").  On or about December 18, 2007, DBA substituted in as counsel of record for Ronson in the Defamation Action in place of Martin Garbus, Esq. ("Garbus") and his law firm, Plaintiff Davis & Gilbert LLP ("D&G" or "Plaintiff").  This action involves a claim by D&G against Ronson for attorneys' fees and costs allegedly incurred by D&G in connection with its representation of Ronson in the Defamation Action.  Unless otherwise stated, I have personal knowledge of the facts set forth in this Declaration and, if called upon to testify as a witness, I could and would competently testify to these facts.

2.      I have reviewed DBA's files and records in connection with the Defamation Action.  Except where otherwise stated, all of the pleadings, hearing transcripts, and other documents attached as exhibits to this declaration are true and correct copies of documents taken from DBA's files.

3.      On or about December 18, 2007, as part of the transition of Ronson's counsel in the Defamation Action from D&G to DBA, I requested and received a compact disc from Garbus, which contained email communications to and from Garbus regarding the Defamation Action.  These included emails between Garbus and (i) Ronson; (ii) Ronson's business manager, Tom Reed ("Reed"), and (iii) lawyers at Bingham McCutchen LLP ("Bingham"), Ronson's local counsel in the Defamation Action during the time she also was represented by D&G.  All of the emails attached as exhibits to this declaration are true and correct copies of emails from that compact disc.

### *Lavandeira's Defamatory Postings Concerning Ronson*

4.      On or about May 26, 2007, various news outlets began reporting that Lindsay Lohan ("Lohan") was involved in a car accident that morning (the "Accident"), and that Ronson was a passenger in Lohan's car at the time of the Accident.  (Copies of a sampling out of 58 articles regarding the Accident are attached hereto as Exhibit A.)

5.     On or about June 1, 2007, Mario Lavandeira began authoring and publishing a series of posts (the "Postings") on his tabloid website, www.perezhilton.com, concerning the car accident.  In the Postings, Lavandeira made the following statements regarding Ronson:

    a.     [T]he cocaine that was found in Lohan's car after her crash may have been RONSON'S!

    b.     [Ronson] has been selling out Lohan to the paparazzi.

    c.     [Ronson] entered into an agreement with a photo agency to tip them off to her whereabouts with Lindsay [Lohan], even creating photo-ops for them.

    d.     [Lohan had been] betrayed by her "lezbot DJ" pal Samantha Ronson.

(Copies of the Postings are attached hereto as Exhibit B.)

### *Ronson Retains D&G as her Counsel; Lavandeira Files his Motion to Strike*

6.     On or about June 19, 2007, Ronson retained D&G and Garbus to prosecute a complaint for defamation against Lavandeira in Los Angeles, California.  Garbus retained Bingham to serve as local counsel.  On or about July 12, 2007, D&G and Garbus commenced an action against Lavandeira and others in the Los Angeles County Superior Court by filing a Complaint in the Defamation Action.  (The Complaint is attached hereto as Exhibit C.)  Garbus never obtained an order from the Court admitting him and D&G *pro hac vice* in the Defamation Action.

7.     On or about September 4, 2007, Lavandeira filed a Motion to Strike the Complaint under Section 425.16 of the California Code of Civil Procedure (the "Motion to Strike"), on the grounds that (i) Section 425.16 applied to the Complaint because Ronson was a public figure, and (ii) Ronson lacked evidence that Lavandeira's statements were made with actual malice, an element of defamation asserted by public figures.  (The Motion to Strike and supporting memorandum of points and authorities are attached hereto as Exhibit D.)

### *D&G and Garbus Fail to Oppose the Motion to Strike*

8.    On or about September 13, 2007, D&G and Garbus, through Bingham, filed a Memorandum of Law in opposition to the Motion to Strike (the "Opposition").  The Opposition was a two-page memorandum which only requested that the Court allow Ronson to conduct limited discovery for the purpose of opposing the Motion to Strike.  The Opposition did not give sufficient notice under the California Code of Civil Procedure to obtain such discovery.  The Opposition did not substantively oppose the Motion to Strike, other than to summarily conclude that Lavandeira had not met his burden.  (The Opposition is attached hereto as Exhibit E.)

9.    On September 19, 2007, Lavandeira filed his Reply in Support of Motion to Strike (the "Reply").  The Reply pointed out that the Opposition filed by D&G and Garbus

> is, in actuality, no opposition at all.  In fact, ***her entire argument in opposition literally consists of one sentence:*** "As Plaintiff's Opposition sets forth, Defendants have not met their burden."

(Lavandeira's Reply at 1:2-6 (emphasis in original).)  The Reply further noted that, "[t]o make matters worse, ***the Opposition appears to be a sloppily prepared 'cut and paste' from a different document***."  (Lavandeira's Reply at 1:14-15 (emphasis in original).)  (The Reply is attached hereto as Exhibit F.)

10.    Garbus flew out to Los Angeles to appear at the hearing on the Motion to Strike, which took place on September 26, 2007.  That day, Garbus filed an *Ex Parte* Application to Appear *Pro Hac Vice* in the Defamation Action.  The Court denied that Application.  After hearing argument by Garbus and Lavandeira's counsel, the Court continued the hearing on the Motion to Strike to October 10, 2007.  The Court further ordered the parties to file supplemental briefs concerning the public figure and malice issues on or before October 3, 2007.  (Selected portions of the Transcript of Hearing of September 26, 2007 are attached hereto as Exhibit G.)

11.    On or about October 2, 2007, D&G and Garbus filed a supplemental brief in opposition to the Motion to Strike on behalf of Ronson.  The supplemental brief offered

conclusory arguments on the public figure and malice issues. (The supplemental brief is attached hereto as Exhibit H.)

### The Court Provides D&G and Garbus an Opportunity to Conduct
### Discovery Required to Successfully Oppose the Motion to Strike

12.    Garbus flew out to Los Angeles again to appear at the October 10, 2007 hearing on the Motion to Strike.  At the hearing, the Court granted Ronson's request to depose Lavandeira on or before October 19, 2007.  The Court also ordered the parties to submit further supplemental briefs following the deposition and continued the hearing on the Motion to Strike to November 1, 2007.  (The Court's Minute Order of October 10, 2007 is attached hereto as Exhibit I.)  Counsel for the parties then set Lavandeira's deposition for October 19, 2007.

### D&G and Garbus Become Adverse to Ronson in October 2007

13.    In October 2007, a dispute arose between Ronson and her attorneys, D&G and Garbus, over the payment of their fees and costs.

14.    On October 11, 2007, Garbus sent an email to Ronson and Reed acknowledging that Ronson "had some questions about the bill" dated October 8, 2007.  Garbus did not attempt to answer those questions in the email.  (Garbus's October 11, 2007 email is attached hereto as Exhibit J.)

15.    On October 12, 2007, Garbus sent an email to Reed stating that he would not continue to "run up fees" and represent Ronson without a "substantial payment and a [payment] plan."  (Garbus's October 12, 2007 email is attached hereto as Exhibit K.)

16.    That same day, Garbus sent another email to Ronson and Reed in which he attached copies of invoices from D&G for work in connection with the Defamation Action, dated July 18, 2007, August 27, 2007 and October 8, 2007.  Garbus represented in the email that he would "continue to represent [Ronson] until she does have a new attorney."  (Garbus's October 12, 2007 email, together with the attachments, is attached hereto as Exhibit L.)

17.    On October 16, 2007, Garbus sent an email to his co-counsel, Bingham attorney D. Wayne Jeffries ("Jeffries"), asking Jeffries about how to place "a lien on a file to protect fees." (Garbus's October 16, 2007 email is attached hereto as Exhibit M.)

18.    On October 17, 2007, Garbus sent an email to Reed, with a copy to Ronson, attaching an October 17, 2007 invoice from D&G for work in connection with the Defamation Action. Garbus described the invoice as "my final bill which, including the outstanding statements, totals $141,590.55." Garbus also attached a promissory "note for five payments of the outstanding bills, starting November 1, 2007, at $28,318.11 each . . ." (Garbus's October 17, 2007 email, together with the attachments, is attached hereto as Exhibit N.) Ronson did not sign the promissory note.

### Garbus Threatens to Sue and Publicly Embarrass Ronson

19.    On October 18, 2007, Garbus sent an email to Ronson attaching a draft of his declaration in support of a motion for an order permitting him to withdraw as Ronson's counsel. Garbus stated in the email that "I do not want to file this declaration. Please call me." (Garbus's October 18, 2007 email, together with the attachment, is attached hereto as Exhibit O.)

20.    Later that same day, Garbus sent an email to Reed, with a copy to Ronson, in which he turned the prospect of filing his declaration in support of a motion to withdraw into a threat against Ronson. The email states: "The affidavit I sent you will get picked up on the blogs. Avoid it." (Garbus's October 18, 2007 email is attached hereto as Exhibit P.)

21.    On October 18, 2007, Garbus sent another email to Reed, with a copy to Ronson, in which he stated as follows:

> Tom, the faster you get me the consent [to withdrawal], the faster the fees stop. The litigation was, up until recently, ongoing. I told both Samantha and you that the costs for this month until we stopped the litigation would be about $25,000 per week. The mere *fact that no one responded does not mean that one can walk away from the case. A lawyer can't. You can't prejudice a client by not doing certain things.*

(Garbus's October 18, 2007 email is attached hereto as Exhibit Q to the Bass Declaration
[emphasis added].)

22.    On October 23, 2007, only nine days before the final hearing on the Motion to
Strike, Garbus sent an email to Ronson and Reed in which he threatened to sue Ronson, and
warned of the resulting negative publicity:

> Unless I hear from you by Wednesday [October 24, 2007] on the
> bills, I shall file a suit in New York for the payment of the legal
> bills.  A copy of the draft Summons and Verified Complaint is
> attached.  [¶]  Please don't force me to do it.  The blogs will pick it
> up.

(Garbus's October 23, 2007 email, together with the attachments, is attached hereto as
Exhibit R.)  The draft Summons and Verified Complaint attached by Garbus are almost identical
to the Summons and Verified Complaint filed by D&G in New York Supreme Court on
November 13, 2007, only three weeks later, discussed in Paragraph 34, below.

### Garbus Falsely Informs the Court and Opposing Counsel that Ronson has Discharged Him and D&G

23.    On or about October 16, 2007, Garbus sent a letter to Lavandeira's counsel
incorrectly asserting that (i) D&G and Bingham "have been discharged by" Ronson; (ii) they
"no longer represent her in the suit against" Lavandeira; and (iii) they "have no authorization to
take any actions on her behalf."  In that same letter, Garbus confirmed his abandonment of
Ronson in the Defamation Action:

> The attorney that will represent [Ronson] will contact you
> concerning the future scheduling of the deposition of Mario
> Lavandeira and will discuss with you the scheduling of briefs.
> [¶] She has not yet chosen that attorney but it is clear that she will
> not have an attorney capable of taking the October 19[th] deposition
> and will require that that deposition be taken at a later date.

(Garbus's October 16, 2007 letter to Bryan Freedman, Lavandeira's attorney, is attached hereto
as Exhibit S.)

24.    That same day, Garbus improperly sent a letter to the Court, in which he enclosed his October 16, 2007 letter to Lavendeira.  Garbus stated in the letter to the Court that Ronson "is now seeking other counsel to represent her," and inaccurately contended that his "firm and the Bingham McCutchen firm have been discharged" by Ronson.  (Garbus's October 16, 2007 letter, without the enclosure, is attached hereto as Exhibit T).  Notwithstanding that contention, both firms remained counsel for Ronson in the Defamation Action.  Garbus sent the letter to the Court even though Jeffries, his co-counsel at Bingham, informed Garbus in an email that day that some judges do not accept "writings, other than filed documents" and that "writing to the judge will likely not help." (Jeffries' October 16, 2007 email to Garbus and others is attached hereto as Exhibit U.)

### *Garbus Informs Ronson that She Will Have to Represent Herself*
### *at the Hearing on the Motion to Strike*

25.    On October 24, 2007, only one week before the November 1, 2007 hearing on the Motion to Strike, Garbus's co-counsel, Jeffries, sent an email to Garbus in which he made clear to Garbus that, without a new attorney in place, D&G would have to file a motion to withdraw as Ronson's counsel and that "[s]omeone has to represent her in the case."  (Jeffries' October 24, 2007 email is attached hereto as Exhibit V.)

26.    That same day, Garbus sent an email to Ronson and Reed in which he advised Ronson that unless she had a new lawyer before the November 1, 2007 hearing, *Ronson "must appear on her own behalf."*  (Garbus's October 24, 2007 email is attached hereto as Exhibit W [emphasis added].)

27.    Faced with the possibility that she would have to appear at the hearing and represent herself, Ronson sent an email to Garbus on October 24, 2007, asking him to dismiss the case.  (Ronson's October 24, 2007 email is attached hereto as Exhibit X.)

28.    In response to Ronson's email, Garbus sent her an email later that day, which only states: "Will I be getting paid[?]"  (Garbus's October 24, 2007 email is attached hereto as Exhibit Y.)

29.    Just one day before the November 1, 2007 hearing on the Motion to Strike, Garbus sent an email to Reed in which he threatened to file his complaint for fees against Ronson unless he received a "payment of substantial funds" by November 2, 2007.  (Garbus's October 31, 2007 email is attached hereto as Exhibit Z.)

### D&G and Garbus Abandon any Opposition to the Motion to Strike

30.    Garbus failed to conduct Lavandeira's deposition on October 19, 2007.  He failed to take the deposition even though Jeffries, his co-counsel at Bingham, sent Garbus an email four days earlier in which he informed Garbus that "[y]ou are going to have to take the depo on [F]riday unless [F]reedman [Lavandeira's counsel] agrees to move it."  (Jeffries' October 15, 2007 email to Garbus is attached hereto as Exhibit AA.)

31.    On or about October 29, 2007, Lavandeira filed a Supplemental Brief in Support of the Motion to Strike (the "Supplemental Brief").  Lavandeira accurately noted in the Supplemental Brief that, as of October 29, 2007, "no motion to be relieved as counsel or substitution of attorney form has been filed with the Court," and that Lavandeira's "deposition did not take place by October 19, 2007 as ordered by the Court."  (Supplemental Brief at 1:18-20 (emphasis omitted).)  (The Supplemental Brief and supporting declarations, without the exhibits thereto, are attached hereto as Exhibit BB.)

32.    As of November 1, 2007, D&G and Garbus had failed to: (i) take the deposition of Lavandeira; and (ii) submit a supplemental brief in advance of the November 1, 2007 hearing on the Motion to Strike.  Moreover, Garbus and Jeffries sent emails to each other in which each assumed that the other person would attend and argue on Ronson's behalf at the November 1, 2007 hearing.  (Jeffries' October 31, 2007 email and Garbus's November 1, 2007 email are attached hereto as Exhibits CC and DD, respectively.)

33.     Jeffries appeared on behalf of Ronson at the November 1, 2007 hearing, but did not make a single argument in opposition to the Motion to Strike.  At the conclusion of the hearing, the Court granted the Motion to Strike.  In granting the Motion to Strike, the Court stated, among other things, as follows:

> Plaintiff [Ronson] has not presented evidence to show that any statements made by the defendants were made with malice or reckless indifference.  ***Plaintiff has not filed any supplemental papers, notwithstanding the fact that the court gave [Plaintiff] an opportunity to take the deposition of Lavandeira and to file supplemental papers***.  Thus, plaintiff has not met her burden to show a probability of prevailing even on the minimum evidentiary standard that is required in a SLAPP motion . . .

Transcript of Hearing of November 1, 2007, at 16:5-13 (emphasis added).) (Selected portions of the Transcript of Hearing of November 1, 2007 and the Court's Minute Order of November 1, 2007, are attached hereto as Exhibits EE and FF, respectively.)

### *D&G Files an Action against Ronson while*
### *Still Counsel for Ronson in the Defamation Action*

34.     On or about November 13, 2007, Garbus, on behalf of D&G, filed an action against Ronson in the Supreme Court of the City of New York, County of New York, entitled *Davis & Gilbert LLP v. Samantha Ronson*, Index No. 603759-07 (the "First New York Action").  D&G alleged in the First New York Action that it was owed $141,590.55 and Bingham was owed $23,340.17 in attorneys' fees and costs in connection with their work in the Defamation Action.  (Copies of the Summons and Verified Complaint in the First New York Action are attached hereto as Exhibit GG.)

35.     At the time Garbus and D&G commenced the First New York Action, they were still counsel for Ronson in the Defamation Action and had not been fired or discharged by Ronson.

36.    On or about December 18, 2007, DBA substituted in as counsel of record for Ronson in the Defamation Action, in place of Garbus and D&G.  In the Substitution of Attorney form filed in the Defamation Action, DBA mistakenly stated that Garbus had been admitted *pro hac vice* because it had been led to believe that Garbus had been so admitted.  (The Substitution of Attorney Form is attached hereto as Exhibit HH).

37.    On or about December 11, 2007, Ronson removed the First New York Action to this Court.  On or about January 22, 2008, D&G dismissed the First New York Action without prejudice.

38.    On or about March 18, 2008, D&G filed this action.

### *Ronson's Action Against D&G and Garbus*

39.    On or about May 1, 2008, DBA, on behalf of Ronson, filed a Complaint for (1) Negligence; (2) Breach of Contract; (3) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (4) Breach of Fiduciary Duty against D&G, Garbus, and Bingham in the action entitled *Samantha Ronson v. Martin Garbus, et al.,* Los Angeles County Superior Court Case No. BC390043 (the "Malpractice Action.")  (A true and correct copy of the face page of the Complaint in the Malpractice Action is attached hereto as Exhibit II).  Counsel for D&G and Garbus has appeared in the Malpractice Action and has served Notices of Deposition upon DBA seeking to take my deposition, as well as the depositions of Ronson, Lohan, Reed, and Reed's wife.  Counsel for D&G and Garbus has noticed all of these depositions for Los Angeles, California.

### *The Witnesses and Evidence are Located*
### *in the Central District of California*

40.    It would be unfair and seriously inconvenient for Ronson, a resident of Los Angeles, California, to have to defend this action in New York.  As discussed below, all of the potential witnesses in this action other than Garbus are located in the Los Angeles area.

41.     The following are the names and addresses of persons known to be percipient witnesses to any of the matters raised in the pleadings in this action, and the matters upon which they are expected to testify:

(1)     Tom Reed; 23622 Calabasas Road, Suite 101, Calabasas, CA 91302. Reed is Ronson's business manager. He will testify to the formation of the attorney-client relationship between D&G and Ronson in California, Garbus's frequent visits to Los Angeles regarding the Defamation Action, and D&G's abandonment of the Defamation Action, among other matters.

(2)     Bruce Friedman, Esq.; 1620 26th Street, 4th Floor, North Tower, Santa Monica, CA 90404. Mr. Friedman, an attorney at Bingham, served as local counsel for Ronson in the Defamation Action. He will testify to Garbus's frequent visits to Los Angeles regarding the Defamation Action, D&G's abandonment of the Defamation Action, and D&G's acts of malpractice in connection with the Defamation Action, among other matters.

(3)     D. Wayne Jeffries, Esq.; 1620 26th Street, 4th Floor, North Tower, Santa Monica, CA 90404. Jeffries, an attorney at Bingham, served as local counsel for Ronson in the Defamation Action. He will testify to Garbus's frequent visits to Los Angeles regarding the Defamation Action, D&G's abandonment of the Defamation Action, and D&G's acts of malpractice in connection with the Defamation Action, among other matters.

(4)     Gina Simas, Esq.; 1620 26th Street, 4th Floor, North Tower, Santa Monica, CA 90404. Ms. Simas, an attorney at Bingham, served as local counsel for Ronson in the Defamation Action. She will testify to Garbus's frequent visits to Los Angeles regarding the Defamation Action, D&G's abandonment of the Defamation Action, and D&G's acts of malpractice in connection with the Defamation Action, among other matters.

(5)     Donna McGee; 1620 26th Street, 4th Floor, North Tower, Santa Monica, CA 90404.  Ms. McGee, a Bingham employee, will testify to Garbus's frequent visits to Los Angeles regarding the Defamation Action, D&G's abandonment of the Defamation Action, and D&G's acts of malpractice in connection with the Defamation Action, among other matters.

(6)     Bryan Freedman, Esq.; 1901 Avenue of the Stars, Suite 500, Los Angeles, CA 90067.  Mr. Freedman is an attorney at Freedman & Taitelman, LLP, co-counsel for Lavandeira in the Defamation Action.  He will testify to Garbus's frequent visits to Los Angeles regarding the Defamation Action, D&G's abandonment of the Defamation Action, and D&G's acts of malpractice in connection with the Defamation Action, among other matters.

(7)     Jacqueline Brown, Esq.; 1901 Avenue of the Stars, Suite 500, Los Angeles, CA 90067.  Ms. Brown is an attorney at Freedman & Taitelman, LLP, co-counsel for Lavandeira in the Defamation Action.  She will testify to Garbus's frequent visits to Los Angeles regarding the Defamation Action, D&G's abandonment of the Defamation Action, and D&G's acts of malpractice in connection with the Defamation Action, among other matters.

(8)     Gregory Doll, Esq.; 1888 Century Park East, Suite 1106, Los Angeles, CA 90067.  Mr. Doll is an attorney at Doll Amir & Eley LLP, co-counsel for Lavandeira in the Defamation Action.  He will testify to Garbus's frequent visits to Los Angeles regarding the Defamation Action, D&G's abandonment of the Defamation Action, and D&G's acts of malpractice in connection with the Defamation Action, among other matters.

(9)     Michael Amir, Esq.; 1888 Century Park East, Suite 1106, Los Angeles, CA 90067.  Mr. Amir is an attorney at Doll Amir & Eley LLP, co-counsel for Lavandeira in the Defamation Action.  He will testify to Garbus's frequent visits to Los Angeles regarding the Defamation Action, D&G's abandonment of the Defamation Action, and

D&G's acts of malpractice in connection with the Defamation Action, among other matters.

(10)    Maurice Wainer, Esq.; 270 North Canon Dr., Penthouse, Beverly Hills, CA 90210.  Mr. Wainer was counsel for Defendants Sunset Photo and Jill Ishkanian in the Defamation Action.  He will testify to Garbus's frequent visits to Los Angeles regarding the Defamation Action, D&G's abandonment of the Defamation Action, and D&G's acts of malpractice in connection with the Defamation Action, among other matters.

(11)    Mario Lavandeira; c/o Bryan Freedman, Esq.; 1901 Avenue of the Stars, Suite 500, Los Angeles, CA 90067. Mr. Lavandeira will testify to the facts and circumstances underlying the Defamation Action, among other matters.

42.    The interests of justice and the convenience of the parties and witnesses would be served by transferring this action to the Central District of Los Angeles for the following reasons:

(1)    It would be burdensome and inconvenient for the witnesses identified herein to attend trial in New York because of the expense of travel and time away from their business and other pursuits.

(2)    It would not be possible to subpoena the third party witnesses identified herein for trial in New York; and they are subject to subpoena in the district to which transfer is sought; and

(3)    All of the books and records of the witnesses identified herein are located in the district to which transfer is sought.

Dated: Los Angeles, California
June 2, 2008

_____
/s/
DAVID M. BASS



Lindsay Lohan arrested on suspicion of drunken driving; police find.    http://www.iht.com/bin/print.php?id=5879059

INTERNATIONAL
## Herald Tribune

# Lindsay Lohan arrested on suspicion of drunken driving; police find possible cocaine

**The Associated Press**
Saturday, May 26, 2007

**BEVERLY HILLS, California:** Lindsay Lohan was arrested on suspicion of driving under the influence after her convertible struck a curb, and investigators found what they believe is cocaine at the scene, police said.

Lohan, 20, and two other people were in her 2005 Mercedes SL-65 when it crashed on Sunset Boulevard around 5:30 a.m. Saturday, Sgt. Mike Foxen said. It appeared Lohan was speeding, Lt. Mitch McCann said at an afternoon news conference.

Officers at the scene found a "usable amount" of a drug tentatively identified as cocaine, McCann said. He declined to say where the drug was found other than to say Lohan was not carrying it.

Lohan, who spent time at a rehabilitation center earlier this year, was driven in another car to a hospital for treatment of minor injuries, McCann said. The two other people in her car were not hurt.

Officers received an emergency call about the accident and arrested Lohan at the hospital for investigation of misdemeanor driving under the influence of alcohol or drugs, McCann said.

She was released from custody because she was admitted to the hospital, police said.

McCann declined to comment on Lohan's blood-alcohol level. He said the case will be presented to the District Attorney's Office where the actress could face more charges, including felonies. Her tentative arraignment date is Aug. 24.

Lohan will have to appear in court to answer the citation, first reported on the Web site of X17 Inc., a celebrity photo agency.

The crash was Lohan's third accident in about two years. In October 2005, Lohan and a passenger received minor injuries when her convertible hit a van in West Hollywood. Authorities said the van driver, who also received minor injuries, was at fault.

Months earlier, Lohan collided with a minivan when she made a U-turn as the van, carrying paparazzi, followed her from a Los Angeles restaurant. A photographer was arrested for investigation of assault with a deadly weapon but prosecutors declined to charge him.

That crash was credited with prompting Gov. Arnold Schwarzenegger to sign a law that set steep financial penalties for paparazzi who commit assaults while trying to obtain celebrity photos.

Lohan publicist Leslie Sloane Zelnik did not immediately return an e-mail requesting comment.

Lohan said in January that she had checked into a rehabilitation center for substance abuse treatment. Her publicist confirmed in December that the actress was attending Alcoholics Anonymous meetings.

Lohan told Allure magazine during an interview for its May issue that she decided to enter the secluded Wonderland Center at the suggestion of her therapist.

"It's so weird that I went to rehab. I always said I would die before I went to rehab," Lohan told the publication.

Lohan's latest movie, "Georgia Rule," is in theaters now. The actress' other screen credits include "Mean Girls," "Bobby," "A Prairie Home Companion" and "Freaky Friday."

Notes:

I H T    Copyright © 2008 The International Herald Tribune |

NEWS

# Lindsay Lohan Booked on Suspicion of DUI

**Actress Lindsay Lohan Arrested on Suspicion of DUI After Her Mercedes Hits Beverly Hills Curb**

By CHRISTOPHER WEBER

*The Associated Press*

BEVERLY HILLS, Calif.

Lindsay Lohan was arrested on suspicion of driving under the influence Saturday after her convertible struck a curb, and investigators found what they believe is cocaine at the scene, police said.

Lohan, 20, and two other people were in her 2005 Mercedes SL-65 when it crashed on Sunset Boulevard around 5:30 a.m., Sgt. Mike Foxen said. It appeared the actress was speeding, Lt. Mitch McCann said at an afternoon news conference.

Officers at the scene found a "usable amount" of a drug tentatively identified as cocaine, McCann said. He declined to say where the drug was found other than to say Lohan was not carrying it.

Lohan, who spent time at a rehabilitation center earlier this year, was driven in another car to a hospital for treatment of minor injuries, McCann said. The two other people in her car were not hurt.

Officers received a 911 call about the accident and arrested Lohan at the hospital for investigation of misdemeanor driving under the influence of alcohol or drugs, McCann said

She was released from custody because she was admitted to the hospital, police said.

McCann declined to comment on Lohan's blood-alcohol level. He said the case will be presented to the District Attorney's Office where the actress could face more charges, including felonies. Her tentative arraignment date is Aug. 24.

The crash was Lohan's third accident in about two years. In October 2005, Lohan and a passenger received minor injuries when her convertible hit a van in West Hollywood. Authorities said the van driver, who also received minor injuries, was at fault.

Months earlier, Lohan collided with a minivan when she made a U-turn as the van, carrying paparazzi, followed her from a Los Angeles restaurant. A photographer was arrested for investigation of assault with a deadly weapon but prosecutors declined to charge him.

That crash was credited with prompting Gov. Arnold Schwarzenegger to sign a law that set steep financial penalties for paparazzi who commit assaults while trying to obtain celebrity photos.

Lohan publicist Leslie Sloane Zelnik did not immediately return an e-mail requesting comment.

Lohan said in January that she had checked into a rehabilitation center for substance abuse treatment. Her publicist confirmed in December that the actress was attending Alcoholics Anonymous meetings.

Lohan told Allure magazine during an interview for its May issue that she decided to enter the secluded Wonderland Center at the suggestion of her therapist.

"It's so weird that I went to rehab. I always said I would die before I went to rehab," Lohan told the publication

Lohan's latest movie, "Georgia Rule," is in theaters now. The actress' other screen credits include "Mean Girls," "Bobby," "A Prairie Home Companion" and "Freaky Friday."

*Copyright 2008 The Associated Press. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.*

Copyright © 2008 ABC News Internet Ventures



# Lohan Checks Into Rehab After Car Crash

**Lindsay Lohan Checks Into Rehab Center After Weekend Car Crash and DUI Arrest**

**By SANDY COHEN**

***The Associated Press***

### LOS ANGELES

Lindsay Lohan has checked into rehab. Again. The move followed a weekend during which the wild-child actress, who is a month shy of her 21st birthday, crashed her Mercedes, was arrested for suspicion of driving under the influence and was photographed slumped in the passenger seat of a friend's car.

Lohan "admitted herself to an intensive medical rehabilitation facility" on Monday, according to a statement released by her publicist, Leslie Sloane Zelnick. The statement added, "Because this is a medical matter, it is our hope that the press will appreciate the seriousness of the situation and respect the privacy of Lindsay as well as the other patients receiving treatment at the facility."

This is Lohan's second rehab stint this year. She said in January that she had checked into a rehabilitation center for substance abuse treatment.

"It's so weird that I went to rehab," Lohan said in Allure magazine's May issue. "I always said I would die before I went to rehab."

Lohan was arrested Saturday morning on suspicion of driving under the influence after her car hopped a curb and hit a shrub on Sunset Boulevard.

Witnesses called police, who arrived to find both Lohan and the vehicle missing from the accident site, said Beverly Hills Police Lt. Mitch McCann.

"We tracked down the vehicle to a nearby apartment complex and tracked down Ms. Lohan to a Century City hospital," he said Tuesday.

Officers investigating the crash also found a substance tentatively identified as cocaine.

The case remains under investigation, McCann said. Lohan could face additional charges for leaving the scene, he said, adding "we would take into consideration that she was injured and transported to a hospital."

Her preliminary court date is scheduled for Aug. 24. She will be represented by attorneys Blair Berk and Jason Sloane. Neither returned calls for comment Tuesday.

Lohan was back out on the town before the Memorial Day weekend was over. Photographers captured her slumped in the passenger seat of a friend's car early Monday morning. The photos, posted online, show a sweatshirt-clad Lohan with her mouth open and her eyes shut, apparently asleep.

"The world has been very hard on her," said Michael Heller, an attorney and Lohan family friend. "She has a lot of personal issues and family issues. There's an incredible amount of pressure on this 20-year-old."

He also noted on Tuesday that Lohan has "gone from one movie to the next," spending long stretches of time away from her family.

"She's living in a hotel," he said. "It's a very lonely existence."

Lohan's mother, Dina Lohan, told Us Weekly magazine earlier this month that when her daughter isn't working, "she's so bored."

"I've told her, `Please slow down. Stop!' She's growing up and learning to do that. She really loves the business," the mother said.

Lohan was originally set to begin work this week on "Poor Things," a comedy starring Shirley MacLaine, Olympia Dukakis, Rosario Dawson and Channing Tatum, the trade paper Variety reported Monday. The company behind the project, Still Rolling Productions, did not return calls or e-mails from The Associated Press Tuesday.

Lohan did her first movie at age 11: Disney's remake of "The Parent Trap." Her breakout role came in 2004's "Mean Girls." She released her debut album that same year.

Her other screen credits include "Freaky Friday," "Bobby" and "A Prairie Home Companion."

Her most recent movie, "Georgia Rule," is in theaters now. During its production last summer, one of the film's producers chastised Lohan for her "various late arrivals and absences from the set."

"We are well aware that your ongoing all night heavy partying is the real reason for your so-called `exhaustion,'" James G. Robinson wrote in a letter made public in July 2006.

Lohan will turn 21 on July 2

"This is a time when she will reflect backwards and think forward," Heller said. "Hopefully she will plan a future that will be fruitful artistically, professionally (and) take a place in society that will be appropriate for someone of her standing."

Associated Press Writer Solvej Schou contributed to this report.

*Copyright 2008 The Associated Press. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.*

Copyright © 2008 ABC News Internet Ventures

NEWS

# Lindsey Lohan's Hard-Partying Gal Pal

**Lohan Passed Out in the Passenger Seat of Her Car, So Just Who Is Samantha Ronson?**

By BLAIR SODEN

May 31, 2007 —

Their names are synonymous with wild parties and Hollywood night life: Britney, Lindsay, Paris. And, until Britney went into rehab, they were often photographed as a threesome.

But when Lindsay Lohan, 20, had a wild Memorial Day weekend crashing her Mercedes and getting arrested on suspicion of DUI, photos splashed across tabloids from coast to coast of the unravelling actress didn't feature Hilton or Spears. Instead, some showed her passed out in the front seat of a car belonging to a new gal pal: Samantha Ronson.

Now, inquiring minds want to know, just where does Ronson fit in the Lohan loop?

## Who Is Samantha Ronson?

Ronson, 29, is a DJ who recently broke out onto the VIP club scene. She's already spun the decks at some of the hippest clubs across America and performed at parties for Maxim and PlayStation, at the Super Bowl, with Lohan on the American Music Awards, at Sundance and the VMAs in Miami.

So why don't most Americans recognize Ronson's name?

Jonathan Jaxson, a former Hollywood publicist and celebrity blogger (http://jonathanjaxson.blogspot.com/), says Ronson's been around for awhile, but has flown under the national radar until recently.

"She's been an indie-house DJ girl forever. She comes really from the woodwork and has risen in fame overnight," said Jaxson.

But what Jaxson calls "forever" really wasn't such a long road for Ronson -- there's already a famous DJ in the industry named Ronson, her older brother Mark. Maya Henderson, a freelance music and club critic in Chicago, says following in her brother's footsteps helped put Ronson on the map.

"Mark Ronson is a very well-known and respected hip-hop producer, which is probably how she got into the scene," Henderson said.

Despite Ronson's efforts to make a name for herself as a DJ, her association with Lohan and company has really put her on the map. So how did a relatively unknown DJ meet up with Hollywood's latest "it" crowd?

It's simple: Like Hilton, Ronson's an heiress.

### Confessions of an Heiress

Ronson, hardly a struggling artist with a rags-to-riches story, is the daughter of Anne Dexter-Jones, a renowned New York socialite. Until recently Dexter-Jones was married to Ronson's stepfather, Mick Jones of the '80s rock band Foreigner. The couple divorced in early 2007.

David Patrick Columbia, of the New York Social Diary (http://www.newyorksocialdiary.com/), describes Ronson's family background as a little bit social, a little bit rock 'n' roll.

"They really crossed into two different areas, the rock music and the social area," Columbia told ABC News. "That whole world now is so homogenized that it's all kind of one Celebrityville."

Like Hilton, Ronson grew up on the New York social scene, but unlike Hilton, she didn't break into Hollywood or the gossip magazines until recently. She's been a familiar face on the New York Post's Page Six for years.

"She's a big party girl and she's been a big party girl and a big part of that party scene for a long time," said Columbia.

### Livin' La Vida Lohan

While Ronson's East Coast socialite status outfitted her with the necessary pedigree for fame and fortune, it's her recently publicized relationship with Lohan that's spreading her name past New York's South Hampton society.

"It's Hollywood. If you want to be famous, get Lindsay in the picture with you and you're going to be famous," said Jaxson. "People are going to wonder who the hell is this Samantha Ronson?"

Jaxson says it doesn't take much to get noticed.

"Any association with Lindsay Lohan, regardless if you even have lunch with her, brings you out into the spotlight," Jaxson said.

But Ronson's done more than just lunch. One of the DJ's earliest known associations with Lohan may be their work on the same film in 2004. Ronson's single "Built This Way" appeared in Lohan's breakout hit movie "Mean Girls."

But Jaxson says the two go even further back than that. "Sam's a good friend of Lindsay's. They've been friends for a long time," he said.

Jaxson says the two are actually romantically involved. "I hung out with them in March in New York and revealed on my blog that Sam and Lindsay were dating," said Jaxson.

Lohan and Ronson have yet to address that rumor publicly. And Lohan was recently photographed cavorting in the Caribbean with model Callum Best.

### Lohan Back in Rehab -- Is Ronson Responsible?

Is that close friendship, or even relationship, affecting Lohan negatively?

Ronson was by Lohan's side during most of the wild holiday weekend. It is rumored that it was Ronson leaving Lohan's apartment that prompted the star to get in her car and chase after the DJ, only to crash on the way back to the apartment. Lohan was arrested after the incident early Saturday morning.

Two days later, photos of Lohan passed out in the front seat of Ronson's car are making national and international news. Lohan has returned to rehab at Promises in Los Angeles.

"Now you have these very young actresses like Lindsay Lohan who are spending themselves on their night life and they always attract a group of people who are a part of that world and Samantha Ronson is a major part of that world. She's a downtown DJ," said Columbia.

But Jaxson says Ronson isn't acting like a real friend.

"All these people say they want to help Lindsay, but nobody's telling her to stop doing the drugs. & Everybody encourages her," said Jaxson.

### DJ Sam -- Can Her Career Stand Alone?

With Lohan back in rehab, will Ronson's budding DJ career be able to survive without her famous promoter?

Henderson has her doubts. She says it's Ronson's celebrity associations that bring the crowds, not her musical talents. After a recent performance in Chicago, Henderson said that Ronson was unimpressive and that she had the right tools to be a successful DJ but lacked talent.

"It's easier to be a DJ now because of MP3 files  It looks like you're spinning, but you're really just playing music off the computer," said Henderson. "As far as turntable skills, I didn't see any of that from her."

Without a successful career to carry her name, will Ronson continue to be a name by association at least?

Jaxson says no. He thinks Ronson's celebrity will fade just as quickly as her music career. "She's only been really out there a couple of months. She'll die out like all the others," said Jaxson.

Only time and the tabloids can tell.

Copyright © 2008 ABC News Internet Ventures



Exhibit B



welcome to

**PEREZHILTON**.com

Celebrity Juice, Not from Concentrate

## WELCOME

Welcome to PerezHilton.com, Hollywood's Most Hated Website!

### SEND TIPS!

E-mail: Perez@PerezHilton.com

Click to email or problems

### ADVERTISE!

FOR INFORMATION ON PREMIER ADVERTISING AND SPONSORSHIP ON PEREZHILTON.COM EMAIL PHILTON@gorilla.com

### REPRESENT!



Perezcious Collection
shop our online store
click

### STARSEEKER

Jump to...

Search

## Lindsay's Lover *And* Her Rival????

Filed under: Lindsay Lohan



Drugs. Backstabbing. Gay sex. We LOVE it! Now that **Lindsay Lohan** is ensconced within the safe confines of rehab, the dangerous influences in her life are being revealed. And we don't mean the drugs. It's her enablers friends! Lohan's group of paid pals and hangers-on have been toxic to the hard-pAArtying star, most notably rumored lesbian lover and DJ **Samantha Ronson**. Lindsay and Samantha got into a huge fight the night of her DUI arrest, with Lohan - according to eyewitnesses - screaming at Ronson in the middle of the street, "You fucking lesbian bitch!" According to new reports, Ronson has been selling out Lohan to the paparazzi. Samantha's allegedly entered into an agreement with a photo agency to tip them off to her whereabouts with Lindsay, even creating photo-ops for them. Plus, the cocaine that was found in Lohan's car after her crash may have been RONSON'S!

White her DJ pal Samantha Ronson, 29, looks like she's there to help her pal through thick and thin, she's really making a tidy profit on the side, shilling Lohan, 20, out to photographers eager to get her photo looking passed out and wasted. While an "out of it" Lohan thought she was just going home after a night out at Teddy's in Hollywood on May 27, Ronson made a side trip to a gas station. A source tells Celebrity Babylon, "The car was only down a quarter tank, and yet Samantha stopped for gas. She has a side deal with a photo agency and they paid her to make the pit stop!" If that wasn't shocking enough, sources say that it was Ronson who was holding the cocaine later found in Lindsay's car." There were three of them crammed into the Mercedes sports car and Samantha was the one that had the cocaine with her. Lindsay later questioned her about leaving it in the car for the cops to find and Samantha blew her off." Ronson, who makes anywhere from $7,000 to $3,000 a night deejaying at clubs and private parties, has accumulated a substantial side income taking her pal in front of paparazzi cameras for money

With friends like Samantha Ronson, Lindsay doesn't need any enemies Though she's got plenty of those too!

Posted: June 1, 2007 at 4:02 pm



welcome to
# PEREZHILTON.COM
**Celebrity Juice, Not from Concentrate**

**WELCOME**

Welcome to Perez Hilton.com,
Hollywood's Most Hated Web
Site...

**SEND TIPS!**

E-mail
Perez@PerezHilton.com

Other technical problems

**ADVERTISE!**

FOR INFORMATION ON
PREMIUM ADVERTISING
AND SPONSORSHIP ON
PEREZHILTON.COM EMAIL
PHILTON@BLOGADS.COM

**REPRESENT!**



Perezcious
Collection
shop our online store
CLICK

**STARSEEKER**

Jump to...

Search

## Blame Samantha!

Filed under: Lindsay Lohan





Was **Lindsay Lohan** betrayed by her lezbot DJ pal **Samantha Ronson**?
Australia's *NW* magazine seems to think so. And we wouldn't disagree!

Posted: June 13, 2007 at 7:23 pm

Exhibit C

1   BINGHAM MCCUTCHEN LLP
2   Bruce A. Friedman (SBN 065852)
    1620 26th Street
3   Fourth Floor, North Tower
    Santa Monica, CA  90404-4060
4   (310) 907-1000

5   DAVIS & GILBERT LLP
6   Martin Garbus
    James R. Levine
7   1740 Broadway
    New York, NY  10019
8   (212) 468-4800

9   Attorneys for Plaintiff
10  SAMANTHA RONSON

11

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                       COUNTY OF LOS ANGELES

14                                                    BC374174

15  SAMANTHA RONSON,                 Case No.:

16              Plaintiff,

17       vs.                         **COMPLAINT FOR DAMAGES**
                                     **(Libel)**
18  SUNSET PHOTO AND NEWS, LLC, JILL
    ISHKANIAN, MARIO LAVANDEIRA       **JURY TRIAL DEMANDED**
19  doing business as PEREZ HILTON,
    and DOES 1-10, inclusive,
20
21              Defendants.

22

23       Plaintiff SAMANTHA RONSON ("Ronson"), by her attorneys, Bingham McCutchen LLP

24  and Davis & Gilbert LLP, for her Complaint against Defendants SUNSET PHOTO AND NEWS,

25  LLC; JILL ISHKANIAN; MARIO LAVANDEIRA doing business as PEREZ HILTON; and

26  DOES 1 through 10, states as follows:

27       1.     Plaintiff Ronson is an individual who resides and does business in Los Angeles

28  County, California.

-1-

COMPLAINT FOR DAMAGES

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JUN 1 2 2007

John A. Clarke, Executive Officer/Clerk

By_____, Deputy

1      2.     Ronson is a professional disc jockey ("DJ") who is regularly hired to perform at

2   exclusive parties and events. Ronson has previously performed at events such as pop star Jessica

3   Simpson's birthday party; corporate events for Blender, Maxim, PlayStation at the Superbowl and

4   ElleGirl; and entertainment awards shows including the Video Music Awards in Miami,

5   Sundance, and the Independent Film Channel Awards.

6      3.     Defendant Sunset Photo and News, LLC ("Sunset Photo") is, upon information and

7   belief, a limited liability company organized and existing under the laws of the State of California,

8   with its principal place of business located at 8491 Sunset Boulevard, Suite 117, West Hollywood,

9   in the County of Los Angeles, California. Upon information and belief, Sunset Photo is a

10  "paparazzi agency" that specializes in collecting and distributing photographs and gossip about

11  famous entertainers and other celebrities.

12     4.     Upon information and belief, Sunset Photo owns and controls the online magazine,

13  CelebrityBabylon.com ("Celebrity Babylon"). Celebrity Babylon is an online magazine, publicly

14  available on the Internet, that publishes gossip about famous entertainers and other celebrities.

15     5.     Defendant Jill Ishkanian ("Ishkanian") is an individual who, upon information and

16  belief, does business in the County of Los Angeles, California, at 8491 Sunset Boulevard, Suite

17  117, West Hollywood, California, as a principal of Sunset Photo and as Editor-in-Chief of

18  Celebrity Babylon.

19     6.     Defendant Mario Lavandeira ("Lavandeira"), doing business as Perez Hilton, is an

20  individual who, upon information and belief, maintains a place of business at 11601 Wilshire

21  Boulevard, Suite 2040, in the County and City of Los Angeles, California, and resides in the

22  County of Los Angeles, California.

23     7.     Upon information and belief, Defendant Lavandeira, doing business as Perez

24  Hilton, owns and controls "PerezHilton.com," a website that publishes gossip about famous

25  entertainers and other celebrities.

26     8.     The true names of defendants DOES 1 through 10, inclusive, are unknown to

27  Plaintiff, who therefore sues such defendants by fictitious names. Plaintiff is informed and

28  believes, and based on that information and belief alleges, that each of the defendants designated

-2-

1   as a DOE is legally responsible for the events and happenings referred to in this complaint, and

2   unlawfully caused the injuries and damages to Plaintiff alleged in this complaint

3        9.      Jurisdiction and venue are proper in this Court in that Plaintiff resides in and has

4   suffered injury in California as a result of Defendants' tortious act of publishing defamatory

5   statements about Plaintiff on the Internet, which was published to millions of people in the United

6   States including persons in the State of California, and because Defendants are headquartered

7   and/or reside in the County of Los Angeles, California

8       10.     On or about May 26, 2007, news outlets and websites began reporting that, early in

9   the morning on May 26, 2007, celebrity actress Lindsay Lohan ("Lohan") was involved in a car

10   accident on Sunset Boulevard in Beverly Hills, California; that Lohan was under suspicion for

11   driving under the influence of alcohol; and that the police who were called to the scene found

12   cocaine in Lohan's car. Ronson was in the car with Lohan at the time of the incident.

13      11.     The incident involving Lohan's car accident received widespread media attention.

14      12      Upon information and belief, between March 27 and June 1, 2007, the online

15   magazine Celebrity Babylon published an article accusing Ronson of planting drugs in Lohan's

16   car and "setting up" Lohan for press photographers in exchange for money.

17      13.     Upon information and belief, the article in Celebrity Babylon stated, *inter alia*:

18

19           Celebrity Babylon has learned that while her DJ pal Samantha Ronson, 29, looks

20         like she's there to help her pal through thick and thin, she's really making a tidy
profit on the side, shilling Lohan, 20, out to photographers eager to get her photo
looking passed out and wasted. While an "out of it" Lohan thought she was just

21         going home after a night out at Teddy's in Hollywood on May 27, Ronson made a
side trip to a gas station. A source tells Celebrity Babylon, "The car was only down

22         a quarter tank, and yet Samantha stopped for gas She has a side deal with a photo
agency and they paid her to make the pit stop!" If that wasn't shocking enough,

23         sources say that it was Ronson who was holding the cocaine later found in
Lindsay's car. "There were three of them crammed into the Mercedes sports car

24         and Samantha was the one that had the cocaine with her. Lindsay later questioned

25         her about leaving it in the car for the cops to find and Samantha blew her off."
Ronson, who makes anywhere from $2,000 to $3,000 a night deejaying at clubs

26         and private parties, has accumulated a substantial side income taking her pal in
front of paparazzi cameras for money.

27

28

COMPLAINT FOR DAMAGES

1      14.    The statements in the article concerning Ronson, reproduced above, are false and

2    libelous, and purport to state facts about Ronson which are false.

3      15.    The article explicitly and unambiguously refers to Ronson.

4      16.    The article refers to Ronson by name throughout, was made of and concerning

5    Ronson, and was so understood by those who read the article.

6      17.    The statements about Ronson were falsely, maliciously, and intentionally published

7    by the Defendants and were known by Defendants to be false at the time they were made.

8    Defendants published these statements with actual malice and with the intent to cause harm to

9    Ronson.

10      18.    Celebrity Babylon is publicly available on the Internet and has been viewed by and

11    communicated to an unknown number of third persons, including individuals in the State of

12    California and throughout the United States and the world.

13      19.    The statements, including statements that Ronson had planted cocaine, have been

14    reproduced on numerous other celebrity gossip websites such as perezhilton.com, celebitchy.com,

15    socialitelife.com, hollyscoop.com, evilbeetgossip.com, poponthepop.blogspot.com, and

16    gossip.commongate.com.

17      20.    On or about June 1, 2007, Defendant Lavandeira published an article on

18    PerezHilton.com that reproduced the above statements by Celebrity Babylon regarding Ronson.

19    In addition, Lavandeira added additional statements about Ronson including statements that

20    Ronson has been "toxic" to Lohan; that "According to new reports, Ronson has been selling out

21    Lohan to the paparazzi"; that Ronson "allegedly entered into an agreement with a photo agency to

22    tip them off to her whereabouts with Lindsay, even creating photo-ops for them"; that "the cocaine

23    that was found in Lohan's car after her crash may have been RONSON's!" (emphasis in original);

24    and that "With friends like Samantha Ronson, Lindsay doesn't need any enemies."

25      21.    On or about June 13, 2007, Defendant Lavandeira published an article on

26    PerezHilton.com – under the headline "Blame Samantha!" – that stated "Was Lindsay Lohan

27    betrayed by her lezbot DJ pal Samantha Ronson? Australia's *NW* magazine seems to think so.

28    And we wouldn't disagree!" The article also contained a picture (apparently reproduced from a

-4-

1 │ magazine) of Defendant Lavandeira wearing a sweatshirt bearing the words in large capital letters,

2 │ "BLAME SAMANTHA," with a caption stating "Celeb gossip guru Perez Hilton has described

3 │ the DJ's influence on Lindsay's life as 'toxic' . . . and wears this top to prove his point."

4 │      22.     Defendants knew that the statements about Ronson described above were false

5 │ and/or recklessly disregarded the falsity of these statements when they published them.

6 │ Defendants published these statements with actual malice and with the intent to cause harm to

7 │ Ronson.

8 │      23.     The statements about Ronson are libelous on their face.  They accuse Ronson of

9 │ criminal activity and expose her to hatred, contempt, ridicule and obloquy because they

10 │ inaccurately portray Ronson as a disloyal, dishonest friend who "sold out" and "set up" her friend

11 │ Lohan for personal financial gain.

12 │      24.     The statements about Ronson adversely affect Ronson in her professional life as a

13 │ DJ and her reputation and Ronson has been damaged by their publication.

14 │      25.     Defendants are liable to Plaintiff as a result of these false and defamatory

15 │ statements for actual, presumed and punitive damages in an amount to be determined at trial, but

16 │ not less than $20,000,000.

17 │

18 │ **WHEREFORE**, Plaintiff Samantha Ronson requests this Court:

19 │      A.     For judgment against Defendants in an amount to be determined at trial, but not

20 │ less than $20,000,000.

21 │      B.     For interest, costs and disbursements of this action, including Plaintiff's reasonable

22 │ attorneys' fees; and

23 │

24 │

25 │

26 │

27 │

28 │

COMPLAINT FOR DAMAGES

DOCS/931125 1/0999992-0000982001

C      For such other and further relief as may be just and proper.

Dated: June 26, 2007

                                    BINGHAM MCCUTCHEN LLP

                                    By: _____
                                        Bruce A. Friedman
                                        1620 26th Street, Fourth Floor, North Tower
                                        Santa Monica, CA  90404-4060
                                        (310) 907-1000

                                    DAVIS & GILBERT LLP
                                    Martin Garbus
                                    James R. Levine
                                    1740 Broadway
                                    New York, NY  10019
                                    (212) 468-4800

                                    Attorneys for Plaintiff
                                    SAMANTHA RONSON

                        **JURY DEMAND**

Plaintiff demands a trial by jury on all claims.

                                    BINGHAM MCCUTCHEN LLP

                                    By: _____
                                        Bruce A. Friedman
                                        1620 26th Street, Fourth Floor, North Tower
                                        Santa Monica, CA  90404-4060
                                        (310) 907-1000

                                    DAVIS & GILBERT LLP
                                    Martin Garbus
                                    James R. Levine
                                    1740 Broadway
                                    New York, NY  10019
                                    (212) 468-4800

                                    Attorneys for Plaintiff
                                    SAMANTHA RONSON

-6-

DOCS/931125 1/0999992-0000982001



Exhibit D

1 | Bryan J. Freedman (SBN 151990)
Jacqueline C. Brown (SBN 177970)
2 | FREEDMAN & TAITELMAN, LLP
1901 Avenue of the Stars, Suite 500
3 | Los Angeles, California 90067
Tel: (310) 201-0005
4 | Fax: (310) 201-0045
Email: bfreedman@ftllp.com
5 | jbrown@ftllp.com

6 | Gregory L. Doll (SBN 193205)
Michael A. Amir (SBN 204491)
7 | 1888 Century Park East, Suite 1106
Los Angeles, California 90067
8 | Tel : (310) 557-9100
Fax: (310) 557-9101
9 | email: gdoll@dollamir.com
mamir@dollamir.com
10 |
Attorneys for Defendant MARIO LAVANDEIRA
11 |

12 | SUPERIOR COURT FOR THE STATE OF CALIFORNIA

13 | FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| 14  SAMANTHA RONSON, | ) Case No. BC374174 |
| 15                  Plaintiff, | ) [Assigned to the Honorable Elihu M. Berle, |
| | ) Dept. 42] |
| 16            vs | ) |
| 17  SUNSET PHOTO AND NEWS, LLC; | ) NOTICE OF MOTION AND MOTION TO |
| JILL ISHKANIAN; MARIO LAVANDEIRA | ) STRIKE THE COMPLAINT PURSUANT |
| 18  dba PEREZ HILTON; and DOES 1 through | ) TO CODE OF CIVIL PROCEDURE |
| 10, inclusive, | ) SECTION 425.16 OF DEFENDANT |
| 19 | ) MARIO LAVANDEIRA; DECLARATIONS |
| | ) OF MARIO LAVANDEIRA, MIKLOS |
| 20            Defendants | ) GASPAR, AND JACQUELINE C. BROWN |
| | ) IN SUPPORT THEREOF |
| 21 | ) |
| | ) [Request for Judicial Notice filed |
| 22 | ) concurrently herewith] |
| 23 | ) Date:       September 26, 2007 |
| | ) Time:       8:30 a.m. |
| 24 | ) Dept.:       42 |
| 25 | ) |
| 26 _____ | ) Action filed:   July 12, 2007 |

27 |

28 |

LAVANDEIRA'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425.16

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2

3    PLEASE TAKE NOTICE that on September 26, 2007 at 8:30 a.m., or as soon thereafter

4    as the matter may be heard in Department 42 of the above-entitled Court, located at 111 North

5    Hill Street, Los Angeles, California 90012, defendant Mario Lavandeira ("Lavandeira") will and

6    hereby does move the Court for an order striking the complaint brought by plaintiff Samantha

7    Ronson ("Ronson") and awarding Lavandeira his attorneys' fees and costs associated with this

8    Motion. The Motion is made on the grounds that the complaint against Lavandeira is barred

9    pursuant to Code of Civil Procedure section 425.16 because (1) it arises from Lavandeira's

10   constitutional right of free speech; and (2) Ronson cannot establish by evidence admissible at

11   trial a reasonable probability of prevailing on her claim.

12

13   The Motion is based on this Notice, the attached Memorandum of Points and Authorities

14   and Declarations of Mario Lavandeira, Miklos Gaspar, and Jacqueline C. Brown, the

15   concurrently filed Request for Judicial Notice, the records, papers and pleadings on file in this

16   action, and upon such argument as counsel may present at the time of the hearing on the Motion.

17

18   DATED: September 4, 2007                  FREEDMAN & TAITELMAN, LLP
                                               DOLL, AMIR & ELEY, LLP
19

20
                                               By:
21                                                  BRYAN J. FREEDMAN
                                               Attorneys for Defendant MARIO LAVANDEIRA
22

23

24

25

26

27

28

LAVANDEIRA'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425.16

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................ 1

II.    FACTUAL SUMMARY ....................................................... 2

       A      Lindsay Lohan ......................................................... 2

       B      Samantha Ronson ...................................................... 3

       C      The Accident ............................................................ 3

       D      The Accident Receives "Widespread Media Attention" ........ 4

III    ARGUMENT ..................................................................... 4

       A      Ronson's Complaint is Subject to the Anti-SLAPP Statute ..... 4

              1       Ronson's Action is Based on Lavandeira's
                      Free Speech Rights ......................................... 6

                      a       Lavandeira's Website is a Public Forum ..... 6

                      b       Lohan and the Accident Are Matters of
                              Public Interest ........................................ 6

                      c       Ronson Herself is a Matter of Public Interest ... 8

                      d       Drug and Alcohol Use, Driving Under the
                              Influence, and Celebrity Misconduct Are
                              Matters of Public Interest ........................ 9

       B      Ronson Cannot Show a Reasonable Probability of
              Prevailing on Her Defamation Claim ............................. 10

              1       Ronson Cannot Demonstrate that Lavandeira Made
                      Provably False Statements ............................... 11

              2       Ronson Cannot Demonstrate, By Clear and Convincing
                      Evidence, that Lavandeira's Statements Were Made
                      With Actual Malice ........................................ 13

       C      Lavandeira Is Entitled to His Attorneys' Fees In
              Connection with this Motion ...................................... 15

IV     CONCLUSION .................................................................. 15

Declaration of Mario Lavandeira ................................................ 16

Declaration of Miklos Gaspar ................................................... 20

Declaration of Jacqueline C Brown ............................................. 21

- ii -

LAVANDEIRA'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425 16

1

## TABLE OF AUTHORITIES

2
Page

3
CASES

4    Ampex Corp. v. Cargle,
     128 Cal.App.4th 1569 (2005) ................................................................. 14
5
     Annette F. v. Sharon S.,
6    119 Cal.App.4th 1146 (2004) ................................................................. 10

7    Barrett v. Rosenthal,
     40 Cal.4th 33 (2006) ............................................................................. 6
8
     Braun v. Chronicle Publishing Co.,
9    52 Cal.App.4th 1036 (1997) ................................................................... 5

10   Briggs v. Eden Council for Hope & Opportunity,
     19 Cal.4th 1106 (1999) ......................................................................... 5
11
     City of Cotati v. Cashman,
12   29 Cal.4th 69 (2002) ............................................................................. 5

13   ComputerXpress, Inc. v. Jackson,
     93 Cal.App.4th 993 (2001) ..................................................................... 6
14
     Commonwealth Energy Corp. v. Investor Data Exchange, Inc.,
15   110 Cal.App.4th 26 (2003) .................................................................. 8, 9

16   Copp v. Paxton,
     45 Cal.App.4th 829 (1996) .................................................................... 12
17
     Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles,
18   117 Cal.App.4th 1138 (2004) ................................................................. 10

19   Ferlauto v. Hamsher,
     74 Cal.App.4th 1394 (1999) ............................................................. 11, 12
20
     Gallagher v. Connell,
21   123 Cal.App.4th 1260 (2004) ................................................................. 7

22   Gilbert v. Sykes,
     147 Cal.App.4th 13 (2007) ..................................................................... 7
23
     Hall v. Time Warner, Inc.,
24   153 Cal.App.4th 1337 (2007) ........................................................... 6, 7, 8

25   Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.,
     129 Cal.App.4th 1228 (2005) ................................................................. 6
26
     Ingels v. Westwood One Broadcasting Services, Inc.
27   129 Cal.App.4th 1050 (2005) ................................................................. 8
28

LAVANDEIRA'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425.16

1

<u>TABLE OF AUTHORITIES</u>, continued.

2

Page

3   James v. San Jose Mercury News, Inc.,
    17 Cal App 4th 1 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 12
4
    Ketchum v. Moses,
5   24 Cal 4th 1122 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6   Kronemyer v. Internet Movie Data Base Inc.,
    150 Cal.App.4th 941 (2007) . . . . . . . . . . . . . . . . . . . . . . . . 6
7
    Lieberman v. KCOP Television, Inc.,
8   110 Cal App 4th 156 (2003) . . . . . . . . . . . . . . . . . . . . . . . . 9

9   Maheu v. CBS, Inc.,
    201 Cal.App.3d 662 (1988) . . . . . . . . . . . . . . . . . . . . . . . . 9
10
    McGarry v. University of San Diego,
11  2007 Cal App LEXIS 1350 (July 17, 2007) . . . . . . . . . . . . . . . . . 14

12  Rosenaur v. Scherer,
    88 Cal App 4th 260 (2001) . . . . . . . . . . . . . . . . . . . . . . . . 12
13
    Savage v. Pacific Gas & Electric Co.,
14  21 Cal.App 4th 434 (1993) . . . . . . . . . . . . . . . . . . . . . . . . 11

15  Seelig v. Infinity Broadcasting Corp.,
    97 Cal App 4th 798 (2002) . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 11
16
    Sipple v. Foundation for National Progress,
17  71 Cal App 4th 226 (1999) . . . . . . . . . . . . . . . . . . . . . . . . 9

18  Soukup v. Law Offices of Herbert Hafif,
    39 Cal 4th 260 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 5
19
    Taylor v. Superior Court,
20  24 Cal 3d 890 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

21  Varian Medical Systems, Inc. v. Delfino,
    35 Cal.4th 180 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 5
22
    Vogel v. Felice,
23  127 Cal.App 4th 1006 (2005) . . . . . . . . . . . . . . . . . . . . . . . 6

24  Wilbanks v. Wolk,
    121 Cal App 4th 883 (2004) . . . . . . . . . . . . . . . . . . . . . . . 6
25
    Wilcox v. Superior Court,
26  27 Cal App 4th 809 (1994) . . . . . . . . . . . . . . . . . . . . . . . . 5

27

28

1
<u>TABLE OF AUTHORITIES</u>, continued.

2
<u>Page</u>

3
<u>STATUTES</u>

4
Civ. Code, § 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

5
Civ. Code, § 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

6
Code Civ. Proc., § 425.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5, 6, <u>passim</u>

7

8
<u>SECONDARY SOURCES</u>

9
5 Witkin, <u>Summary of California Law</u> (10th ed. 2005) Torts, § 529 . . . . . . . . . . . . . . . . 11

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAVANDEIRA'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425.16

1    I.    **INTRODUCTION**

2      The defamation action brought by plaintiff Samantha Ronson ("Ronson") is a classic

3    example of an improper "strategic lawsuit against public participation" (a "SLAPP suit") that is

4    expressly barred by Code of Civil Procedure Section 425.16, the "anti-SLAPP statute" (hereafter

5    "Section 425.16")  As will be demonstrated, Ronson seeks to punish defendant Mario

6    Lavandeira ("Lavandeira") for exercising his legitimate free speech rights in order to obtain an

7    economic advantage over him  To make matters worse, she does not seek to vindicate any

8    cognizable rights  Instead, she asserts a meritless claim for defamation that is plainly based on

9    Lavandeira's constitutional right of free speech to express his opinions and subjective beliefs.

10    Additionally, Ronson has no evidence, let alone clear and convincing evidence, that Lavandeira

11    made defamatory statements about Ronson with actual malice  As a result, Ronson's defamation

12    action against Lavandeira falls squarely within the broad ambit of the anti-SLAPP statute and

13    should be dismissed.

14      This action arises from the media storm focused on the young actress, Lindsay Lohan

15    ("Lohan")  Over the last couple of years, Lohan has provided endless fuel for tabloid fodder

16    Her repeated stints in rehabilitation, her misconduct on film sets, her love life, and her excessive

17    use of drugs and alcohol has mesmerized the media and public  On May 26, 2007, Lohan made

18    headlines again when she crashed her Mercedes Benz into a curb on Sunset Boulevard during the

19    early morning hours while driving under the influence of alcohol (the "Accident")  When the

20    police investigated the Accident, they also found cocaine in Lohan's car  Ronson, who is also a

21    celebrity, was with Lohan when the Accident occurred  By Ronson's own admission, "the

22    incident involving Lohan's car crash received wide media attention" and that on the very

23    morning of the crash, "news outlets and websites began reporting" the story

24      Lavandeira owns and operates the celebrity gossip blog website, PerezHilton.com (the

25    "Website")  Like numerous other media outlets and websites, Lavandeira posted on the Website

26    his opinions and commentary about the Accident, the cocaine found by the police, and the

27    relationship between Ronson and Lohan.  Soon thereafter, Ronson filed this defamation action

28    against Lavandeira, and others, seeking damages in excess of $20,000,000.

- 1 -

1    As demonstrated below, Ronson's complaint against Lavandeira should be stricken and

2   dismissed as an improper SLAPP suit and Lavandeira should be awarded his attorneys' fees and

3   costs relating to this Motion for the following reasons:

4       1.    Ronson's claim arises from Lavandeira's exercise of his constitutionally protected

5            free speech rights; and

6       2.    Ronson cannot demonstrate, by evidence admissible at trial, a reasonable

7            probability of prevailing on her defamation claim because:

8            a    Ronson cannot demonstrate that Lavandeira's subjective expressions of

9                opinion are provably false; and

10           b.    Ronson cannot demonstrate, by clear and convincing evidence, that

11                Lavandeira acted with actual malice.

12   **II.    FACTUAL SUMMARY**

13       **A.    Lindsay Lohan**

14   Lindsay Lohan ("Lohan") is well-known film actress.  Although she has been acting and

15   modeling since she was three years old, she gained widespread media attention after appearing in

16   her first feature film, "The Parent Trap," at the age of 12.  Since then, she has appeared in

17   thirteen feature films.  RJN, Ex. A.  She has also appeared on numerous television programs as

18   an actor, a guest, or subject.  Id., Ex. A

19   Over the last few years, Lohan has received nearly continuous media attention for her

20   exploits on and off the screen.  Declaration of Jacqueline C. Brown ("Brown Decl."), ¶¶ 2-5 &

21   Exs. D-G.  She has been in the media for, among other things, her eating disorder, excessive

22   partying and use of alcohol and drugs, repeated stints in rehabilitation, love life, family troubles,

23   run-ins with paparazzi, unprofessional conduct on film sets, repeated car accidents, and repeated

24   hospital stays.  Id., Exs. D-G.  Indeed, it is a rare day that Lohan does not appear in the media.

25   A search of her name on Google results in nearly 7 million hits.  Brown Decl., ¶ 4 & Ex.

26   F.  There are also at least fifteen websites (if not more) dedicated solely to Lohan such as

27   lindsaylohanfan.org, lindsayblog.com, lohangroupie.com, lindsaylohanworld.info,

28   lohanonline.com, lindsay-news.com, lindsay-lohan.net, lindsaylohanwatch.com,

1  lohanx.blogspot.com, lohanpictures.com, lindsaypics.com, lindsaylohan.com,

2  lindsaylohansbutt.com, and linsay-lohan-updates.blogspot.com. Id., ¶ 5 & Ex. G.

3      **B.    Samantha Ronson**

4      Ronson is a celebrity DJ who regularly performs at exclusive and high profile events such

5  as, among others, "Jessica Simpson's birthday party; corporate events for Blender, Maxim,

6  PlayStation at the Superbowl and ElleGirl; and the entertainment awards shows including the

7  Video Music Awards in Miami, Sundance, and the Independent Film Channel Awards."

8  Complaint, ¶ 2.[1] She is also an accomplished musician. She has a record contract with the hip

9  hop record label, Roc-A-Fella Records. RJN, Ex. B. She has written and performed various

10  singles that have been featured on film sound tracks such as "Built This Way" on the 2004

11  soundtrack for the film "Mean Girls," starring Lohan (RJN, Ex. B) and "Pull My Hair Out" that

12  was featured on the 2004 soundtrack for the film, "The Woodsman," starring Kevin Bacon. She

13  also performed the single "Wanted" for the 2006 soundtrack for the film "Half Nelson," starring

14  Ryan Gosling. Id., Exs. C & D.

15      She appeared, as herself, in national television advertisement for The Gap. RJN, Ex. E.

16  She has been interviewed by MTV. Brown Decl., ¶ 9 & Ex. L. She has her own website

17  samantharonson.com. RJN, Ex. B. She also has her own entry on Wikipedia.com, the free

18  Internet encyclopedia. Id., Ex. F. A search of "samantha ronson" on Google results in 283,000

19  hits. Brown Decl., ¶ 8 & Ex. J. She is also the frequent subject of the media and paparazzi. Id.,

20  ¶¶ 6-8, Exs. H-L.

21      **C.    The Accident**

22      During the early morning of May 26, 2007, Lohan crashed her Mercedes Benz into a curb

23  on Sunset Boulevard (the "Accident"). Complaint, ¶ 10. Lohan was under suspicion for driving

24  under the influence of alcohol. Id. The police found cocaine in her car. Id. Ronson was with

25  Lohan when the Accident occurred. Id. Later, Lohan was arrested for driving under the

26  influence alcohol and possession of cocaine. RJN, Ex. G.

27  ─────────────

28      [1] According to Ronson's website, she has also performed "with Lindsay Lohan at the American Music Awards." RJN, Ex. B.

LAVANDEIRA'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425.16

**D.    The Accident Receives "Widespread Media Attention"**

As Ronson admits, the Accident "received widespread media attention." Complaint, ¶ 11. She also admits that the very morning of the Accident, "news outlets and websites began reporting" about it. Id., ¶ 10. In fact, every major media outlet including CNN, the New York Times, the Los Angeles Times, and ABC News, among others, reported about the Accident. RJN, Ex. H. Additionally between May 27, 2007 and June 1, 2007, numerous websites posted articles stating that Ronson had arranged for the paparazzi to obtain photographs of Lohan, intoxicated and passed out in Ronson's car, and that the cocaine found by the police in Lohan's car after the Accident may have been Ronson's. Complaint, ¶¶ 13 & 19 (listing websites).

On June 1, 2007, Lavandeira posted an article on the website PerezHilton.com (the "Website") that reproduced the statements by the website celebritybabylon.com. Complaint, ¶ 20. Lavandeira also added the statements that (1) Ronson has been "toxic" to Lohan; (2) "According to news reports, Ronson has been selling out Lohan to the paparazzi"; (3) Ronson "allegedly entered into an agreement with a photo agency to tip them off to here whereabouts with Lindsay, even creating photo-ops for them"; (4) "the cocaine that was found in Lohan's car after her crash may have been RONSON's"; and (5) "With friends like Samantha Ronson, Lindsay doesn't need any enemies." Id., ¶ 21; see also Declaration of Mario Lavandeira ("Lavandeira Decl."), ¶ 17; Declaration of Miklos Gaspar ("Gaspar Decl."), ¶ 6 & Ex. B.

On June 13, 2007, Lavandeira posted an article from the Australian magazine NW that was reporting about the news that Ronson may have arranged photograph opportunities for paparazzi while Lohan was passed out in Ronson's car. The article from NW shows a picture of Lavandeira wearing a sweatshirt bearing the words "Blame Samantha," with the caption "Celeb gossip guru Perez Hilton has described the DJ's influence on Lindsay's life as 'toxic'... and wears this top to prove his point." Below the NW article, Lavandeira added the statement "Was Lindsay Lohan betrayed by her lezbot DJ pal Samantha Ronson? Australia's NW magazine seems to think so. And we wouldn't disagree!" Complaint, ¶ 21; see also Lavandeira Decl., ¶ 18; Gaspar Decl., ¶ 6 & Ex. C.

III.    **ARGUMENT**

    A.    **Ronson's Complaint is Subject to the Anti-SLAPP Statute**

    A "SLAPP suit" is brought to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. Section 425.16(a); Braun v. Chronicle Publishing Co., 52 Cal.App.4th 1036, 1042 (1997). The primary objective of a SLAPP suit is to obtain an economic advantage over the defendant, not to vindicate a legally cognizable right of the plaintiff. Indeed, one of the hallmarks of a SLAPP suit is its lack of merit. Wilcox v. Superior Court, 27 Cal.App.4th 809, 816 (1994). Section 425.16 provides a summary procedure by which defendants may dispose of such lawsuits at the pleading stage and thus avoid the cost and delays of lengthy litigation. Soukup v. Law Offices of Herbert Hafif, 39 Cal.4th 260, 278 (2006). "[T]he point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights." Varian Med. Systems, Inc. v. Delfino, 35 Cal.4th 180, 193 (2005) (emphasis original; internal quotes omitted).

    A motion to strike a SLAPP suit involves a two-step process. First, the court determines whether the moving party has demonstrated that the challenged activity stems from protected activity. If a prima facie showing has been made by the moving party, the court must then consider whether the plaintiff demonstrated a probability of success on the challenged claim. Section 425.16(b)(1); Fontani v. Wells Fargo Investments, 129 Cal.App.4th 719, 727 (2005).

    A defendant meets its burden by demonstrating that the conduct underlying the plaintiff's claim fits within one of the categories spelled out in Section 425.16(e). City of Cotati v. Cashman, 29 Cal.4th 69, 78 (2002). Section 425.16(e) defines protected activity as:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Section 425.16(e)(4). When determining whether a cause of action "arises from" protected

LAVANDEIRA'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425.16

1  activity, Section 425.16 is to be "broadly construed." Section 425.16(a); Briggs v. Eden Council
2  for Hope & Opportunity, 19 Cal.4th 1106, 1119 (1999).

3              **1.    Ronson's Action Is Based on Lavandeira's Free Speech Rights**

4        Section 425.16(e)(3) defines acts in furtherance of free speech or petition as including
5  statements that are made (1) in a public forum and (2) in connection with an issue of public
6  interest. Ronson's claim against Lavandeira falls directly within this category.

7                    **a.    Lavandeira's Website Is a Public Forum**

8        The California Supreme Court and the Courts of Appeal repeatedly have held that a Web
9  site accessible to the public is a public forum for purposes of Section 425.16. Barrett v.
10 Rosenthal, 40 Cal.4th 33, 41, fn. 4 (2006); Kronemyer v. Internet Movie Data Base, Inc., 150
11 Cal.App.4th 941 (2007); Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty
12 USA, Inc. 129 Cal.App.4th 1228, 1247 (2005); Vogel v. Felice, 127 Cal.App.4th 1006, 1015
13 (2005); Wilbanks v. Wolk, 121 Cal.App.4th 883, 895 (2004); ComputerXpress, Inc. v. Jackson,
14 93 Cal.App 4th 993, 1007 (2001). As observed by the court in Huntingdon Life Sciences, Inc.,
15 129 Cal.App.4th at p. 1247 (citation omitted), "Statements on [defendant's] Web site are
16 accessible to anyone who chooses to visit the site, and thus they 'hardly could be more public.'"

17       Ronson alleges that each of Lavandeira's allegedly defamatory statements appeared on
18 the Website. Complaint, ¶¶ 6-7, 20-21. Lavandeira's website meets all the requirements of a
19 public forum. The website is accessible free of charge to any member of the public. Lavandeira
20 Decl., ¶ 4. Readers of the Website may review the opinions and commentary of Lavandeira as
21 well as other members of the public. Id. They may also post their own opinions. Id.

22              **b.    Lohan and the Accident Are Matters of Public Interest**

23       A statement or other conduct is "in connection with an issue of public interest . . . if the
24 statement or conduct concerns a topic of widespread public interest and contributes in some
25 manner to a public discussion of the topic." Hall v. Time Warner, Inc., 153 Cal.App.4th 1337,
26 1347 (2007). An event that is of "significant interest to the public and the media" satisfies the
27 public interest requirement for purposes of Section 425.16(e)(3). Seelig v. Infinity Broadcasting
28 Corp., 97 Cal.App.4th 798, 807-808 (2002). Additionally, matters involving a celebrity's

1  personal life constitute matters of public interest where the celebrity is the subject widespread

2  public interest. Hall, 153 Cal.App.4th at 1347.

3        The public interest requirement of Section 425.16(e)(3) *must be construed broadly* so as

4  to encourage participation by all segments of our society in vigorous public debate of issues of

5  public interest. Gilbert v. Sykes, 147 Cal.App.4th 13, 23 (2007). Additionally, in deciding

6  whether a matter is one of public interest, courts should "err on the side of free speech."

7  Gallagher v. Connell, 123 Cal.App.4th 1260, 1275 (2004).

8        The decision in Hall v. Time Warner, Inc., 153 Cal.App.4th 1337 (2007), demonstrates

9  that Lohan and the Accident are topics of public interest. The facts of Hall involved claims

10 brought by the former housekeeper of Marlon Brando against the producers of the nationally

11 broadcast television show "Celebrity Justice." After Brando's death, when it was revealed that

12 he had named Hall as a beneficiary of his living trust, a reporter for "Celebrity Justice" visited

13 Hall in her room in a retirement home, interviewed her, and portions of the interview were

14 televised. Hall sued the producers for trespass, intrusion upon seclusion, public disclosure of

15 private facts, intentional infliction of emotional distress, and elder abuse. Id. at 1341-1342.

16       In reversing the trial court's denial of the producers' motion to strike, the court in Hall

17 held:

18        "The public's fascination with Brando and widespread public
         interest in his personal life made Brando's decisions concerning
19       the distribution of his assets a public issue or an issue of public
         interest. Although Hall was a private person and may not have
20       voluntarily sought publicity or to comment publicly on Brando's
         will, she nevertheless became involved in an issue of public
21       interest by virtue of being named in Brando's will. Defendants'
         television broadcast contributed to the public discussion of the
22       issue identifying Hall as a beneficiary and showing her on camera.
         We conclude that the acts from which the complaint arises . . .
23       constituted conduct in furtherance of defendants' right of free
         speech 'in connection with a public issue or an issue of public
24       interest.'"

25 Hall, 153 Cal.App.4th at 1347.

26       The decision in Seelig v. Infinity Broadcasting Corp., 97 Cal.App.4th 798 (2002) further

27 supports the conclusion that Lavandeira's statements involved matters of public interest. The

28 facts of Seelig involved claims of slander brought by a contestant on the television program

- 7 -

1    "Who Wants to Marry a Multimillionaire" against radio talk show hosts and their employer

2    arising from disparaging comments made about plaintiff during a radio broadcast. In reversing

3    the trial court's denial of defendants' motion to strike, the Seelig court held:

4    > "The offending comments arose in the context of an on-air
>    discussion between the talk-radio cohosts and their on-air producer

5    > about a television show of significant interest to the public and the
>    media . . . Before and after its network broadcast, *Who Wants to*

6    > *Marry a Multimillionaire* generated considerable debate within the
>    media . . . By having chosen to participate as a contestant in the

7    > Show, plaintiff voluntarily subjected herself to inevitable public
>    scrutiny and potential ridicule by the public and the media."

8

9    Seelig, 97 Cal.App.4th at 807; see also Ingels v. Westwood One Broadcasting Servs., Inc., 129

10   Cal.App.4th 1050, 1055, 1064 (2005) (live call-in radio talk show matter of public interest).

11       Here, Lohan is an accomplished and well-known film actress. It cannot be legitimately

12   disputed that Lohan is the subject of widespread media attention and public fascination for her

13   exploits on and off the screen, and especially regarding her destructive and excessive use of

14   alcohol and drugs. As a result of the widespread public interest in Lohan, the Accident was also

15   a matter of public interest. In fact, by Ronson's own admission, the Accident involving Lohan

16   generated "widespread media attention" and that within hours of the Accident, "news outlets and

17   websites began reporting" the story. Complaint, ¶¶ 10-11.

18       Ronson admits that she was with Lohan when the Accident occurred and that police

19   found cocaine in Lohan's car. Complaint, ¶ 10. Thus, regardless of Ronson's own celebrity

20   status, or whether she voluntarily sought publicity in connection with the Accident, she

21   nevertheless became involved in an issue of public interest by virtue of being involved in the

22   Accident. Additionally, by publicly associating herself with Lohan, Ronson also voluntarily

23   subjected herself to the inevitable scrutiny and potential ridicule by the public and media.

24   Lavandeira's articles about Accident and Ronson's relationship with Lohan contributed to the

25   public discussion of these issues.

26           c.    **Ronson Herself Is Matter of Public Interest**

27       Where the subject of the statement or activity precipitating the claim was a person in the

28   public eye, this ***alone*** satisfies the public interest/public issue requirement of Section 425.16.

- 8 -

1    Commonwealth Energy Corp. v. Investor Data Exchange, Inc., 110 Cal.App 4th 26, 33 (2003)

2    For example, in Sipple v. Foundation for Nat. Progress, 71 Cal App.4th 226, 239 (1999), the

3    court found that the statements about "a nationally known figure" necessarily concerned a matter

4    of public interest  Additionally, the law is settled that individuals closely associated with public

5    figures are themselves public figures  Maheu v. CBS, Inc., 201 Cal.App 3d 662, 675 (1988)

6    　　　Ronson has been closely and publicly associated with Lohan for quite sometime  Brown

7    Decl , ¶ 10 & Ex. M  By this association alone, Ronson is considered a public figure as a matter

8    of law  Moreover, the evidence also demonstrates that Ronson is a celebrity in her own right in

9    connection with the music and club scene

10   　　　By Ronson's own admission, she is a celebrity DJ who regularly performs at exclusive,

11   high profile, and celebrity events  Complaint, ¶ 2  She has a record contract with a well-known

12   record label  RJN, Ex. B  Her music has been featured on several film soundtracks  Id., Exs. B-

13   D  She has starred in a national ad campaign for The Gap  Id., Ex. E  She has her own website.

14   Id., Ex. B  She has her own entry on Wikipedia.com  Id., Ex. F  *Significantly, she is the*

15   *frequent subject of the media and numerous celebrity gossip, entertainment, and paparazzi*

16   *websites.* Brown Decl , ¶¶ 6-9 & Exs. H-L

17   　　　　　d.    **Drug and Alcohol Use, Driving Under the Influence, and**

18   　　　　　　　**Celebrity Misconduct Are Matters of Public Interest**

19   　　　Where a statement or activity precipitating the claim involves conduct that could affect

20   large numbers of people beyond the direct participants, the claim is subject to Section 415.16.

21   Commonwealth Energy Corp., 110 Cal.App.4th at 33  There can be little doubt that the use and

22   possession of drugs and driving under the influence are matters that have potential impact on a

23   wide segment of society and receive widespread public attention.  "'Few problems affecting the

24   health and welfare of our population, particularly our young, cause greater concern than the

25   escalating use of controlled substances.'" Lieberman v. KCOP Television, Inc., 110 Cal.App 4th

26   156, 165 (2003) (citation omitted) (for the purposes of Section 425.16, illegal dispensing of

27   controlled substances is an issue of "great public interest"); see also Taylor v. Superior Court, 24

28   Cal 3d 890, 899 (1979) (driving under the influence is an issue of great urgency and concern)

1    The Accident involved issues of under age drinking (Lohan was 20 years old when the

2  accident occurred), driving under the influence, and the use of illegal drugs  As a result of the

3  Accident and the publicity surrounding it, the California Department of Alcoholic Beverage

4  Control launched an investigation into the practice of Hollywood nightclubs serving alcohol to

5  underage celebrities and patrons  RJN, Ex. I; Brown Decl., ¶ 11 & Ex. N.

6    There also can be little doubt that the impact of unseemly celebrity behavior on our

7  society is also a matter of great public interest and concern.  Indeed, nearly every day brings a

8  new headline about some celebrity's run-in with the law, treatment for drug or alcohol abuse, or

9  sex scandal.  As a result, there has been growing media attention about the affect this behavior is

10  having on our society, and more importantly, on our children.  RJN, Ex. J  Commenting on a

11  matter of public concern is fundamental to the right of free speech  Annette F. v. Sharon S., 119

12  Cal App 4th 1146, 1162 (2004).

13    **B.    Ronson Cannot Show a Reasonable Probability of Prevailing on Her**

14    **Defamation Claim**

15    Once the defendant has met its burden of establishing that the complaint falls within

16  the anti-SLAPP statute, the burden shifts to the plaintiff to establish a "reasonable probability"

17  that he will prevail at trial  Section 425.16(b)  To establish a "probability" of prevailing, the

18  plaintiff must show (1) a legally sufficient claim; and (2) that the claim is supported by

19  competent, admissible evidence sufficient to sustain a judgment in the plaintiff's favor  Fashion

20  21 v. Coalition for Humane Immigrant Rights of Los Angeles, 117 Cal App 4th 1138, 1147

21  (2004)  Ronson cannot meet this burden.

22    Ronson's defamation claim is based on two categories of statements: (1) Lavandeira's

23  subjective statements of opinion about Ronson; and (2) Lavandeira's republishing of statements

24  made by others about Ronson.  Complaint, ¶¶ 20-21.  As demonstrated below, Ronson cannot

25  show a reasonable probability of prevailing on her claim because she cannot prove that

26  Lavandeira's subjective statements of opinion about her were provably false statements or that

27  Lavandeira acted with actual malice when he republished the statements of others

28

1.    **Ronson Cannot Demonstrate that Lavandeira Made Provably False**
**Statements**

The tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage  Civ Code, §§ 45-46; 5 Witkin, Summary of Cal. Law (10th ed  2005) Torts, § 529, p  782 (citing Civ Code, §§ 45-46 and cases)  To prevail on her defamation claim, Ronson has the burden of presenting evidence of a statement of fact that is provably false. See Seelig, 97 Cal App 4th at 809. Statements that cannot be reasonably interpreted as stating "actual facts" about an individual cannot form the basis of a defamation action  Id. Additionally, expressions of opinion are not actionable. Savage v. Pacific Gas & Elec. Co., 21 Cal App 4th 434, 445 ( 1993). Thus, "rhetorical hyperbole," "vigorous epithets," "lusty and imaginative expressions of contempt," and language used "in a loose, figurative sense" have all been accorded constitutional protection Seelig, 97 Cal App 4th at 809. Additionally, epithets and subjective disapproval of the "sticks and stones will break my bones" variety, are not actionable  Ferlauto v. Hamsher, 74 Cal App 4th 1394, 1404 (1999).

The critical determination of whether an allegedly defamatory statement constitutes fact or opinion is a question of law for the court  Ferlauto, 74 Cal App 4th at 1401  In making this determination, California courts apply the totality of the circumstances test  Id.; see also Seelig, 97 Cal App 4th at 809  Under this test, the court first examines the language of the statement. Next, the context in which the statement was made must be considered  The "contextual analysis demands that the courts look at the nature and full content of the communication and to the knowledge and understanding of the audience to whom the publication was directed." Seelig, 97 Cal App 4th at 809-810. Under this test, "editorial context is regarded by the courts as a powerful element in construing as opinion what might otherwise be deemed fact " Ferlauto, 74 Cal App 4th at 1401 (citation omitted).

Applying this test, the following statements have been found to be not to be actionable:

•    Statements by radio hosts that plaintiff was a "local loser," "chicken butt," and "big skank," were "unquestionably" statements of the speaker's subjective

- 11 -

1    judgment. <u>Seelig</u>, 97 Cal.App.4th at 810.

2    •    Statements that the plaintiff was a "creepazoid attorney" and "loser wannabe

3    lawyer" were "classic rhetorical hyperbole which 'cannot reasonably [be]

4    interpreted as stating actual facts." <u>Ferlauto</u>, 74 Cal.App.4th at 1404.

5    •    Metaphoric expressions such as "keep him honest," "booby," and "baying in the

6    ocean breezes," were subjective expressions of negative opinion with no

7    disprovable factual content. <u>Copp v. Paxton</u>, 45 Cal.App.4th 829, 838 (1996).

8    •    Statements that an attorney used "sleazy tactics" and engaged in a "fishing

9    expedition," and the supposition that the judge had a "dim view of the defense

10   tactics," merely opinion only. <u>James v. San Jose Mercury News, Inc.</u>, 17

11   Cal.App.4th 1, 7-8 (1993)

12   •    Use of the words "liar" and "thief" by a political foe was constitutionally

13   protected hyperbole. <u>Rosenaur v. Scherer</u>, 88 Cal.App.4th 260, 280 (2001).

14   <u>The Language of Lavandeira's Statements:</u> Ronson alleges that the following statements

15   by Lavandeira are defamatory: (1) "Ronson has been toxic to Lohan's life," (Complaint, ¶¶ 20-

16   21); (2) "With friend's like Samantha Ronson, Lindsay doesn't need any enemies," (<u>Id.</u>, ¶ 20);

17   (3) "And we wouldn't disagree!" with an article in Australia's magazine <u>NW</u> that asked "Was

18   Lindsay Lohan betrayed by her Lezbot DJ pal Samantha Ronson?" (<u>Id.</u>, ¶ 21); (4) "Blame

19   Samantha," and (5) a photograph of Lavandeira wearing a sweatshirt bearing the words "BLAME

20   SAMATHA." <u>Id.</u>, ¶ 21.

21   <u>The Context of Lavandeira's Statements:</u> The Website is a celebrity gossip blog.

22   Lavandeira Decl., ¶ 3. It is billed as "celebrity gossip juice, not from concentrate" as well as

23   "Hollywood's Most Hated Website!" <u>Id.</u>, ¶ 7. The style of the Website is intentionally irreverent

24   to celebrities.[2] <u>Id.</u>, ¶ 5. Almost all every article includes Lavandeira's editorial commentary and

25

26   _____

27   [2] Additionally, "caricature, imaginative expression, and rhetorical hyperbole . . . are often
subject to the threat of a defamation action, but generally constitute a legitimate exercise of

28   literary style." <u>Ferlauto</u>, 74 Cal.App.4th at 1403. As demonstrated, the comments made by
Lavandeira about Ronson are typical of Lavendeira's literary style

LAVANDEIRA'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425.16

1   opinions about the spotlighted celebrity. Id. He also often uses hyperbole, slang, profanity, and

2   epithets in his postings. Id. Most of his blogs are intentionally written in a "tongue-in-cheek"

3   manner. Id. Additionally, when showing pictures of celebrities, he also usually includes his own

4   satirical scribbles across the photograph expressing his opinion about the celebrity in the

5   photograph. Id., ¶ 6 & Ex. A.

6          Viewing Lavandeira's statements in this context, it is plain that his statements were

7   nothing more than expressions of his subjective opinion. For example, Lavandeira states that

8   Ronson has been "toxic" to Lohan. The term "toxic," in this context, plainly refers to

9   Lavandeira's view that Ronson is a bad influence on Lohan. See Lavandeira Decl., ¶ 17

10  Whether Ronson has been, in fact, toxic to Lohan is too vague to be capable of being proven true

11  or false. See James, 17 Cal.App.4th at 15 (terms "dim view" insusceptible of proof or disproof

12  because too vague). Moreover, such a determination is plainly subjective.

13         Lavandeira's statements that "With friend's like Samantha Ronson, Lindsay doesn't need

14  any enemies," "Blame Samantha," and that Lavandeira did not disagree with a Australian

15  magazine's opinion that Ronson had betrayed Lohan are unquestionably statements of subjective

16  expressions of disapproval, devoid of any factual content, reflecting Lavandeira's "vague

17  expressions of low esteem" for Ronson. See Ferlauto, 74 Cal.App.4th at 1404. The conclusion

18  that these statements are merely Lavandeira's opinions is reinforced by the statement that

19  Lavendeira was wearing a sweatshirt bearing the words "Blame Samantha" to "prove his point"

20  that Ronson was been a "toxic" influence on Lohan. Lavandeira's "point" is merely another way

21  of stating his "opinion." No reader of the Website could have interpreted the statements to be

22  statements of actual fact. Indeed, Lavandeira's statements are of the "sticks and stones will break

23  by bones" variety, and thus, are not actionable.

24              **2.    Ronson Cannot Demonstrate, By Clear and Convincing Evidence,**

25                      **that Lavandeira's Statements Were Made With Actual Malice**

26         Ronson is a public figure in the music and club scene and by virtue of her public

27  association with Lohan. At a minimum, she is also a "limited public figure" in connection with

28  the Accident and Lohan. A person will be considered a "limited purpose" or "vortex" public

- 13 -

1    figure, if he voluntarily injects himself or is drawn into a particular public controversy and

2    thereby becomes a public figure for a limited range of issues. McGarry v. University of San

3    Diego, 2007 Cal.App LEXIS 1350, *25 (July 17, 2007). Here, Ronson has been drawn into the

4    issues surrounding the Accident and Lohan's drug and alcohol use by virtue of by being with

5    Lohan when the Accident occurred, her close association with Lohan, and cocaine being found in

6    Lohan's car

7         Like "all purpose" public figures, limited public figures must show by "clear and

8    convincing evidence" that the alleged defamatory statement was published with actual malice,

9    meaning with knowledge the republished statements were false or with reckless disregard of their

10   falsity  Ampex Corp. v. Cargle, 128 Cal.App 4th 1569, 1578 (2005). The test is *"a subjective

11   test, under which the defendant's actual belief concerning the truthfulness of the publication*

12   *is the crucial issue."* This test directs attention to the defendant's attitude toward the truth or

13   falsity of the material published, not the defendant's attitude toward the plaintiff  McGarry, 2007

14   Cal.App LEXIS 1350 at *24-26 (emphasis added)  The reckless disregard test is not a negligence

15   test measured by whether a reasonably prudent person would have published, or would have

16   investigated before publishing, the defamatory statement. Instead, the evidence must "permit the

17   conclusion that the defendant actually had a 'high degree of awareness of . probable falsity.' As

18   a result, failure to investigate before publishing, even when a reasonably prudent person would

19   have done so, is not sufficient to establish reckless disregard " Id. at *26 (citations omitted).

20   Thus, to support a finding of actual malice, the failure to investigate must fairly be characterized

21   as demonstrating the speaker purposefully avoided the truth or deliberately decided not to acquire

22   knowledge of facts that might confirm the probable falsity of charges. Id. at *27-*28 .

23        Ronson cannot demonstrate by clear and convincing evidence that Lavandeira acted with

24   actual malice. Since Lavandeira first met Ronson in January 2006, he has heard from numerous

25   sources that she had a drug problem. Id., ¶ 11. Almost immediately after the Accident,

26   numerous websites (other than Lavandeira's Website) began reporting that the cocaine found in

27   Lohan's car might have been Ronson's and that Ronson had a deal with photographers to help

28   them obtain compromising pictures of Lohan. Id., ¶ 16; see also Complaint, ¶ 19 (listing

1    websites)  Thus, when Lavandeira republished the article from celebritybabylon com on June 1,

2    2007 and from <u>NW</u> magazine on June 13, 2007, he genuinely believed the reports about Ronson

3    were true and had no reason to believe they were false  <u>Id.</u>, ¶ 19  Since the Accident, he has not

4    received any information indicating the cocaine found in Lohan's car *was not* Ronson's or that

5    Ronson *did not* have a deal with photographers  <u>Id.</u>

6         **C.    Lavandeira Is Entitled to Attorneys' Fees In Connection with this Motion**

7              "Any defendant who brings a successful motion to strike is entitled to mandatory

8    attorneys fees."  <u>Ketchum v. Moses,</u> 24 Cal 4th 1122, 1131 (2001); <u>see also</u> Section 425 16(c)

9    (the "prevailing defendant" on a motion to strike "shall be entitled" to recover his attorneys' fees

10   and costs)  If the Court grants Lavandeira's Motion, he will submit a noticed motion for his fees.

11   **IV.    CONCLUSION**

12             For all of the foregoing reasons, Lavandeira respectfully requests that the Court grant his

13   Motion in its entirety, strike the Complaint brought by Ronson, and award Lavendeira his

14   attorneys' fees and costs associated with this Motion.

15

16   DATED: September 4, 2007              FREEDMAN & TAITELMAN, LLP
                                          DOLL, AMIR & ELEY, LLP
17

18

19                                        By: _____
                                               BRYAN J. FREEDMAN
20                                        Attorneys for Defendant MARIO LAVANDEIRA

21

22

23

24

25

26

27

28

LAVANDEIRA'S MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425 16



Exhibit E

1  BINGHAM MCCUTCHEN LLP
   Bruce A. Friedman (SBN 065852)
2  1620 26th Street, Fourth Floor, North Tower
   Santa Monica, CA 90404-4060
3  Tel: (310) 907-1000
4  Fax: (310) 907-2000
   E-mail: bruce.friedman@bingham.com
5
   DAVIS & GILBERT LLP
6  Martin Garbus
7  James R. Levine
   1740 Broadway
8  New York, NY 10019
   Tel: (212) 468-4800
9  Fax: (212) 468-4888
10
   Attorneys for Plaintiff
11 SAMANTHA RONSON

**ORIGINAL FILED**
LOS ANGELES

SEP 1 3 2007

SUPERIOR COURT
By: _____VICTOR E. SINO-CRUZ_____
                              DEPUTY

12

13          SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                    COUNTY OF LOS ANGELES

15 | SAMANTHA RONSON, | Case No.: BC374174 |
|---|---|
16 | Plaintiff, | HON. ELIHU M. BERLE DEPT. 42 |
17 | vs. | **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE THE COMPLAINT** |
18 | SUNSET PHOTO AND NEWS, LLC, JILL ISHKANIAN, MARIO LAVANDEIRA doing business as PEREZ HILTON, and DOES 1-10, inclusive, | |
19 | | |
20 | Defendants. | Action Filed: July 17, 2007 |
21 | | Date: September 26, 2007 Time: 8:30 a.m. |
22 | | Dept.: 42 |

23

24

25

26

27

28

# Table of Contents

STATEMENT OF FACTS.................................................................................................... 1

ARGUMENT ..................................................................................................................... 1

   Good Cause Exists For This Court To Permit Specified Discovery Prior to The Court's
   Ruling on Defendants' Motions to Strike ...................................................................... 1

CONCLUSION .................................................................................................................. 3

i

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION SEEKING DISCOVERY
PRIOR TO THE COURT'S CONSIDERATION OF DEFENDANTS' MOTIONS TO STRIKE

1

## Table of Authorities

2

3

## STATE CASES

4

*Flatley v. Mauro,*
    39 Cal. 4th 299 (2006)..................................................................................1

5

*LaFayette Morehouse, Inc., et al. v. Chronicle Publ'g Co., et al.,*
    37 Cal. App. 4th 855 (1995)......................................................................1, 2

6

7

*Mann v. Quality Old Time Service, Inc.,*
    120 Cal. App. 4th 90 (2004).......................................................................1

8

*Ruiz v. Harbor View Cmty. Assoc.,*
    134 Cal. App. 4th 1456 (2005)....................................................................2

9

10

*Sipple v. Found. For Nat'l Progress, et al.,*
    71 Cal. App. 4th 226 (1999).......................................................................1

11

12

13

## STATE STATUTES

14

Cal. Civ. Code, § 425.16 (2007) ........................................................................1

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION SEEKING DISCOVERY
PRIOR TO THE COURT'S CONSIDERATION OF DEFENDANTS' MOTIONS TO STRIKE

## STATEMENT OF FACTS

A recitation of facts relevant to this matter is contained in Plaintiff's Complaint, Plaintiff's Opposition and the accompanying Declaration filed in connection with Plaintiff's Opposition. The facts and argument in those papers are incorporated by reference herein.

## ARGUMENT

### GOOD CAUSE EXISTS FOR THIS COURT TO PERMIT SPECIFIED DISCOVERY PRIOR TO THE COURT'S RULING ON DEFENDANTS' MOTIONS TO STRIKE

A party bringing a special motion to strike, pursuant to the California Code of Civil Procedure section 425.16, has the burden of showing that the challenged action comes within section 425.16, subdivision (b)(1). See Civ. Proc. Code §425.16(b)(1); *Flatley v. Mauro*, 39 Cal. 4th 299, 314 (2006). As Plaintiff's Opposition sets forth, Defendants have not met their burden. Nevertheless, assuming *arguendo* that Defendants can satisfy their burden, which they cannot, the burden would shift to Plaintiff to show that each of the causes of action in the Amended Complaint are "legally sufficient" and thus satisfy the "minimal merit" standard necessary for her to prevail here. *Mann v. Quality Old Time Service, Inc.*, 120 Cal. App. 4th 90, 105 (2004). In order to establish "minimal merits" with respect to some of her underlying claims, however, Plaintiff requests the opportunity to engage in limited discovery.

Under the California Code of Civil Procedure section 425.16, subdivision (g) a court may, for "good cause," lift the automatic discovery stay imposed by the filing of an anti-SLAPP motion to permit specified discovery limited to the issue raised in the motion. Civ. Code, § 425.16, subd. (g) (2007). Good cause may be established where Defendants possess specific evidence needed by Plaintiff to establish a prima facie case, and Plaintiff can explain the additional facts she expects to uncover through disclosure of the evidence. *LaFayette Morehouse, Inc., et al. v. Chronicle Publ'g Co , et al.*, 37 Cal. App. 4th 855, 868 (1995).

A court must exercise liberal discretion to authorize reasonable discovery where, as here, a defendant possesses evidence needed by a plaintiff to establish her prima facie case. *Mattel, Inc.*, 99 Cal. App. 4th at 1189-90; *Sipple v. Found. For Nat'l Progress, et al.*, 71 Cal. App. 4th 226, 243 (1999) (Zebrowski, J., dissenting) (explaining that reasonable suspicion of the existence a necessary element of a particular claim should be enough to require discovery of the issue, in order to oppose an anti-SLAPP motion). The instant request for discovery is properly limited to seeking only evidence needed to show minimal merits of Plaintiff's claims of extortion,

1    intentional infliction of emotional distress, abuse of process, false light and public disclosure of

2    private facts. *See Ruiz v. Harbor View Cmty. Assoc.*, 134 Cal. App. 4th 1456, 1475 (2005)

3    (remanding libel case to trial court to consider whether to permit discovery, under subdivision (g)

4    of §425.16, on the sole issue of publication). In *Ruiz*, the plaintiff brought an action alleging that

     he was the subject of two libelous letters. *Id.* at 1461. The defendant subsequently filed an anti-

5    SLAPP motion to strike the libel action. *Id.* The plaintiff opposed the motion, arguing that

6    Section 425.15 did not apply, and simultaneously made a motion for discovery pursuant to Section

7    425.16, subdivision (g), to prove a necessary element of his case for libel - that the letters were

8    published. *Id.* The trial court denied the defendant's anti-SLAPP motion to strike on the grounds

9    that the two letters did not come within the scope of Section 425.16, subdivision (e), which

10   decision obviated the need to rule on the discovery motion. *Id.* On appeal, the appellate court

11   reversed the trial court and determined that the two allegedly libelous letters were protected speech

12   under Section 425.16, and thus remanded the case to the trial court to determine whether the

     plaintiff was entitled to limited discovery in order to establish publication. *Id.* at 1475.

13       As explained in more detail below and in the accompanying Garbus Decl., evidence that is

14   in the sole possession of each of the Defendants (and in a few instances, third-parties) is necessary

15   for Plaintiff to prove minimal merits of her claims. Without this limited discovery, Plaintiff will

16   be unable to fully defend against Defendants' Motions (in the event the Court does not otherwise

17   deny the Motions), and she will thus be denied her due process rights. See *LaFayette Morehouse,*

18   *Inc.*, 37 Cal. App. 4th at 868 (explaining that a universal application of Section 435.16(g)'s

     discovery stay might adversely implicate a plaintiff's due process rights)

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION SEEKING DISCOVERY
PRIOR TO THE COURT'S CONSIDERATION OF DEFENDANTS' MOTIONS TO STRIKE

## CONCLUSION

For all the reasons stated above, Plaintiff Samantha Ronson respectfully request that this Court issue an Order pursuant to Section 425.16, subdivision (g) of the California Rules of Court allowing her to conduct limited discovery for the purpose of opposing Defendants' motions to strike.

Dated: September 12, 2007

                                        BINGHAM MCCUTCHEN LLP


                                        By: _____
                                              Bruce A. Friedman
                                        Attorneys for Plaintiff
                                        SAMANTHA RONSON

**PROOF OF SERVICE**

I am over eighteen years of age, not a party in this action, and employed in 0
County, California at The Water Garden, Fourth Floor, North Tower, 1620 26th Street, Santa
Monica, California 90404-4060. I am readily familiar with the practice of this office for
collection and processing of correspondence for mail/fax/hand delivery/next business day
delivery, and they are deposited that same day in the ordinary course of business.

On September 12, 2007, I served the attached:

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO STRIKE THE COMPLAINT**

☒  (BY FAX) on September 12, 2007, by transmitting via facsimile the document(s)
listed above to the fax number(s) set forth below on this date. The facsimile
machine I used complied with California Rules of Court, Rule 2003(3) and the
transmission was reported as complete and without error by the machine. Pursuant
to California Rules of Court, Rule 2008(e)(4), I caused the machine to print a
transmission record of the transmission, a copy of which is attached to this
declaration.

☒  (BY MAIL) by causing a true and correct copy of the above to be placed in the
United States Mail at Santa Monica, California in sealed envelope(s) with postage
prepaid, addressed as set forth below. I am readily familiar with this law firm's
practice for collection and processing of correspondence for mailing with the
United States Postal Service. Correspondence is deposited with the United States
Postal Service the same day it is left for collection and processing in the ordinary
course of business.

☐  (EXPRESS MAIL/OVERNIGHT DELIVERY) by causing a true and correct copy
of the document(s) listed above to be delivered by _____ in sealed
envelope(s) with all fees prepaid at the address(es) set forth below.

☐  (PERSONAL SERVICE) by causing a true and correct copy of the above
documents to be hand delivered in sealed envelope(s) with all fees fully paid to the
person(s) at the address(es) set forth below.

Bryan J. Freedman, Esq.                  Maurice Wainer, Esq.
Jacqueline C. Brown, Esq.                Snipper, Wainer & Markoff
Freedman & Taitelman, LLP                Penthouse
1901 Avenue of the Stars                 270 North Canon Drive
Suite 500                                Beverly Hills, CA 90210
Los Angeles, CA 90067-6027               Fax: (310) 550-6770
Fax: (310) 201-0045

1

1

2
Gregory L. Doll, Esq.
Michael A. Amir, Esq.

3
Doll Amir & Eley LLP
1888 Century Park East

4
Suite 1106
Los Angeles, CA 90067

5
Fax: (310) 557-9101

6
     I declare under penalty of perjury under the laws of the State of California that the

7
foregoing is true and correct and that this declaration was executed on September 12, 2007, at

8
Santa Monica, California.

9

10
*Donna McGee*

11
             Donna McGee

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2



Exhibit F

1  Bryan J. Freedman (SBN 151990)
   Jacqueline C. Brown (SBN 177970)
2  FREEDMAN & TAITELMAN, LLP
   1901 Avenue of the Stars, Suite 500
3  Los Angeles, California 90067
   Tel: (310) 201-0005
4  Fax: (310) 201-0045
   Email: bfreedman@ftllp.com
5         jbrown@ftllp.com

6  Gregory L. Doll (SBN 193205)
   Michael A. Amir (SBN 204491)
7  1888 Century Park East, Suite 1106
   Los Angeles, California 90067
8  Tel.: (310) 557-9100
   Fax: (310) 557-9101
9  email: gdoll@dollamir.com
          mamir@dollamir.com
10
   Attorneys for Defendant MARIO LAVANDEIRA
11

12          SUPERIOR COURT FOR THE STATE OF CALIFORNIA

13              FOR THE COUNTY OF LOS ANGELES

14 SAMANTHA RONSON,                    )  Case No. BC374174
                                       )
15              Plaintiff,             )  [Assigned to the Honorable Elihu M. Berle,
                                       )  Dept. 42]
16        vs.                          )
                                       )
17 SUNSET PHOTO AND NEWS, LLC;         )  REPLY OF DEFENDANT MARIO
   JILL ISHKANIAN; MARIO LAVANDEIRA    )  LAVANDEIRA IN SUPPORT OF MOTION
18 dba PEREZ HILTON; and DOES 1 through )  TO STRIKE THE COMPLAINT
   10, inclusive,                      )  PURSUANT TO CODE OF CIVIL
19                                     )  PROCEDURE SECTION 425.16
                Defendants             )
20                                     )  [Evidentiary Objections to Declarations of
                                       )  Samantha Ronson and Martin Garbus filed
21                                     )  concurrently herewith]
                                       )
22                                     )  Date:      September 26, 2007
                                       )  Time:      8:30 a.m.
23                                     )  Dept.:     42
                                       )
24                                     )
                                       )  Action filed:   July 12, 2007
25                                     )
   _____)
26

27

28

1

<u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3  I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4  II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5       A.    Ronson Fails to Refute the Fact that Her
             Complaint is Subject to Section 425 16 . . . . . . . . . . . . . . . . . . . . . 2
6
7       B.    Ronson Fails to Demonstrate a Reasonable
             Probability of Prevailing on Her Defamation Claim . . . . . . . . . . . . . . 3

8              1    Ronson's Intentionally Vague and
                   Ambiguous Declaration Raises a
9                  Reasonable Inference That the Statements
                   Were Substantially True . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
10
11             2.   Ronson Fails to Refute that Lavandeira's
                   Subjective Statements of Opinion Do Not
12                 Constitute Provably False Statements . . . . . . . . . . . . . . . . . . 6

13             3.   Ronson Fails to Refute that Lavandeira's
                   Statements Were Not Made With Actual
14                 Malice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15      C.    Ronson's Request for Leave to Conduct
             Discovery Should Be Denied Because It Is
16           Procedurally Defective and Lacks Good Cause . . . . . . . . . . . . . . . . 8

    III   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425 16

TABLE OF AUTHORITIES

Page

CASES

Carver v. Bonds,
135 Cal.App.4th 328 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Christian Research Institute v. Alnor,
148 Cal.App.4th 71 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles,
117 Cal.App.4th 1138 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Ferlauto v. Hamsher,
74 Cal.App.4th 1394 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

McGarry v. University of San Diego,
154 Cal.App.4th 97 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Navellier v. Sletten,
29 Cal.4th 82 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Roberts v. Los Angeles County Bar Association,
105 Cal.App.4th 604 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Savage v. Pacific Gas & Electric Company,
21 Cal.App.4th 434 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Seelig v. Infinity Broadcasting Corp.,
97 Cal.App.4th 798 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Tuchscher Development Enterprises, Inc. v. San Diego Unified Port District,
106 Cal.App.4th 1219 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Tutor-Saliba Corp. v. Herrera,
136 Cal.App.4th 604 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Vogel v. Felice,
127 Cal.App.4th 1006 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

STATUTES

Code of Civ. Proc., § 425.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

REPLY IN SUPPORT OF MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425.16

1    I.    INTRODUCTION

2          The opposition of plaintiff Samantha Ronson ("Ronson") to the motion to strike

3    complaint pursuant to Code of Civil Procedure section 425 16 (the "Motion") brought by

4    defendant Mario Lavandeira ("Lavandeira") is, in actuality, no opposition at all. In fact, *her*

5    *entire argument in opposition literally consists of one sentence:* "As Plaintiff's Opposition sets

6    forth, Defendants have not met their burden." Opposition, p 1, line 10  Despite this conclusory

7    statement, *she fails to address, in any manner, any of the issues raised by the Motion.* Instead,

8    she devotes a page (of her two-page Opposition) addressing her procedurally improper and

9    factually deficient request for leave to conduct discovery pursuant to Section 425 16(g)  She also

10   submits her declaration ostensibly to demonstrate that the alleged defamatory statements about

11   her were false. Significantly, however, *her declaration, which appears intentionally vague and*

12   *ambiguous, fails to plainly refute the statements thereby giving rise to a reasonable inference*

13   *that the statements were substantially true.*

14         To make matters worse, *the Opposition appears to be a sloppily prepared "cut and*

15   *paste" from a different document.* For example, Ronson refers to her "Amended Complaint."

16   However, no amended complaint exists. Opposition, p 1, lines 11-12  She also refers to her

17   "claims" for "extortion, intentional infliction of emotional distress, abuse of process, false light

18   and public disclosure of private facts." She has asserted a single claim of defamation. Id., p 1,

19   line 27 through p. 2, line 2.[1]

20         As demonstrated below, Lavandeira's Motion must be granted for the following reasons:

21         1        Ronson fails to refute, in any way, that her complaint is subject to Section 425 16;

22         2        Ronson fails to demonstrate that her defamation claim against Lavandeira has a

23                  reasonable probability of success for the following reasons:

24

25

26   ―――――――――――

27       [1]  The sloppiness of the Opposition is further reflected by Ronson's repeated reference to
     "defendants." While Ronson has sued multiple parties, the Motion was filed solely on behalf of

28   Lavandeira.

REPLY IN SUPPORT OF MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425 16

a. Ronson fails to plainly and unequivocally refute the allegedly defamatory statements thereby giving rise to a reasonable inference that the statements were substantially true;

b. Ronson fails to refute, in any way, that Lavandeira's subjective statements of opinion do not constitute provably false statements; and

c. Ronson fails to refute, in any way, that Lavandeira's statements were not made with actual malice.

3. Ronson's request for discovery must be denied because it is procedurally improper and lacks good cause as required by Section 425.16(g). Ronson failed to file a noticed motion and the proposed discovery is not reasonably calculated to shed light on the matters at issue or affect the outcome of the Motion.

## II.  ARGUMENT

A. Ronson Fails to Refute the Fact that Her Complaint is Subject to Section 425.16

As demonstrated by the Motion, Ronson's complaint is subject to Section 425.16(e)(3) in that it is based on Lavandeira's right of free speech in connection with statements made in a public forum regarding an issue of public interest. Motion, pp. 5-10. Lavandeira demonstrated that his Website is a public forum as a matter of law. Id., p. 6. He also demonstrated that Lohan, the Accident, and Ronson are matters of public interest. Id., pp. 6-9. He further demonstrated that drug and alcohol use, under age drinking, driving under the influence of drugs and alcohol, and celebrity misconduct are also matters of public interest. Id., pp. 9-10. Despite Ronson's assertion that Lavandeira failed to meet his burden, *she completely fails address the applicability of Section 425.16 to her complaint.* By failing to oppose the Motion on this issue, Ronson concedes that her complaint is subject to Section 425.16.

B. Ronson Fails to Demonstrate a Reasonable Probability of Prevailing on Her Defamation Claim

Once the defendant makes a prima facie showing that the complaint is subject to Section 425.16, the burden shifts to the plaintiff to establish a "probability" that it will prevail on its claims. Section 425.16(b). To meet this burden, the plaintiff must demonstrate that the

1   complaint is both legally sufficient and supported by a prima facie showing of facts sufficient to
2   support a favorable judgment if the evidence by plaintiff is credited. Navellier v. Sletten, 29
3   Cal.4th 82, 89 93 (2002). In opposing an anti-SLAPP motion, the plaintiff must present
4   *admissible evidence* and *cannot rely on the allegations of the complaint.* Roberts v. Los
5   Angeles County Bar Assoc., 105 Cal.App.4th 604, 613-614 (2003). *Evidence that could not be*
6   *admitted at trial cannot overcome an anti-SLAPP motion.* Fashion 21 v. Coalition for Humane
7   Immigrant Rights of Los Angeles, 117 Cal.App.4th 1138, 1148 (2004).

8                    1.    Ronson's Intentionally Vague and Ambiguous Declaration Raises a
9                          Reasonable Inference that the Statements Were Substantially True

10      As will be demonstrated below, Ronson fails to address the issues raised by the Motion.
11  Instead, she submits her declaration ostensibly for the purpose of refuting the alleged defamatory
12  statements made by Lavandeira. However, as demonstrated by the concurrently filed Evidentiary
13  Objections, Ronson's declaration is not competent evidence. Moreover, even if it were
14  competent, *the apparently intentional ambiguity and vagueness of her declaration gives rise to*
15  *a reasonable implication that Lavandeira's statements were substantially true.*

16      Ronson states in her declaration that "I have never placed cocaine next to Lindsay Lohan
17  in a car. I am not a drug user. I never arranged for a photographer to take photographs of
18  Lindsay Lohan while she was in a car." Ronson Decl., ¶ 2. Significantly, however, her
19  declaration does not refute the alleged defamatory statements made about her and upon which
20  she sues.

21      The statements republished by Lavandeira did not state that *Ronson placed cocaine next*
22  *to Lohan in a car* or *that Ronson was a drug user.* Rather, the statements were that "Ronson was
23  the one who was holding the cocaine later found in Lindsay's car," and "the cocaine that was
24  found in Lohan's car after her crash may have been RONSON's!" Complaint, ¶¶ 13, 20. The
25  statements also did not indicate that *Ronson arranged for a photographer to take photographs of*
26  *Lohan while she was in a car.* Rather, the statement was that Ronson "allegedly entered into an
27  agreement with a photo agency to tip them off to her whereabouts with Lindsay, even creating
28  photo-ops for them." Complaint, ¶ 20.

1    Given the discrepancies between Ronson's declaration and the alleged defamatory

2  statements, her declaration raises more questions that it answers. For example, there is no

3  dispute that the police found cocaine in Lohan's car after the Accident. See Complaint, ¶ 10

4  ("the police who were called to the scene found cocaine in Lohan's car.") Given that the

5  statements did not indicate that Ronson placed cocaine next to Lohan in a car, her declaration

6  begs the question – did Ronson place the cocaine somewhere else in Lohan's car than beside

7  Lohan? Was Ronson holding the cocaine when the Accident occurred? If Ronson was not

8  holding the cocaine, who was? Also, if the cocaine did not belong to Ronson, whose cocaine did

9  the police find?

10    Ronson also states merely that she is not a drug user in the present tense. Significantly,

11  she fails state that she has not used drugs in the past or in the very recent past such as, for

12  example, on May 26, 2007, when the Accident occurred. Therefore, it is quite possible that she

13  was a drug user just prior to actually signing her declaration. Similarly, Ronson's statement that

14  "I never arranged for a photographer to take photographs of Lindsay Lohan while she was in a

15  car," also raises obvious questions. Did Ronson arrange for photographers to take photographs

16  outside of a car? Coming out of a night club? Outside of her apartment? Her failure to

17  unequivocally state that she has never had an agreement with, or arranged for, photographers to

18  obtain photographs of Lohan at any time or any place, raises the reasonable implication that she

19  did, in fact, have some arrangement with photographers.

20    The decision in Vogel v. Felice, 127 Cal.App.4th 1006, 1021-1022 (2005) demonstrates

21  that Ronson's failure to plainly and unequivocally refute the allegedly defamatory statements

22  gives rise to a reasonable implication that the statements about her were substantially true.

23    In Vogel, two political candidates sued a web site's host for defamation based on the

24  statements posted on defendant's website. Plaintiff Vogel contended the statements that he was a

25  "deadbeat dad" and "wanted" as such, and that he "owes his Wife and kids thousands" were false

26  and defamatory. In opposing the defendant's motion pursuant to Section 425.16, Vogel

27  submitted a declaration stating "I do not owe my wife and kids thousands." The court in Vogel

28  held that this statement was a negative pregnant (i.e., a denial of the literal truth of the total

- 4 -

1    statement but not of its substance) because "by denying a specified amount, it leaves open the

2    possibility of a debt of some other, perhaps substantially equivalent, amount." Additionally, by

3    using the conjunction "and" to state that he did not owe his wife *and* kids thousands created

4    ambiguity in the statement that the plaintiff could have easily avoided:

5         "This ambiguity becomes all the more striking, considering the
          presumptive ease with which Vogel could have stated the true
6         facts, i e., how much he owed, and when and how the debts, or
          portions of it, were discharged. Vogel's failure to plainly refute the
7         defamatory imputation by stating the true facts may be understood
          to imply that he did in fact continue to owe substantial amounts of
8         unpaid child support. Certainly it was insufficient to establish his
          ability to prove the substantial falsity of the imputations that he
9         was a 'deadbeat dad' who 'owed thousands.'"

10   Id. at 1021-1022.

11        Similarly, while plaintiff Graniss in Vogel contended that defendant's statement that he

12   was "Drunk and Chewin' tobaccy," were false, Graniss never stated the true facts to which the

13   statement would have to be compared in order to establish substantial falsity. Id. at 1022. In

14   finding his declaration insufficient, the court stated:

15        "He denied being an alcoholic, but not that he consumed alcohol to
          the point of inebriation, or that he had done so often, or that he like
16        do to so. Similarly, he used only the present tense in denying that
          he chewed tobacco; for all the records shows, he might have
17        chewed it in the very recent past, and might intend to chew it again
          in the future."

18

19   Id. at 1022-1023.

20        Like the declarations submitted in Vogel, the ambiguity of Ronson's declaration is all the

21   more striking considering the presumptive ease with which she also could have stated the true

22   facts. Moreover, she also does not state the true facts to which the alleged defamatory statements

23   can be compared in order to establish substantial falsity. Her failure to plainly and unequivocally

24   refute the alleged defamatory statements by stating the true facts may be reasonably understood

25   to imply that she was holding the cocaine at the time of the Accident, that the cocaine found by

26   the police did belong to her, and that she did have some deal or arrangement with photographers

27   to obtain photos of Lohan. As a result, her declaration is insufficient to establish the falsity of

28   the statements and to meet her burden under Section 425.16.

1
2

    2.    Ronson Fails to Refute that Lavandeira's Subjective Statements of

    Opinion Do Not Constitute Provably False Statements

3        Contrary to the declaration of Martin Garbus, Lavandeira's Motion is not solely based on

4 Ronson's inability to prove "the requisite state of mind." See Garbus Decl., p. 1, ¶ 3. Rather, as

5 demonstrated by the Motion, Ronson's claim is based on two categories of statements: (1)

6 Lavandeira's subjective statements of opinion about Ronson and (2) Lavandeira's republishing of

7 statements made by others about Ronson. Motion, p. 10; see also Complaint, ¶¶ 20-21

8        With regard to the first category of statements, the law is well settled that statements of

9 opinion are not actionable. Savage v. Pacific Gas & Elec. Co., 21 Cal.App 4th 434, 445 (1993)

10 Thus, statements that cannot be reasonably interpreted as stating "actual facts" about an

11 individual cannot form the basis of a defamation action. Seelig v. Infinity Broadcasting Corp.,

12 97 Cal.App.4th 798, 809 (2002)  In the Motion, Lavandeira demonstrated that his subjective

13 statements of opinion about Ronson (i.e., Ronson has been "toxic" to Lohan, Lohan does not

14 need enemies with friends like Ronson, and that Lavandeira blames Ronson for Lohan's

15 problems), are not actionable because they cannot be reasonably interpreted as stating actual facts

16 about Ronson.

17      ***Significantly, Ronson fails to address this issue in any way.*** Again, by failing to oppose

18 the Motion on this issue, Ronson concedes that Lavandeira's subjective statements of opinion

19 about Ronson are not actionable as a matter of law.

20
21

    3    Ronson Fails to Refute that Lavandeira's Statements Were Not Made with

    Actual Malice

22        Ronson does not dispute that she is a public figure and that she must prove, by clear and

23 convincing evidence, that Lavandeira's statements were made with actual malice. As such, to

24 overcome Lavandeira's Motion, she was required to present clear and convincing evidence that

25 Lavandeira acted with actual malice. Christian Research Institute v. Alnor, 148 Cal.App 4th 71,

26 84-85 (2007) (anti-SLAPP motion properly granted where public figure plaintiff failed to submit

27 "clear and convincing" evidence of actual malice in support of defamation claim). This standard

28 "presents a heavy burden, far in excess of the preponderance sufficient for most civil litigation.

1  The burden of proof by clear and convincing evidence requires a finding of high probability. The

2  evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to

3  command the unhesitating assent of every reasonable mind." Id., at 84 (citations omitted).

4          To show actual malice, Ronson was required to demonstrate that Lavandeira "either knew

5  his statement was false or subjectively entertained serious doubt that his statement was truthful."

6  Christian Research Institute, 148 Cal App 4th at 84. The test is *a subjective test, under which*

7  *the defendant's actual belief concerning the truthfulness of the publication is the crucial*

8  *issue.*" McGarry v. University of San Diego, 154 Cal App 4th 97, 114 (2007) (emphasis added).

9  The reckless disregard test is not a negligence test measured by whether a reasonably prudent

10 person would have published, or would have investigated before publishing, the defamatory

11 statement. Instead, the evidence must "permit the conclusion that the defendant actually had a

12 'high degree of awareness of ... probable falsity.' As a result, failure to investigate before

13 publishing, even when a reasonably prudent person would have done so, is not sufficient to

14 establish reckless disregard." Id. (citations omitted). Thus, to support a finding of actual malice,

15 the failure to investigate must fairly be characterized as demonstrating the speaker purposefully

16 avoided the truth or deliberately decided not to acquire knowledge of facts that might confirm the

17 probable falsity of charges. Id.

18         In support of the Motion, Lavandeira presented specific evidence demonstrating that prior

19 to posting his statements on the Website, he had heard at least 20-50 times that Ronson had a

20 drug problem. See Lavandeira Declaration in Support of Motion, ¶¶ 11. He also presented

21 evidence that genuinely believed that the statements regarding Ronson were true and he had no

22 doubts of that they were false. Id., ¶ 19. *Lavandeira's evidence is uncontradicted.*

23         Rather than attempting to meet her burden under Section 425.16, Ronson instead requests

24 that she be granted leave to conduct discovery to depose Lavandeira regarding the truth or falsity

25 of his statements and his sources of information. However, as demonstrated below, Ronson's

26 request for discovery must be denied because it is procedurally improper and fails to show good

27 cause. Moreover, this proposed discovery will not shed light on the issue of actual malice

28 because it is not directed toward Lavandeira's subjective belief about the truth of the statements

- 7 -

1    As a result, Ronson fails to, and cannot, meet her burden under Section 425.16.

2         C.    Ronson's Request for Leave to Conduct Limited Discovery Should Be Denied

3                Because It Is Procedurally Defective and Lacks Good Cause

4         Section 425.16(g) expressly requires that any request to conduct limited discovery

5    pending a hearing on a special motion to strike must be made in the form of a noticed motion

6    Thus, a request for permission to conduct discovery that is not made by noticed motion is

7    improper and must be denied.  Tuchscher Development Enterprises, Inc. v. San Diego Unified

8    Port Dist., 106 Cal.App.4th 1219, 1247–1248 (2003) (Section 415 16(g) "requires both a timely

9    motion and a showing of good cause. Absent either, the request must fail.")  Ronson failed to file

10   a noticed motion.[2]  Instead, she merely raises the issue in her Opposition.  Opposition, pp. 1-2.

11   Her request is improper and must be denied.

12        Ronson also fails to show that good cause exists for the proposed limited discovery.

13   Good cause is not establish where the requested discovery is not reasonably calculated to shed

14   light on the matters at issue or affect the outcome of the motion to strike.  Carver v. Bonds 135

15   Cal App 4th 328, 359 (2005); see also Tutor-Saliba Corp. v. Herrera, 136 Cal App 4th 604, 618-

16   619 (2006).  By the declaration of Martin Garbus, Ronson asserts that she needs to depose

17   Lavandeira to establish that the "rumors" about her were false and that the source of Lavandeira's

18   information "could not be deemed responsible sources."  Garbus Decl , ¶ 3.

19        This proposed discovery does not relate to the issues raised by the Motion   The issues are

20   whether Lavandeira's subjective statements of opinion were provably false statements and

21   whether his statements were made with actual malice.  The determination of whether a statement

22   constitutes fact or opinion is a question of law for the court.  Ferlauto v. Hamsher, 74

23   Cal.App.4th 1394, 1401 (1999).  Therefore, discovery cannot shed light on this issue.

24   Additionally, the crucial issue with regard to actual malice is Lavandeira's subjective belief about

25   the truth of the statements.  Ronson presents no evidence whatsoever to suggest that Lavandeira's

26   _____

27        [2] Significantly, she also fails to request a continuance of the hearing on the Motion.
     Therefore, even if the Court were to grant her leave to conduct discovery, the hearing on the
28   Motion would be conducted before the discovery could take place

1  declaration was not truthful or that he purposefully avoided the truth  As such, Ronson fails to

2  provide good cause for the proposed discovery.

3  III    <u>CONCLUSION</u>

4      For the foregoing reasons, Lavandeira respectfully requests that the Court grant his

5  motion in its entirety, deny Ronson's request for discovery, and award Lavandeira attorneys' fees

6  and costs associated with this Motion

7

8  DATED: September 19, 2007            FREEDMAN & TAITELMAN, LLP
                                        DOLL, AMIR & ELEY, LLP
9

10

                                        By: _____
11
                                            BRYAN J. FREEDMAN
                                        Attorneys for Defendant MARIO LAVANDEIRA
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425 16

**PROOF OF SERVICE**

STATE OF CALIFORNIA       )
                             ) ss.
COUNTY OF LOS ANGELES   )

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 1901 Avenue of the Stars, Suite 500, Los Angeles, California 90067.

     On September 19, 2007, I served the following document(s) described as ***REPLY OF DEFENDANT MARIO LAVANDEIRA IN SUPPORT OF MOTION TO STRIKE THE COMPLAINT PURSUANT TO CODE OF CIVIL PROCEDURE SECTION 425.16*** on interested parties:

[X]    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m. from **(310) 201-0045**. The transmission was reported as complete and without error, and a transmission report was properly issued by the transmitting facsimile machine.

[X]    by placing a true copy of the document(s) listed above in a sealed envelope(s), with postage thereon fully prepaid, addressed as set forth below. I am readily familiar with the firm's practice for collection and processing of correspondence and other materials for mailing with the United States Postal Service. On this date, I sealed the envelope(s) containing the above materials and placed the envelope(s) for collection and mailing at the address above following our office's ordinary business practices. The envelope(s) will be deposited with the United States Postal Service on this date, in the ordinary course of business.

[]    by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill and causing the envelope to be delivered to a Federal Express agent for next business day delivery to the address(es) listed below.

[]    (VIA HAND DELIVERY) in a sealed envelope a copy of the above document, and delivered it to:

**[SEE ATTACHED MAILING SERVICE LIST]**

[X]    STATE

     I declare under penalty of perjury under the laws of the State of California that the above is true and correct and that this Proof of Service was executed on September 19, 2007 at Los Angeles, California.

                             _____
                               Tiffany Davis

1

## MAILING SERVICE LIST

2

3 Bruce A. Friedman, Esq.
BINGHAM MCCUTHEN LLP
4 1620 26th Street, North Tower
Santa Monica, CA 90404-4060
5 Fax: (310) 907-2141

6
Martin Garbus, Esq.
7 DAVIS & GILBERT LLP
1740 Broadway
8 New York, NY 10019
Fax: (212) 468-4888
9

10 Gregory L. Doll, Esq
Michael A. Amir
11 1888 Century Park East, Suite 1106
Los Angeles, California 90067
12 Fax: (310) 557-9101

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Exhibit G

1    SUPERIOR COURT OF THE STATE OF CALIFORNIA

2    FOR THE COUNTY OF LOS ANGELES

3    DEPARTMENT 42                HON. ELIHU M. BERLE, JUDGE

4

5    SAMANTHA RONSON,                    )
                                         )        **ORIGINAL**
6              PLAINTIFF,                )
                                         )
7                                        )
          V.                             )    BC 374174
8                                        )
                                         )
9    SUNSET PHOTO AND NEWS LLC;          )
     JILL ISHKANIAN; MARIO LAVANDEIRA    )
10   d/b/a PEREZ HILTON, and DOES        )
     1-10, inclusive,                    )
11                                       )
                                         )
12            DEFENDANTS.                )
     _____)

13

14           REPORTER'S TRANSCRIPT OF PROCEEDINGS

15

                WEDNESDAY, SEPTEMBER 26, 2007
16

17   APPEARANCES:

18

     FOR PLAINTIFF              BINGHAM McCUTCHEN LLP
19   SAMANTHA RONSON:           BY:  D. WAYNE JEFFRIES
                                The Water Garden
20                              1620 26th Street
                                Santa Monica, CA    90404
21                              (310) 907-1000

22

     FOR PLAINTIFF              DAVIS & GILBERT LLP
23   SAMANTHA RONSON:           BY:  MARTIN GARBUS
                                1740 Broadway
24                              New York, New York 10019
                                (212) 468-4800

25

26

     (Appearances continued on next page.)
27

28                             LINDA NISHIMOTO, CSR 9147
                               OFFICIAL REPORTER

1     <u>APPEARANCES (Continuing)</u>:

2

3

4     FOR DEFENDANTS              SNIPPER, WAINER & MARKOFF
      SUNSET PHOTO AND           BY:  MAURICE WAINER
5     NEWS, LLC and              270 North Canon Drive, Penthouse
      JILL ISHKANIAN:            Beverly Hills, CA    90210
6                                (310) 550-5770

7

8     FOR DEFENDANT              FREEDMAN & TAITELMAN, LLP
      MARIO LAVANDEIRA:          BY:  BRYAN J. FREEDMAN
9                                     JACQUELINE C. BROWN
                                 1901 Avenue of the Stars
10                               Suite 500
                                 Los Angeles, CA    90067
11                               (310) 201-0005

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
 1  CASE NUMBER:              BC 374174
 2  CASE NAME:                SAMANTHA RONSON, ET AL.,
 3                            VERSUS
 4                            SUNSET PHOTO AND NEWS LLC
 5  LOS ANGELES, CALIFORNIA   WEDNESDAY, SEPTEMBER 26, 2007
 6  DEPARTMENT 42             HON. ELIHU M. BERLE, JUDGE
 7  APPEARANCES:              (AS HERETOFORE NOTED.)
 8  REPORTER:                 LINDA NISHIMOTO, CSR NO. 9147
 9  TIME:                     A.M. SESSION
10                     ****
11              (In open court:)
12         THE COURT:  Ronson versus Sunset Photo.
13         MS. BROWN:  Jacqueline Brown for defendant Mario
14  Lavandeira.
15         MR. FREEDMAN:  Bryan Friedman for the same
16  defendant.
17         MR. JEFFRIES:  Wayne Jeffries for plaintiff Ronson,
18  and I have with me and would introduce a member of the New
19  York bar in good standing, Mr. Martin Garbus.
20         MR. WAINER:  I represent Sunset Photo and News and
21  Jill Ishkanian.
22         MR. JEFFRIES:  We applied ex parte for the
23  admission of Mr. Garbus.
24         THE COURT:  Where is the ex parte?
25              (Pause.)
26         THE COURT:  I have received the ex parte
27  application of Martin Garbus to appear pro hac vice in this
28  case to represent the plaintiff.
```

4

```
 1              Any opposition?
 2          MR. FREEDMAN:  Your Honor, we don't believe that it
 3   complies with the rules.  We believe you have to give 16
 4   days notice under the rules and there is no grounds for
 5   ex parte relief, and that at a minimum, they would get an
 6   ex parte order for shortening time.
 7              However, if your Honor wants to make a
 8   limited exception for Mr. Garbus to argue this motion, we
 9   don't have a particular objection, but it follows like
10   another example of not following the particular rules with
11   respect to this motion.
12          THE COURT:  We don't have to make disparaging
13   comments.  I just asked if you were going to stipulate to
14   it.
15              Normally, if there was an ex parte
16   application that was stipulated to, I would consider it on
17   an ex parte basis, but if there is an objection, the court
18   is not going to grant the ex parte application and that the
19   court will require a noticed motion to allow counsel to
20   appear pro hac vice.
21              However, I take it there is no objection for
22   Mr. Garbus to appear on this motion.
23          MR. FREEDMAN:  That's correct.
24          MR. JEFFRIES:  Thank you, counsel.
25              Thank you, your Honor.
26          THE COURT:  We will allow Mr. Garbus to appear and
27   argue this motion.
28              We are going to take a five-minute recess.
```

1            Ms. Ronson has chosen to publicly associate

2    herself with Lindsay Lohan for personal reasons,

3    professional reasons, and I can't comment on that. But the

4    fact of the matter is that she has chosen to do that, and as

5    a result of that involvement, public involvement, as well as

6    her involvement in the accident makes her connected to an

7    issue of public interest.

8            THE COURT:  Let me ask you a question, plaintiff's

9    counsel:  What does the plaintiff do for a living?

10            MR. GARBUS:  Excuse me?

11            THE COURT:  What does plaintiff do for a living?

12            MR. GARBUS:  She is a disc jockey.  She works at

13    clubs, parties, bar mitzvahs, weddings.  That is what she

14    does.

15            It seems clear to me that had I filed timely

16    a notice of motion, we would be talking about discovery on

17    the question of malice.  I respectfully request that my

18    client not be punished because I did not file a notice of

19    motion timely.

20            THE COURT:  I think that I would like to give this

21    more consideration.  What is the date of the next hearing?

22            MR. GARBUS:  The 10th.

23            THE COURT:  I am going to continue the hearing on

24    this matter until October 10th.

25            MS. BROWN:  Can I just make one final point?

26            THE COURT:  8:30 a.m.  Yes.

27            MS. BROWN:  In Ms. Ronson's complaint she alleges

28    at paragraph 22 that:

1              "Defendants knew that the

2        statements about Ronson described above

3        were false and/or recklessly disregarded

4        the falsity of these statements when

5        they published them.  Defendants

6        published these statements with actual

7        malice..."

8              Actual malice is not an essential element of

9  a claim for defamation.  It only arises if you are a public

10  figure.  By specifically alleging reckless disregard or

11  actual malice, Ms. Ronson is essentially admitting that she

12  is a public figure for purposes of her defamation claim.

13              MR. GARBUS:  That is not so.

14              THE COURT:  Well, I will let you argue that

15  further.  I want to review the papers again and read the

16  cases again so I am going to continue this matter until

17  October 10th at 8:30 a.m.

18              MR. GARBUS:  Your Honor, may we have an opportunity

19  to submit a final brief?

20              THE COURT:  I will give you the opportunity.  No

21  more evidence.  This is an additional opportunity to submit

22  new declarations.  The evidence is what it is.

23              Now we know what some of the issues are.

24  We knew beforehand, but they have been crystalized.  I will

25  give the parties an opportunity to file supplemental legal

26  briefing only, a maximum of ten pages.  Each side will have

27  until October 3rd within which to file any supplemental

28  legal briefing.

49

1           MR. GARBUS:  Thank you.

2                 Your Honor, may I be permitted to continue

3  the argument on October 10th?

4           THE COURT:  I'm sorry?

5           MR. GARBUS:  Continue the argument.  I was not

6  admitted pro hac vice.

7           THE COURT:  Yes, yes.  Certainly.

8           MR. GARBUS:  Thank you.

9           THE COURT:  And you can file a motion too.  But you

10  may continue to appear.

11          MR. GARBUS:  Yes.  Thank you.

12          THE COURT:  Thank you, counsel.

13              Notice waived?

14          MR. GARBUS:  Notice waived.

15         MS. BROWN:  Noticed waived.

16            (Proceeding adjourned.)

17

18

19

20

21

22

23

24

25

26

27

28

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              FOR THE COUNTY OF LOS ANGELES

3    DEPARTMENT 42              HON. ELIHU M. BERLE, JUDGE

4

5    SAMANTHA RONSON,                    )
                                         )
6                                        )
                                         )
7               PLAINTIFF               )
          V.                             )    BC 374174
8                                        )    REPORTER'S
                                         )    CERTIFICATE
9    SUNSET PHOTO AND NEWS, LCC, et al., )
                                         )
10                                       )
               DEFENDANTS.               )
11   _____)

12

     STATE OF CALIFORNIA  )
13                        )  SS
     COUNTY OF LOS ANGELES)

14

15        I, Linda Nishimoto, Official Reporter of the Superior

16   Court of the State of California, for the County of Los

17   Angeles, do hereby certify that the foregoing pages, 1

18   through 49, inclusive, comprise a full, true and correct

19   transcript of the proceedings held on Wednesday, September

20   26, 2007, in the matter of the above-entitled cause.

21

22        Dated this 1st day of October, 2007.

23

24

25   _____  C.S.R. 9147

26   Official Reporter

27

28



1  Bingham McCutchen LLP
   BRUCE A. FRIEDMAN (SBN 65852)
2  The Water Garden
   Fourth Floor, North Tower
3  1620 26th Street
   Santa Monica, CA 90404-4060
4  Telephone: 310.907.1000
   Email: bruce.friedman@bingham.com
5
6  Davis & Gilbert LLP
   MARTIN GARBUS
7  JAMES R. LEVINE
   1740 Broadway
8  New York, NY 10019
   Telephone: (212) 468-4800
9  Facsimile: (212) 468-4888
   Email: mgarbus@dglaw.com
10        jlevine@dglaw.com
11 Attorneys for Plaintiff
   SAMANTHA RONSON
12

**ORIGINAL FILED**
LOS ANGELES

OCT 02 2007

SUPERIOR COURT
By: _____VICTOR E. SINO-CRUZ_____
DEPUTY

13            SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                      COUNTY OF LOS ANGELES

15

| | |
|---|---|
| 16 SAMANTHA RONSON, | No. BC 374174 |
| 17         Plaintiff, | HON. ELIHU M. BERLE |
|      v. | |
| 18 SUNSET PHOTO AND NEWS, LLC; JILL | **MEMORANDUM OF POINTS AND** |
| 19 ISHKANIAN, MARIO LAVANDEIRA doing | **AUTHORITIES IN OPPOSITION TO** |
|    business as PEREZ HILTON, and DOES 1-10, | **THE CAL. CODE §425.16 MOTIONS OF** |
| 20 inclusive, | **MARIO LAVANDEIRA AND JILL** |
| | **ISHKANIAN** |
| 21         Defendants. | Action Filed: July 17, 2007 |
| 22 | Date: October 10, 2007 |
| 23 | Time: 8:30 a.m. |
| | Dept: 42 |

24

25

26

27

28
1

1

## TABLE OF CONTENTS

2   STATEMENT OF FACTS ..................................................................... 1

3   ARGUMENT ...................................................................................... 1

4       1   THE ARTICLE AND ITS CONTEXT ...................................... 1

5       2   DEFENDANTS' MOVING PAPERS AND PLAINTIFF'S REPLY
    DECLARATIONS SHOW THE MATTER WAS OF PRIVATE
6         CONCERN SET FORTH IN A PRIVATE FORUM AND THUS A
    SLAPP MOTION IS INAPPROPRIATE ....................................... 2

7

8       3.   DEFENDANTS' MOVING PAPERS AND PLAINTIFF'S REPLY
    DECLARATIONS SHOW DEFENDANTS CANNOT MEET THE TEST
    FOR THE APPLICATION OF SLAPP ......................................... 5

9

10      4.   DEFENDANTS' MOVING PAPERS AND PLAINTIFF'S REPLY
    DECLARATIONS SHOW PLAINTIFFS SURPASS THE STANDARD
    FOR DEFEATING A SLAPP MOTION ...................................... 6

11

12      5.   THE RECORD SHOWS ACTUAL MALICE AND RECKLESSNESS ......... 7

13      6.   PLAINTIFFS ARE ENTITLED TO COUNSEL FEES ON THIS
    MOTION .............................................................................. 8

14  CONCLUSION .................................................................................. 10

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* (1985) 472 U.S. 749 ............... 3

4

*Harte-Hanks Communications v. Connaughton [(1989)]*, 491 U.S. 657 ............... 7

5

### STATE CASES

6

7

*Briggs v. Eden Council for Hope and Opportunity* (1999) 19 Cal. 4th 1106, fn.
    9 þ. ........................................................................................................ 3

8

*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.
    App. 4th 26 [1 Cal. Rptr. 3d 390] ............................................................. 3

9

10

*Computer Express v. Lee Jackson*, 113 Cal. Rptr. 2d 625 ............................... 8

11

*Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal. App.
    4th 595 [132 Cal. Rptr. 2d 191] ............................................................. 3

12

*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.
    App. 4th 107 [1 Cal. Rptr. 3d 501] ......................................................... 3

13

14

*Matson v. Dvorak* (1995) 40 Cal. App. 4th 539 ............................................ 6

*Olaes v. Nationwide Mutual Insurance Co.* (2006) 135 Cal. App. 4th 1501 ......... 3

15

*Paul for Council v. Hanyecz* (2001) 85 Cal. App. 4th 1356 ............................. 6

16

*Reader's Digest Association v. Superior Court, supra*, 37 Cal. 3d 244 ............... 7

17

18

*Rivera v. American Federation of State, County and Municipal Employees, AFL-
    CIO* (2003) 105 Cal. App. 4th 913 [130 Cal. Rptr. 2d 81] [23] (*Rivero*).) ... 3, 4

19

*Rosenaur v. Scherer* (2001) 88 Cal. App. 4th 260 ....................................... 6

20

*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal. App. 4th 798 ................. 4, 5

21

*Taus v. Loftus* (2007) 40 Cal. 4th 683 [55] ............................................. 5

22

*Terry v. Davis Community Church* (2005) 131 Cal. App. 4th 1534 ..................... 3

23

*Wallace v. Consumers Cooperative of Berkley, Inc. (1985)*, 170 Cal. App. 3d 836
    [216 Cal. Rptr. 649] ....................................................................... 9, 10

24

25

*Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 17 Cal. Rptr. 36 (2004) ................... 3

26

27

28

i

### STATEMENT OF FACTS

A recitation of facts relevant to this matter is contained in Plaintiff's Complaint, Defendants' Moving and Reply papers and in the Samantha Ronson declarations dated September 19, 24 and 28, 2007 and the Martin Garbus declarations dated September 14, 24 and 28, 2007, submitted in opposition to the SLAPP motions, and the Court Argument on September 26, 2007 briefs previously submitted. The facts and arguments in those papers and argument are incorporated by reference therein.

### ARGUMENT

**1.    THE ARTICLE AND ITS CONTEXT**

Of course, the report on the Perez Hilton site is libelous in nature. But it is not just the words of Hilton's report. It is Perez Hilton's confirmation of the Celebrity Babylon report <u>and</u> the printed and written material he adds to the report.

In some ways this is a case of first impression. I have not seen a website such as the defendants have in this case and I have not seen a "reporter" such as Perez Hilton. Nor have I seen a case dealing with it.

With respect to the Hilton site, the defendants' paper shows:

(a)    The first thing the reader sees is "I [Love] Pussy" scrawled across a woman's face on a tawdry controlled website that sells products of Hilton, XXX films, and access to millions of gay profiles and gives you pictures of the website owner.

(b)    The reader then identifies the woman as Samantha Ronson.

(c)    The reader then reads Hilton story added to celebitchy.com. Every fact regarding Ronson is totally false. The reader does not know it is fabricated

(d)    The reader then reads Hilton's confirmation of the events from another website, Celebrity Babylon. Every fact regarding Hilton is totally false. The reader does not know it is fabricated.

Defendants' papers show the automobile accident involving Lohan has already been written bout at great length in the media. But Defendants, who control their own sites, which are not public forums, must do more to get viewers. Perez Hilton fabricates tawdry stories. He does not merely repeat the Babylon report. He adds to it, and to justifies it, he adds additional facts, making this into a different <u>new</u> story from the one ABC, CNN and LA Times reports – Ronson cheating on her friend, Ronson placing her cocaine, Ronson making money by setting Lohan up for photographers, is the <u>real "story"</u> the website readers drawn to these columns want to read. (All the underlining in the brief is ours.)

2.    **DEFENDANTS' MOVING PAPERS AND PLAINTIFF'S REPLY DECLARATIONS SHOW THE MATTER WAS OF PRIVATE CONCERN SET FORTH IN A PRIVATE FORUM AND THUS A SLAPP MOTION IS INAPPROPRIATE.**

Prior judicial interpretations of the public-issue requirement support our argument. Courts have recognized five principles to guide the determination whether speech concerns an issue of public interest: "(1) public interest does not equate with <u>mere curiosity</u>; (2) a matter of public interest should be a matter of concern to a <u>substantial number of people</u>, not to a relatively small, specific audience; (3) there should be some degree of closeness between the statements at issue and the asserted public interest; (4) the focus of the speaker's conduct should be the public interest rather than an effort to '<u>gather ammunition</u>' for a private controversy; and (5) those charged with defamation cannot, <u>by their own conduct</u>, create their own defense by

2

1  making the claimant a public figure or <u>by creating a public issue</u>" (*Olaes v. Nationwide Mutual*

2  *Insurance Co.* (2006) 135 Cal. App. 4th 1501, 1510-1511; *Terry v. Davis Community Church*

3  (2005) 131 Cal.App. 4th 1534, 1546-1547; *Weinberg, supra*, 110 Cal. App. 4th at pp. 1132-1133;

4  see *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.* (1985) 472 U.S. 749, 761-762

5  ["[whether] . . . speech addresses a matter of public concern must be determined by [the

6  expression's] <u>content, form, and context</u> . . . as <u>revealed by the whole record</u>." [Citation]."

7

8  (plurality opinion of Powell, J.]; *Du Charme, supra*, 110 Cal. App. 4th at p. 117 ["judges and

9  attorneys will, or should know a public concern when they see it"], citing *Briggs v. Eden Council*

10  *for Hope and Opportunity* (1999) 19 Cal. 4th 1106, 1122, fn. 9.)

11       The fact that Lohan was involved in an accident was of public interest. MSNBC,

12  CNN, The New York Times and the Los Angeles Times all reported on it. The fact that

13  Samantha Ronson was involved and did the things Hilton says she did was not of public interest.

14  As Defendants' papers show, she was not mentioned in any media. Celebrity.com then wrote

15

16  about it.

17       As the Court Appeals Court said in *Wilbanks v. Wolk* 121 Cal. App. 4th 883, 17

18  Cal. Rptr. 36 (2004), the most commonly articulated definitions of

19       "statements made in connection with a public issue" focus on whether (1) the subject of
20       the statement or activity precipitating the claim was a person or entity in the public eye;
         (2) the statement or activity precipitating the claim involved conduct that could affect
21       large number of people beyond the direct participants; and (3) whether the statement or
         activity precipitating the claim involved a tope of widespread public interest.
22       (*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th
23       26, 33 [1 Cal. Rptr. 3d 390]; *Rivera v. American Federation of State, County and
         Municipal Employees, AFL-CIO* (2003) 105 Cal. App. 4th 913, 924 (130 Cal. Rptr. 2d 81]
24       (*Rivero*).) As to the latter, it is not enough that the statement refer to a subject of
         widespread public interest; the statement must in some manner itself contribute to the
25       public debate. (*Du Charme v. International Brotherhood of Electrical Workers* (2003)
         110 Cal.App.4th 107 [1 Cal. Rptr. 3d 501] (*Du Charme*) [report that an employee was
26       removed for financial mismanagement was informational, but not connected to any
27       discussion, debate or controversy]; *Consumer Justice Center v. Trimedica International,
         Inc.* (2003) 107 Cal. App. 4th 595, 601 [132 Cal. Rptr. 2d 191] [advertisements about a
28       pill offering a natural alternative to breast implants are not about the general topic of

3

herbal supplements]; *Rivero, supra*, 105 Cal. App. 4th at p. 924 [reports that a particular supervisor was fired after union members complained of his activities are not a discussion of policies against unlawful workplace activities])

As we pointed out, one of Perez Hilton's other exclusives was that in April 27, 2007 Fidel Castro died. It was on the front page of the Wall Street Journal and later referred to in Newsday, the Miami Herald and dozens of other media. He maintained it was true for several days and that the American Government was suppressing it. When Castro (who is today alive) was shown to be alive, Hilton admitted it was gossip. He is known as one of America's better-known liars, he has no regard for the truth, fabrication is a way of life.

But for the hoax, neither Fidel Castro nor Ms. Ronson would have been in a story.

Ms. Ronson's "celebrity" has nothing to do with the elements of defendant's story. Her celebrity if there is any, is as an entertainment figure. Hilton then embellished on the story and as it whipped around more and more false facts were added. Perez Hilton's papers totally exaggerate Samantha Ronson's career.

The chief cases relied upon by defendants are totally inapposite to this case. The California Appeals Courts have disagreed about whether certain newspapers and certain web sites are, or, are not public forums. With respect to these two sites there can be no question Perez Hilton and Celebrity.com are not public forums – not marketplaces of ideas. Here the editors of both controls the site. They can put on and keep off what the editor wishes. They are sites of specific demographic interest, not for a wide public interest. They are sites for celebrity bashers of a certain kind – a different kind than the National Enquirer.

*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal. App. 4th 798 was the case most relied upon by Defendant in both their briefs and argument. It has nothing to do with this case. First of all the words in *Seelig* were not libelous. Secondly, the Court noted that reality shows and talk radio, both directly involved in that case, are the new phenomena in America.

The plaintiff in *Seelig* appeared voluntarily on a national TV show and spoke voluntarily to radio talk show hosts. The plaintiff was a woman who, for the "personal experience," made a brief and unsuccessful appearance as a contestant on a successful prominent national Fox reality-television show, *Who Wants to Marry a Millionaire.* (*Id.* At 801-802.) The television show, as the Court of Appeal noted, "generated considerable debate within the media on what its advent signified about the condition of American society," including concern focused on "the sort of person willing to meet and marry a complete stranger on national television in exchange for the notoriety and financial rewards associated with the Show and the presumed millionaire lifestyle to be furnished by the groom." (*Id* at pp. 807-808.) The plaintiff at first refused to participate in a radio program in which the radio hosts intended to ask her why she wanted to participate in the television show. (*Id.* at 802-803.) but she then did talk to the hosts. The hosts of the radio program and their producer ridiculed the plaintiff, on the air, for refusing to defend her participation in the television show. The Court of Appeal held that, because of the public debate generated by *Who Wants to Marry a Millionaire*, the television show and radio program concerned an issue of public interest, and that, "[b]y having chosen to participate as a contestant in the Show, plaintiff voluntarily subjected herself to inevitable scrutiny and potential ridicule by the public and the media." (*Id.* at p. 808.) That is not this case.

3. **DEFENDANTS' MOVING PAPERS AND PLAINTIFF'S REPLY DECLARATIONS SHOW DEFENDANTS CANNOT MEET THE TEST FOR THE APPLICATION OF SLAPP**

To apply the anti-SLAPP statute, courts engage in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Taus v. Loftus* (2007) 40 Cal. 4th 683, 712. Defendants therefore have the burden to

5

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE
SLAPP MOTIONS OF MARIO LAVANDEIRA AND JILL ISHKANIAN
A/72233948 1/3006874-0000327407

1  demonstrate that section 425.16 applies in this case.

2         To do so, they must show that their alleged defamatory statements satisfy the

3  public-issue public forum requirement  It does not

4  **4.    DEFENDANTS' MOVING PAPERS AND PLAINTIFF'S REPLY**

5  **DECLARATIONS SHOW PLAINTIFFS SURPASS THE STANDARD FOR**
   **DEFEATING A SLAPP MOTION**

6

7         "SLAPP is a vehicle for determining whether a plaintiff, through a showing of

8  minimal effort, has stated and substantiated a claim  *Willbanks v. Wolk* 121 Cal App 4th 883 17

9  Cal Rptn 36 497 (2004)."  The plaintiff "must demonstrate that the complaint is both legally

10 sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable

11 judgment if the evidence submitted by the plaintiff is credited." (*Matson v. Dvorak* (1995) 40

12 Cal App 4th 539, 548; accord, *Rosenaur v. Scherer* (2001) 88 Cal. App. 4th 260 274.)  In deciding

13 the question of potential merit, the trial court considers the pleadings and evidentiary

14
   submissions of both the plaintiff and the defendant (§425.16, subd. (b)(2)); though the court does

15 not *weigh* the credibility or comparative probative strength of competing evidence, it should

16 grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats

17

18 the plaintiff's attempt to establish evidentiary support for the claim.  (*Paul for Council v*

19 *Hanyecz* (2001) 85 Cal. App. 4th 1356, 1365 [disapproved on another point in *Equilon*

20 *Enterprises v. Consumer Cause, Inc., supra*, 29 Ca. 4th at p 68, fn. 5].)  "In denying a motion to

21 strike on the ground that the plaintiff has established the requisite probability of success,

22
   therefore, the trial court necessarily concludes that the plaintiff has substantiated a legally tenable

23 claim through a facially sufficient evidentiary showing and that the defendant's contrary

24 showing, if any, does not defeat the plaintiff's as a matter of law.  This determination establishes

25
   probable cause to bring the claim .  . ." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal 4[th]

26 811, 821, orig. italics; accord, *Taus v Loftus* (2007) 40 Cal 4th 683, 713

27

28

1    5.    **THE RECORD SHOWS ACTUAL MALICE AND RECKLESSNESS.**

2          Defendants' Moving and reply Papers and Plaintiff has shown Defendants do not

3    adhere to any professional standards. *Harte-Hanks Communications v. Connaughton* [(1989)]

4    491 U.S. 657, 688.) To prove culpable mental state, the plaintiff may rely on circumstantial

5    evidence, including evidence of motive and failure to <u>adhere to professional standards</u>. *(Ibid.*; see

6    also *Reader's Digest Assn. v. Superior Court, supra,* 37 Cal.3d 244, 257-258.)

7          In *Reader's Digest Assn. v. Superior Court, supra,* 37 Cal. 3d at pages 257-258,

8

9    the California Court held:

10

11          "[A]ctual malice can be proved by circumstantial evidence. '[E]vidence of negligence, of
            motive and of intent may be adduced for the purpose of establishing, by cumulation and
12          by appropriate inferences, the fact of a defendant's recklessness or of this knowledge of
            falsity.' (*Goldwater v. Ginzburg* (2d Cir. 1969) 414 F.2d 324, 342; *Widener v Pacific
13          Gas & Electric Co.* [(1977)] 75 Cal. App. 3d 415, 434[, disapproved on another point in
            *McCoy v Hearst Corp.* (1986) 42 Cal. 3d 835, 846, fn. 9].) A failure to investigate [see
14          *Widener v. Pacific Gas & Electric Co., supra,* 75 Cal. App. 3d 415, 435), anger and
            hostility toward the plaintiff (*id.,* at p. 436), reliance upon sources known to be unreliable
15          (*Curtis Publishing Co. v. Butts* [(1967)] 388 U.S. 130, 156; *Pep v. Newsweek, Inc.*
            (S.B.N.Y. 1983) 553 F. Supp. 1000, 1002), or known to be biased against the plaintiff
16          (*Fisher v. Larsen* (1982) 138 Cal.App. 3d 627, 640; *Burns v McGraw-Hill Broadcasting
            Co., Inc.* (Colo. 1983) 659 P. 2d 1351, 1361-1362)-such factors may, in an appropriate
17          case, indicate that the publisher himself had serious doubts regarding the truth of his
            publication. [P] We emphasize that such evidence is relevant only to the extent that it
18          reflects on the subjective attitude of the publisher. (*St. Amant v. Thompson, supra,* 390
            U.S. 727, 732-733; *Pep. v Newsweek, Inc., supra,* 553 F. Supp. 100, 1003; *Velle
19          Transcendental Research Ass'n v. Sanders. Harte-Hanks Communications v.
            Connaughton* [(1989)] 491 U.S. 657, 688.) To prove culpable mental state, the plaintiff
20          may rely on circumstantial evidence, including evidence of motive and failure to adhere
            to professional standards.
21

22

23          This case brings together, as no case before every element in every case of what

24    constitutes malice. I have not seen a website such as the defendants have in this case, and I have

25    not seen a reporter such as Perez Hilton. Malice may be inferred solely by the claim that the

26    story is fabricated, or is the product of defendant's imagination or is solely based on rumors or

27    there are obvious reasons to doubt the story. Defendants' Moving papers show this with clear

28

1    and convincing evidence.

2        His writing "I [Love] Pussy" over Ronson's picture, by itself is ill will. So, too, is

3    his T-shirt episode. Given the fact that Ms. Ronson has never before been accused of using or

4    possessing drugs, or setting up and trying to arrange photoshoots of her friend, and the fact that

5    she had her own camera, the sites had obvious reasons to doubt the truth of their source if there

6
7    was one. Add to that the Defendants' Moving papers and all the other allegations made in the

8    Ronson and Garbus declarations, there is more then enough for summary judgment in plaintiff's

9    favor, and for a directed verdict, if those were the motions before the Court. *Readers Digest*

10   *Assn v Superior Court* (1984) 37 3d 244, 256, 258.

11
12       Hilton, of course, according to the Moving papers, then helped spread the story to

13   the media throughout the world, including the Australian paper. He spreads his story, goes to

14   professional rumor mongers and gossip hounds to spread false and hurtful information with

15   impunity. His trial testimony will show how many of his pictures he sent around; how many

16   other sites picked up the picture with "I [Love] Pussy" written over Ronson's face.

17       The actual malice continues to this day. As we noted in Court, at the argument

18   before the Court, Defendants have stated that unless this suit is dropped, they intend to continue

19   the attack on plaintiff. This, of course, is civil and criminal extortion. If Ms. Ronson loses the

20
21   suit for any reason, (if she could prove truth but not malice), faces the possibility of seeing her"

22   loss" trumpeted on the Hilton site according to Hilton. Or seeing herself attacked for other

23   reasons, all of which could drive her out of business.

24   **6.    PLAINTIFFS ARE ENTITLED TO COUNSEL FEES ON THIS MOTION.**

25       In *Computer Express v Lee Jackson* 93 Cal. App. 4th 933; 113 Cal. Rptr. 2d 625

26   (2001) the Court described the situations where the successful plaintiff can obtain counsel fees.

27   ".. A defendant making a SLAPP motion and a plaintiff in a civil rights action thus enjoy the

28

1    same preference for attorney fees if they are successful.  Given this similarity in approach
2    between <u>Code of Civil Procedure section 425.16, subdivision (c)</u> and United States Code <u>section</u>
3    <u>1988</u>, authority under <u>section 1988</u> is particularly helpful in applying <u>section 425.16, subdivision</u>
4    <u>(c).</u>
5
6    In *Hensley* the United States Supreme Court considered the proper application of
7    <u>section 1988</u> where the plaintiff prevails on some but not all of his or her claims.  The court
8    stated that, [HN24] for purposes of the threshold determination of whether the plaintiff has
9    prevailed at all, " 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes
10   if they succeed on any significant issue in litigation which achieves some of the benefit the
11   parties sought in bringing suit.' "(*Hensley, supra* 461 U.S. at p. 433 [103 S. Ct. at p. 1939].)
12   However, where the plaintiff in one lawsuit presents "distinctly different claims for relief that are
13   based on different facts and legal theories," he or she cannot recover fees incurred in pursuing an
14   unsuccessful claim  (*Id.*, at pp. 434-435 [103 S. Ct. at p. 1940].)  On the other hand, if the
15   plaintiff's successful and unsuccessful claims involve a common core of facts or related legal
16   theories, the court should determine "the significance of the overall relief obtained expended on
17   the litigation." (*Id.*, at p. 435 [103 S. C. at p. 1940].) "A reduced fee award is appropriate if the
18   relief, however significant, is limited in comparison to the scope of the litigation as a whole."
19   (*Id.*, at p. 440 [103 S. Ct. at p. 1943].)
20
21   California courts applying the private attorney general statute, <u>Code of Civil</u>
22   <u>Procedure section 1021.5</u>, have adopted the same approach.  Thus, in cases under <u>section 1021.5</u>,
23   the courts hold that "a party needs not prevail on every claim presented in an action in order to
24   be considered a successful party within the meaning of the section. [Citations.]" (*Wallace v.*
25   *Consumers Cooperative of Berkley, Inc.* (1985) 170 Cal. App. 3d 836, 846.) Rather, "when a
26   plaintiff is successful within the meaning of the section, the fact that he or she has prevailed on
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE
SLAPP MOTIONS OF MARIO LAVANDEIRA AND JILL ISHKANIAN
A/72233948 1/3006874-0000327407

1  some claims but not on others is a factor to be considered in determining the amount of the fee

2  awarded." (*Id.*, at pp. 846-847, citing Hensley, supra, 461 U S. 424 )

3  **CONCLUSION**

4  Both of Defendants' §425.16 motions should be dismissed or denied.

5

6

7  DATED: October ___ 2, 2007       Davis & Gilbert LLP

8

9

10  By: _____

11          Martin Garbus
            Attorneys for Plaintiff
12          SAMANTHA RONSON

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE
SLAPP MOTIONS OF MARIO LAVANDEIRA AND JILL ISHKANIAN
A/72233948 1/3006874-0000327407

PROOF OF SERVICE

1

2               I am a citizen of the United States, over 18 years of age, not a party to this action

3  and employed in the County of Los Angeles, California at The Water Garden, Fourth Floor,

4  North Tower, 1620 26th Street, Santa Monica, California  90404-4060

5               Today I served the attached:

6

7  **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE CAL. CODE §425.16 MOTIONS OF MARIO LAVANDEIRA AND JILL ISHKANIAN**

8

9  by causing a true and correct copy of the above to be hand delivered in sealed envelope(s) with

10  all fees fully paid, addressed as follows:

11       Bryan J. Freedman, Esq          Maurice Wainer, Esq.
          Freedman & Taitelman, LLP    Snipper, Wainer & Markoff

12      1901 Avenue of the Stars       Penthouse
          Suite 500                  270 North Canon Drive

13      Los Angeles, CA 90067-6027   Beverly Hills, CA 90210

14

15      Gregory L. Doll, Esq.
          Doll Amir & Eley LLP

16      1888 Century Park East
          Suite 1106

17      Los Angeles, CA 90067

18               I declare under penalty of perjury under the laws of the State of California that the

19  foregoing is true and correct and that this declaration was executed on October 2, 2007

20

21                            _Donna McGee_
                                  Donna McGee

22

23

24

25

26

27

28                                     1

PROOF OF SERVICE

1

PROOF OF SERVICE ON ATTORNEY'S OFFICE
BY PERSONAL DELIVERY
(CCP 1011)

2

3

I am over 18 years of age, and not a party to this action

On October 2, 2007, I personally delivered a copy(ies) of the following

4

document(s):

5

**MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE CAL. CODE §425.16 MOTIONS OF
MARIO LAVANDEIRA AND JILL ISHKANIAN**

6

7

I served a copy(ies) of the document(s) in an envelope(s) by leaving the

8

envelope(s) clearly labeled to identify the attorney being served:

9

☐   I left the document(s) with a receptionist or with a person having charge of
the office.

10

11

☐   There was no person in the office with whom the document(s) could be left.
I left the document(s) between nine in the morning and five in the afternoon
in a conspicuous place in the office.

12

13

The name(s) and address(es) of the person(s) served as shown on the envelope(s) was/were:

14

15

Bryan J. Freedman, Esq.
Freedman & Taitelman, LLP
1901 Avenue of the Stars
Suite 500
Los Angeles, CA 90067-6027

Maurice Wainer, Esq
Snipper, Wainer & Markoff
Penthouse
270 North Canon Drive
Beverly Hills, CA 90210

16

17

18

Gregory L. Doll, Esq.
Doll Amir & Eley LLP
1888 Century Park East
Suite 1106
Los Angeles, CA 90067

19

20

21

22

I declare under penalty of perjury under the laws of the State of California that the

23

foregoing is true and correct and that this declaration was executed on October 2, 2007.

24

25

_____

26

_____

27

28

2

PROOF OF SERVICE



Exhibit I

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 10/10/07 | | | | DEPT. 42 |
|---|---|---|---|---|
| HONORABLE ELIHU M. BERLE | JUDGE | N DIGIAMBATTISTA | DEPUTY CLERK | |
| HONORABLE 12 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR | |
| C ELLIS/C.A. | Deputy Sheriff | L NISHIMOTO | Reporter | |

| 8:30 am | BC374174 | Plaintiff Counsel | MARTIN GARBUS (X) D. WAYNE JEFFRIES (X) |
|---|---|---|---|
| | SAMANTHA RONSON VS SUNSET PHOTO AND NEWS LLC ET AL | Defendant Counsel | BRYAN J. FREEDMAN (X) JACQUELINE C. BROWN (X) NANCY Y. MARKOFF (X) |
| | 170.6-SOHIGIAN/DEFT | | |

**NATURE OF PROCEEDINGS:**

SPECIAL MOTION OF DEFENDANTS, SUNSET PHOTO AND NEWS
LLC. AND JILL ISHKANIAN, TO STRIKE PLAINTIFF'S
COMPLAINT;

MOTION OF DEFENDANT, MARIO LAVANDEIRA, TO STRIKE THE
COMPLAINT PURSUANT TO CODE OF CIVIL PROCEDURE SECTION
425.16 (C/F 9/26/07)

Matters come on for hearing.

Counsel advise the court that the plaintiff has
settled with defendants Sunset Photo and Ishkanian.
Accordingly, the motion to strike is ordered off cal-
endar without prejudice to its being reset if the
settlement isn't finalized. In addition, the demurrer
of defendants Sunset and Ishkanian set for October 16,
2007, is advanced to this date and ordered off
calendar without prejudice to its being reset if the
settlement is not finalized.

Plaintiff's request to take discovery on the motion of
defendant Lavandeira is made and granted. The deposi-
tion of Lavandeira is to take place by October 19,
2007, and is limited to the issue of malice. Plain-
tiff's additional opposition is to be filed by Octo-
ber 24, 2007, and defendant's additional reply is to
be filed by October 9, 2007.

Defendant's oral request for a stay is made and de-

Page    1 of  2    DEPT. 42

| MINUTES ENTERED 10/10/07 COUNTY CLERK |
|---|

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 10/10/07 | | DEPT. 42 |
|---|---|---|
| HONORABLE ELIHU M. BERLE    JUDGE | N DIGIAMBATTISTA | DEPUTY CLERK |
| HONORABLE    12A    JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| C ELLIS/C.A.    Deputy Sheriff | L NISHIMOTO | Reporter |

| 8:30 am | BC374174 | Plaintiff Counsel | MARTIN GARBUS (X) D. WAYNE JEFFRIES (X) |
|---|---|---|---|
| | SAMANTHA RONSON VS SUNSET PHOTO AND NEWS LLC ET AL | Defendant Counsel | BRYAN J. FREEDMAN (X) JACQUELINE C. BROWN (X) NANCY Y. MARKOFF (X) |
| | 170.6-SOHIGIAN/DEFT | | |

**NATURE OF PROCEEDINGS:**

nied.

Defendant Lavandeira's motion to strike is continued to November 1, 2007, at 8:30 a.m. in Department 42.

Mr. Garbus' motion to appear pro hac vice is scheduled for November 1, 2007, at 8:30 a.m. in Department 42. Any opposition is to be filed by October 25, 2007.

Notice is waived.

Page   2 of  2 -  DEPT. 42



**From:** Garbus, Martin [MGARBUS@dglaw.com]
**Sent:** Thursday, October 11, 2007 1:37 PM
**To:** samantharonson@mac.com; Tom Reed
**Importance:** High

Dear Tom and Samantha:

You simply have to tell me what to do.

Not having heard from you, Samantha, I presume you are NOT going to be here at 2:00. Now we're in the middle of a lawsuit and decisions have to be made, and where the person representing you does not really have the authority to make decisions.

It can only hurt you. Tom said you had some questions about the bill. I suggested that he pay that portion of the bill where there are no questions, and that we discuss the open issues immediately.

Marty

---

IRS Circular 230 Disclosure:

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. For more information please click on the following link: http://www.dglaw.com/circular/

This message contains confidential information and is intended only for samantharonson@mac.com, treed@afsg-la.com. If you are not samantharonson@mac.com, treed@afsg-la.com you should not disseminate, distribute or copy this e-mail. Please notify MGARBUS@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.



Exhibit K

**From:** Garbus, Martin [MGARBUS@dglaw.com]
**Sent:** Friday, October 12, 2007 5:54 PM
**To:** Tom Reed
**Subject:** Re:

She said she would call you thursday
Absent substantial payment and a plan I Will not continue to run up fees and represent her

----- Original Message -----
From: Tom Reed <treed@afsg-la.com>
To: Garbus, Martin
Cc: samantharonson@mac.com <samantharonson@mac.com>
Sent: Fri Oct 12 20:45:45 2007
Subject: RE:

Marty,

As I said we do not have the funds available yet. I will come up with a
plan as soon as I speak with Samantha. She has been unavailable so far.

Tom

The Affiliated Group
4764 Park Granada Boulevard, Suite 107
Calabasas, CA 91302

Telephone 818-225-9960/310-385-1199
Facsimile 818-225-9963/310-385-7799
www.afsgweb.com
Circular 230 Disclosure
Pursuant to recently-enacted U.S. Treasury Department Regulations, We
are required to advise you that, unless otherwise expressly indicated,
any federal tax advice contained in this communication, including
attachments and enclosures, is not intended or written by Affiliated
Financial Service Group to be used, and may not be used, for the purpose
of (i) avoiding tax-related penalties under the Internal Revenue Code or
(ii) promoting, marketing or recommending to another party any
tax-related matters addressed herein.

Confidentiality Statement
This communication is confidential and is intended only for the
individual(s) or entity named above and others who have been
specifically authorized to receive it. If you are not the intended
recipient, please do not read, copy, and use or disclose the contents of
this communication to others. Please immediately notify the sender that
you have received this communication in error. Please then destroy the
communication and any copies of it. Thank you.



| From: | Garbus, Martin |
| Sent: | Friday, October 12, 2007 11:06 AM |
| To: | 'Tom Reed (treed@afsg-la.com)'; 'samantharonson@mac.com' |
| Subject: | Samantha's bills |
| Attachments: | Samantha Ronson Bills PDF |

Dear Tom:

I am attaching copies of Samantha's three bills, dated July 18, 2007, August 20, 2007 and October 8, 2007. I am also sending our firm's wire transfer instructions for payment.

Since I now understand that Samantha doesn't yet have a new attorney, I will continue to represent her until she does have a new attorney. Meanwhile, as I told Mr. Grodsky, I will send him the relevant papers on Monday.

Best,

Marty

DAVIS & GILBERT LLP DEPOSIT ACCOUNT

Account # 665057933

City National Bank

400 Park Avenue, 21st Floor

New York, NY 10022

ABA Number: 0260 1395 8

City National Swift Code: CINAUS6L

# DAVIS & GILBERT LLP
## 1740 BROADWAY
## NEW YORK, N.Y. 10019
### (212) 468-4800

### EIN # 13-1504385

Samantha Ronson                                      July 18, 2007
5210 North Rossmore Avenue
Apt 102                                              Bill Number   175041
Los Angeles, CA 90004                                File Number   022736

---

**FOR PROFESSIONAL SERVICES RENDERED**
Through June 30, 2007

**Libel Action**
File Number   022736-0001-000

| | | | | |
|---|---|---|---|---|
| 06/06/07 | MG | Read materials; meet Samantha in California; read cases on website jurisdiction | 3.00 | Hrs |
| 06/12/07 | SC | Research Services:Research and retrieval of ownership of numerous celebrity gossip web sites - for Marty Garbus | 1.50 | Hrs |
| 06/13/07 | JL | Factual research / reviewing press materials | 0.30 | Hrs |
| 06/14/07 | JL | Call with partner; reviewing website materials | 0.10 | Hrs |
| 06/18/07 | JL | Factual and legal research re: possible defamation claims; identifying possible defendants; facts of case; nature of publication; researching California defamation law; researching appropriate California court; drafting complaint. | 7.60 | Hrs |
| 06/19/07 | JL | Drafting complaint; meeting with partner re: facts and identifying defendants; email correspondence with partner and client; factual research | 4.80 | Hrs |
| 06/20/07 | SC | Research Services: Research and retrieval of copy of complaint and service of process in case entitled, Splash News & Picture Agency Inc et al v. Lavandeira et al - C.D. California, case no. 07-cv-02668 - For James Levine; Contact:Research Services: Rese arch and retreval | 1.50 | Hrs |
| 06/20/07 | JL | Factual research, correspondence with library; revising and reviewing complaint | 0.50 | Hrs |
| 06/21/07 | SC | Research Services: Research and retrieval of address for Mario Lavandeira - For James Levine | 1.00 | Hrs |

## DAVIS & GILBERT LLP

| | | | |
|---|---|---|---|
| 06/21/07 | JL | Drafting, proofing, revising and circulating complaint; call with partner; legal research re: defamation and personal jurisdiction / NY Long Arm Statute; factual research re locations/addresses of defendants for naming in complaint and service of process; correspondence with library re: factual research. | 4.60 Hrs |
| 06/25/07 | JL | Incorporating partner's comments to draft complaint; proofing, revising complaint; reviewing press reports | 0.80 Hrs |
| 06/26/07 | JL | Meeting with partner; incorporating partner's comments to revised complaint; finalizing complaint; reformatting complaint with local counsel information; research; collecting information for local counsel re: service of defendants; reviewing complaint | 2.50 Hrs |
| 06/28/07 | JL | Factual research for cease and desist letters to websites; drafting and circulating draft cease and desist letter with cover email | 1.10 Hrs |
| 06/29/07 | MG | Letter. | 0.50 Hrs |

|   |   |
|---|---|
| **SUBTOTAL LEGAL SERVICES** | $12,528.00 |

**LEGAL SERVICES SUMMARY**

| | | |
|---|---|---|
| Levine, James | 22.30 Hrs | $9,143.00 |
| Garbus, Martin | 3.50 Hrs | $2,625.00 |
| Cohen, Steven | 4.00 Hrs | $760.00 |
| | 29.80 Hrs | $12,528.00 |

**OTHER CHARGES**
Through June 30, 2007

| | |
|---|---|
| Duplicating | $44.30 |
| Lexis/Westlaw/Saegis | $1,373.89 |
| Long Distance Telephone | $1.82 |

|   |   |
|---|---|
| **SUBTOTAL OTHER CHARGES** | $1,420.01 |
| **MATTER TOTAL** | **$13,948.01** |

**DAVIS & GILBERT LLP**

|  |  |
|---|---|
| TOTAL LEGAL SERVICES | $12,528.00 |
| TOTAL OTHER CHARGES | $1,420.01 |
| **TOTAL THIS BILL** | **$13,948.01** |
| UNALLOCATED CASH: | -$13,948.01 |
| CURRENT AMOUNT DUE | $0.00 |

# DAVIS & GILBERT LLP
## 1740 BROADWAY
### NEW YORK, N.Y. 10019
### (212) 468-4800

EIN # 13-1504385

Samantha Ronson
5210 North Rossmore Avenue
Apt 102
Los Angeles, CA 90004

August 20, 2007

Bill Number   176467
File Number   022736

---

**FOR PROFESSIONAL SERVICES RENDERED**
Through July 31, 2007

**Libel Action**
File Number   022736-0001-000

| | | | |
|---|---|---|---|
| 07/12/07 | JL | Call with M. Garbus re: new press reports; factual/internet research re: new press reports; meetings with partner; research re: who/where to direct cease and desist letters; drafting letters to Star Magazine and Daily News seeks retractions; preparing let ter to go out – email memo to partner/secretary re: places to which letter should be directed; research re: possible defendants; email correspondence with partner and client re: Star Magazine report | 4.30  Hrs |
| 07/13/07 | JL | Checking websites / factual research re: recent press reports; email correspondence with client re: recent reports | 0.20  Hrs |
| 07/14/07 | MG | Dropped off site; spoke to Rupp, Samantha, American Media, Starr. | 8.00  Hrs |
| 07/17/07 | MG | Letter from AM to Samantha; emails. | 3.00  Hrs |
| 07/17/07 | JL | Reviewing letter from American Media; reviewing press reports re: lawsuit | 0.30  Hrs |
| 07/27/07 | MG | Spoke to photographer; got served with pleadings. | 1.00  Hrs |

<div align="right">

**SUBTOTAL LEGAL SERVICES**    $10,968.00

</div>

**LEGAL SERVICES SUMMARY**

| | | | |
|---|---|---|---|
| Levine, James | 4.80 | Hrs | $1,968.00 |
| Garbus, Martin | 12.00 | Hrs | $9,000.00 |
| | 16.80 | Hrs | $10,968.00 |

**OTHER CHARGES**
Through July 31, 2007

# DAVIS & GILBERT LLP

Duplicating                                              $136.30
Lexis/Westlaw/Saegis                                     $177.33

SUBTOTAL OTHER CHARGES                    $313.63

MATTER TOTAL          $11,281.63


TOTAL LEGAL SERVICES          $10,968.00
TOTAL OTHER CHARGES              $313.63

TOTAL THIS BILL          $11,281.63

UNALLOCATED CASH:         -$11,051.99

CURRENT AMOUNT DUE            $229.64

**DAVIS & GILBERT LLP**
**1740 BROADWAY**
**NEW YORK, N.Y. 10019**
(212) 468-4800

EIN # 13-1504385

Samantha Ronson                                    October 8, 2007
5210 North Rossmore Avenue
Apt 102                                            Bill Number    178108
Los Angeles, CA 90004                              File Number    022736

**FOR PROFESSIONAL SERVICES RENDERED**
Through October 8, 2007

**Libel Action**
File Number   022736-0001-000

| Date | Initials | Description | Hours | |
|---|---|---|---|---|
| 08/08/07 | MG | Emails Samantha. | 2.00 | Hrs |
| 08/08/07 | JL | Reviewing website reports; searching for and circulating to M. Garbus at his request | 0.10 | Hrs |
| 08/20/07 | JL | Call with M. Garbus re: next steps | 0.10 | Hrs |
| 08/22/07 | JL | Reviewing court order and case correspondence; reviewing case docs and taking notes in prep for calls; call with local counsel re: status of case; email to client re: next steps; calculating and calendaring court deadlines per court order; reviewing materials / email from client | 1.00 | Hrs |
| 08/23/07 | RG | Open Docket, docket information. | 0.30 | Hrs |
| 09/06/07 | MG | Work on litigation. | 3.50 | Hrs |
| 09/07/07 | MG | Work on litigation. | 4.50 | Hrs |
| 09/10/07 | MG | Work on litigation. | 6.50 | Hrs |
| 09/10/07 | JL | Reviewing court filings / motions and email correspondence | 1.00 | Hrs |
| 09/11/07 | MG | Work on litigation. | 10.00 | Hrs |
| 09/12/07 | MG | Work on litigation. | 7.50 | Hrs |
| 09/13/07 | MG | Work on litigation. | 8.20 | Hrs |
| 09/14/07 | MG | Spoke to all defendants; worked out retractions. | 3.00 | Hrs |
| 09/17/07 | MG | Spoke to Samantha, Perez Hilton, 2 other defendants; filed papers. | 2.00 | Hrs |
| 09/20/07 | MG | Meeting with Samantha; emails with Bryan Freedman; telephone conversation with Bill Voyatzis. | 1.00 | Hrs |
| 09/21/07 | MG | Discussions with opposing counsel; discussion with Samantha. Meet with Samantha. Spoke to Blair Berk. | 4.00 | Hrs |

## DAVIS & GILBERT LLP

| 09/24/07 | MG | Prepare papers for argument; telephone call Wainer, Voyatzis. Telephone calls and emails with Bingham McCutchen firm. | 11.00 | Hrs |
|----------|----|----|----|----|
| 09/25/07 | MG | Prepare for oral argument; flight to LA; discussions and emails with Voyatzis, Wainer, Jeffries. | 12.00 | Hrs |
| 09/25/07 | RG | Docket information. | 0.30 | Hrs |
| 09/26/07 | MG | Oral argument | 3.00 | Hrs |
| 09/27/07 | SC | Research Services: Research and retrieval of numerous cases related to Slapp law in CA. Retrieval of CA Civil Code 48a. Retrieval of articles related to Perez Hilton claiming that Fidel Castro is dead - For Martin Garbus | 1.00 | Hrs |
| 09/27/07 | MG | Preparation of motion papers | 11.00 | Hrs |
| 09/28/07 | MG | Preparation of motion papers; emails, phone calls Gina Simas, Wayne. | 9.50 | Hrs |
| 10/01/07 | MG | Work on briefs; emails, telephone conversations with CA counsel. | 8.00 | Hrs |
| 10/02/07 | MG | Trying to work out settlement agreements; finishing affidavits and declarations; filing brief; preparing for October 10 oral argument; discussions with Blair Berk. | 6.00 | Hrs |
| 10/04/07 | MG | Work on papers. Telephone calls re: retraction. | 8.00 | Hrs |
| 10/05/07 | MG | Emails, phone calls Voyatzis, Wainer, Samantha | 3.50 | Hrs |
| 10/06/07 | MG | Telephone calls to Samantha, Maurice Wainer. | 1.50 | Hrs |
| 10/07/07 | MG | Telephone calls. | 1.50 | Hrs |

**SUBTOTAL LEGAL SERVICES**      $96,606.00

**LEGAL SERVICES SUMMARY**

| | | | |
|----|----|----|----|
| Levine, James | 2.20 | Hrs | $902.00 |
| Garbus, Martin | 127.20 | Hrs | $95,400.00 |
| Gomez, Richard | 0.60 | Hrs | $114.00 |
| Cohen, Steven | 1.00 | Hrs | $190.00 |
| | 131.00 | Hrs | $96,606.00 |

**OTHER CHARGES**
Through October 8, 2007

| | |
|----|----|
| Out of Town Travel | $1,267.96 |
| Courier Services | $174.66 |
| Court Services | $2.56 |
| Duplicating | $447.95 |
| Lexis/Westlaw/Saegis | $577.00 |
| Postage | $0.41 |
| Long Distance Telephone | $23.54 |
| Fax | $139.50 |

### DAVIS & GILBERT LLP

Word Processing                                                        $265.00

                                    SUBTOTAL OTHER CHARGES        $2,898.58

                                               MATTER TOTAL       $99,504.58


                                    TOTAL LEGAL SERVICES          $96,606.00
                                    TOTAL OTHER CHARGES            $2,898.58

                                               TOTAL THIS BILL    $99,504.58

**PREVIOUS BILLS OUTSTANDING**
176467      08/20/07                        229.64
                                            $229.64

                                               TOTAL DUE          $99,734.22

Page 3



Exhibit M

**From:**                Garbus, Martin
**Sent:**                Tuesday, October 16, 2007 8:06 PM
**To:**                  'Wayne.Jeffries@bingham.com'
**Subject:**          She is willing to give me a document that says she discharges me

How es one protect a lien on a file to protect fees



**From:**    Garbus, Martin [MGARBUS@dglaw.com]

**Sent:**    Wednesday, October 17, 2007 1:38 PM

**To:**    Tom Reed

**Cc:**    samantharonson@mac.com

**Subject:** FW: Samantha Ronson Statement (Final) and Promissory Note PDF

Dear Tom:

I am today sending you three sets of documents. The first is Samantha's consent to my withdrawal, which was sent to both you and Samantha earlier today. The second is my final bill which, including the outstanding statements, totals $141,590.55.

The third is a note for five payments of the outstanding bills, starting November 1, 2007, at $28,318.11 each, allowing Samantha to pay me back that amount ($141,590.55) over a five month period.

Upon receipt of the executed consent, I will no longer do any further work. The additional monies were incurred since the previous bill was sent out.

Call me if you have any questions.

Best,

Marty

**From:** sharescan@dglaw.com [mailto:sharescan@dglaw.com]
**Sent:** Wednesday, October 17, 2007 4:33 PM
**To:** Garbus, Martin
**Subject:** Samantha Ronson Statement (Final) and Promissory Note.PDF

IRS Circular 230 Disclosure:

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. For more information please click on the following link: http://www.dglaw.com/circular/

This message contains confidential information and is intended only for treed@afsg-la.com, samantharonson@mac.com. If you are not treed@afsg-la.com, samantharonson@mac.com you should not disseminate, distribute or copy this e-mail. Please notify MGARBUS@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

**DAVIS & GILBERT LLP**
**1740 BROADWAY**
**NEW YORK, N.Y. 10019**
**(212) 468-4800**

EIN # 13-1504385

Samantha Ronson
5210 North Rossmore Avenue
Apt 102
Los Angeles, CA 90004

October 17, 2007

Bill Number    178727
File Number    022736

**FOR PROFESSIONAL SERVICES RENDERED**
Through October 17, 2007

**Libel Action**
File Number    022736-0001-000

| | | | | |
|---|---|---|---|---|
| 10/04/07 | LP | Organization of M. Garbus working file. | 1.80 | Hrs |
| 10/08/07 | MG | Preparation for oral argument. | 7.50 | Hrs |
| 10/09/07 | MG | Travel to Los Angeles to appear before Judge Berle; preparation for argument; conversations and emails with Wayne Jeffries (Bingham McCutchen); telephone conversations and emails with defense counsel (Maurice Wainer, Bill Voyatzis) re: settlement with Cel ebrity Babylon. | 9.00 | Hrs |
| 10/10/07 | MG | Oral argument before Judge Berle; conversations and emails with Tom Reed, Samantha; waiting for Samantha at hotel. | 5.50 | Hrs |
| 10/11/07 | MG | Conversations with Allen Grodsky, defense counsel re: settlement, Wayne Jeffries; preparation for deposition of Perez Hilton; preparation of Writ of Certiorari. | 3.50 | Hrs |
| 10/12/07 | MG | Conversations with Allen Grodsky, defense counsel re: settlement, Wayne Jeffries; preparation for deposition of Perez Hilton; preparation of Writ of Certiorari. | 3.50 | Hrs |
| 10/13/07 | MG | Research on malice (factual and legal). | 3.00 | Hrs |
| 10/14/07 | MG | Research on malice (factual and legal); emails Celebrity Babylon counsel. | 3.00 | Hrs |
| 10/15/07 | MG | Filing of pro hac motion. Preparation for EBT of Perez Hilton; emails, phone calls with Tom Reed; discussions with Bingham McCutchen; attempts to get stipulation signed; research on malice (factual and legal). | 8.00 | Hrs |

## DAVIS & GILBERT LLP

| | | | |
|---|---|---|---|
| 10/15/07 | JL | Call with Garbus re: website stories; collecting internet press reports in preparation for deposition; meetings with M. Garbus re: same | 2.50 Hrs |
| 10/16/07 | MG | Email Blair Berg; read additional cites; letters to Samantha, Reed, Judge Berle, defendant Hilton's counsel; emails Bingham McCutchen re: pro hac motion, California procedure on withdrawal; research on and preparation of motion to withdraw; research on Wr it of Certiorari; emails Grodsky. | 10.00 Hrs |

|  | | |
|---|---|---|
| **SUBTOTAL LEGAL SERVICES** | | $41,117.00 |

**LEGAL SERVICES SUMMARY**

| | | | |
|---|---|---|---|
| Levine, James | 2.50 | Hrs | $1,025.00 |
| Panebianco, Lisa | 1.80 | Hrs | $342.00 |
| Garbus, Martin | 53.00 | Hrs | $39,750.00 |
| | 57.30 | Hrs | $41,117.00 |

**OTHER CHARGES**
Through October 17, 2007

| | |
|---|---|
| Courier Services | $14.26 |
| Court Services | $226.77 |
| Duplicating | $316.95 |
| Local Travel | $166.77 |
| Long Distance Telephone | $4.08 |
| Fax | $10.50 |

| | |
|---|---|
| **SUBTOTAL OTHER CHARGES** | $739.33 |
| **MATTER TOTAL** | $41,856.33 |

| | |
|---|---|
| **TOTAL LEGAL SERVICES** | $41,117.00 |
| **TOTAL OTHER CHARGES** | $739.33 |
| **TOTAL THIS BILL** | $41,856.33 |

**PREVIOUS BILLS OUTSTANDING**

| | | |
|---|---|---|
| 176467 | 08/20/07 | 229.64 |
| 178108 | 10/08/07 | 99,504.58 |
| | | $99,734.22 |

| | |
|---|---|
| **TOTAL DUE** | $141,590.55 |

## PROMISSORY NOTE

$141,590.55

Date: October 17, 2007                               Due Date: March 1, 2008

FOR VALUE RECEIVED, the undersigned, SAMANTHA RONSON ("Ronson"), hereby agrees to pay to the order of Davis & Gilbert LLP ("D&G"):

1. Principal; Interest; Payments. Ronson promises to pay to the order of D&G the principal sum of ONE HUNDRED FORTY-ONE THOUSAND FIVE HUNDRED NINETY DOLLARS and 55 CENTS ($141,590.55) on March 1, 2008, with interest from the date hereof on the unpaid balance of such principal amount at the rate of 6% per annum, payable monthly in arrears. Payments are to be made as follows:

On November 1, 2007, the sum of TWENTY-EIGHT THOUSAND THREE HUNDRED EIGHTEEN DOLLARS and 11 CENTS ($28,318.11);
On December 1, 2007, the sum of TWENTY-EIGHT THOUSAND THREE HUNDRED EIGHTEEN DOLLARS and 11 CENTS ($28,318.11);
On January 1, 2008, the sum of TWENTY-EIGHT THOUSAND THREE HUNDRED EIGHTEEN DOLLARS and 11 CENTS ($28,318.11);
On February 1, 2008, the sum of TWENTY-EIGHT THOUSAND THREE HUNDRED EIGHTEEN DOLLARS and 11 CENTS ($28,318.11); and
On March 1, 2008, the sum of TWENTY-EIGHT THOUSAND THREE HUNDRED EIGHTEEN DOLLARS and 11 CENTS ($28,318.11).

There is no prepayment penalty. All payments of principal and interest shall be made in lawful money of the United States at such place as is designated by D&G.

2. Waiver. Presentment or demand for payment, dishonor or notice of dishonor, protest or notice of protest or other formality, are hereby waived.

3. Default Interest; Fees. Any payment not received within 10 days of the date due shall be considered in default. In the event of a default in any payment due under this Note, interest will accrue on such payment from the date of such default to the date of payment at the maximum rate permitted by law. Additionally, D&G shall be entitled to receive any and all fees and costs incurred in connection with any collection action initiated pursuant to this Note, including, but not limited to, the reasonable fees and expenses of counsel.

4. Severability. If one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

5. Choice of Law. In all respects, including all matters of construction, validity and performance, this Note and the obligations hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York applicable to contracts made and performed in such state, without regard to the principles thereof regarding conflict of laws.

IN WITNESS WHEREOF, the undersigned has executed this Note as of the date first written above.

_____
SAMANTHA RONSON



Exhibit O

---

**From:** Garbus, Martin [MGARBUS@dglaw.com]

**Sent:** Thursday, October 18, 2007 12:46 PM

**To:** samantharonson@mac.com

**Cc:** Tom Reed

**Subject:** Declaration of Martin Garbus

Dear Samantha and Tom:

I do not want to file this declaration.  Please call me.

Thank you.

Marty

---

IRS Circular 230 Disclosure:

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.  For more information please click on the following link: http://www.dglaw.com/circular/

This message contains confidential information and is intended only for samantharonson@mac.com, treed@afsg-la.com. If you are not samantharonson@mac.com, treed@afsg-la.com you should not disseminate, distribute or copy this e-mail. Please notify MGARBUS@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

1  Bingham McCutchen LLP
   BRUCE A. FRIEDMAN (SBN 65852)
2  The Water Garden
   Fourth Floor, North Tower
3  1620 26th Street
   Santa Monica, CA 90404-4060
4  Telephone: 310.907.1000
   Email: bruce.friedman@bingham.com
5

6  Davis & Gilbert LLP
   MARTIN GARBUS
7  JAMES R. LEVINE
   1740 Broadway
8  New York, NY 10019
   Telephone: (212) 468-4800
9  Facsimile: (212) 468-4888
   Email: mgarbus@dglaw.com
10        jlevine@dglaw.com

11 Attorneys for Plaintiff
   SAMANTHA RONSON
12

13          SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                  COUNTY OF LOS ANGELES

15

16 SAMANTHA RONSON,                    | No. BC 374174

17           Plaintiff,                | HON. ELIHU M. BERLE
      v.
18                                     | **DECLARATION OF MARTIN GARBUS**
   SUNSET PHOTO AND NEWS, LLC; JILL    | **IN SUPPORT OF ATTORNEY'S**
19 ISHKANIAN, MARIO LAVANDEIRA doing   | **MOTION TO BE RELIEVED AS**
   business as PEREZ HILTON, and DOES 1-10, | **COUNSEL**
20 inclusive,
                                       | Action Filed: July 17, 2007
21           Defendants.
                                       | Date:
22                                     | Time:
                                       | Dept: 42
23

24

25          I, MARTIN GARBUS, do hereby certify and declare:

26          1.      I know the facts herein of my personal knowledge and if called as a

27 witness could and would testify personally thereto. My firm, DAVIS & GILBERT LLP, and

28 BINGHAM MCCUTCHEN LLP, are presently counsel of record for Samantha Ronson, the

                                    1

1   plaintiff in the above-captioned proceeding.

2

3       2.      I make this motion on behalf of myself, my firm and Bingham McCutchen

4   to be relieved and to withdraw as counsel in the above proceeding under Cal. Code of Civil

5   Procedure § 284(2) instead of filing a consent under § 284(1) because this firm, and the firm of

6   Bingham McCutchen, LLP, have been discharged, client has been sent the consent form and has

7   not yet returned it.

8

9       3.      On October 16, 2007, I sent this Court and counsel for defendant Mario

10  Lavandeira letters indicating I would be filing an application to withdraw as counsel. Copies of

11  those letters are attached to this Declaration as Exhibit A. I also advised Mr. Lavandeira's

12  lawyer of that over the telephone the following day. The case against defendants Sunset Photo

13  and News LLC and Jill Ishkanian has been settled by stipulation.

14

15      4.      Prior to that time, on October 5, 2007, Ms. Ronson advised me that she

16  was seeking other counsel and that we were discharged. She requested I represent her an

17  additional time because of the October 10, 2007, hearing and so she could see other counsel. I

18  agreed. She said she expected to have new counsel by October 12, 2007. At her request, I spoke

19

20  to other counsel last week and forwarded one foot of documents to them this Monday, as well as

21  an email of the last hearing before the Court. I also advised them the entire file was available in

22  the Courthouse. As of October 18, 2007, Ms. Ronson had not retained new counsel.

23

24      5.      I have not heard from Ms. Ronson nor potential new counsel that she now

25  has representation. The potential new lawyer has advised me on October 17, 2007 that he will

26  not have reviewed the file until the weekend of October 21, 2007. I have sent her and her

27  representative, Tom Reed, numerous emails, left numerous phone messages advising her that I

28

---

2

wold file a motion to withdraw if I did not receive the appropriate consent forms, which I sent her. Ms. Ronson did not appear for two appointments with me and did not participate in a telephone appointment set up by her representative.

6.    Within the last thirty days, I have served the client (and her representative, Tom Reed) by electronic mail and by facsimile with copies of the motion papers filed. Papers that were sent to her previously by Federal Express have been returned to my office unopened, and Ronson has not responded in a timely manner to my repeated telephone calls to her.

7.    The next hearing scheduled in this action is set for November 1, 2007. It is a continued hearing on defendant Mario Lavandeira's SLAPP motion to dismiss the complaint.

8.    Prior to that time, the deposition of defendant Mario Lavandeira had been set for Friday, October 19, 2007. After the depositions, there was a briefing schedule to culminate in the November 1, 2007, hearing.

9.    Mr. Reed, Ms. Ronson's business manager, advised me during our conversations that Ms. Ronson did not have the funds to pay counsel.

10.    The trial in this action is not yet set.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct

Dated: October ____, 2007
        New York, New York

_____
                                MARTIN GARBUS

3



Exhibit P

| From: | Garbus, Martin [MGARBUS@dglaw.com] |
|---|---|
| Sent: | Thursday, October 18, 2007 1:17 PM |
| To: | Tom Reed |
| Cc: | SamanthaRonson@mac.com |

**Subject:** RE:

No
Not to finish
To get through the month

The affidavit I sent you will get picked up on the blogs Avoid it.

**From:** Tom Reed [mailto:treed@afsg-la.com]
**Sent:** Thursday, October 18, 2007 4:14 PM
**To:** Garbus, Martin
**Cc:** samantharonson@mac.com
**Subject:** RE:

Thanks for the info. Actually you said it would be $75K to finish up the case. I don't remember $25K per week.
You will have your signed consent very soon.

The Affiliated Group

4764 Park Granada Boulevard, Suite 107
Calabasas, CA 91302

Telephone 818-225-9960/310-385-1199
Facsimile 818-225-9963/310-385-7799
www.afsgweb.com

Circular 230 Disclosure
Pursuant to recently-enacted U.S. Treasury Department Regulations, We are required to advise you that, unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written by Affiliated Financial Service Group to be used, and may not be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.


Confidentiality Statement
This communication is confidential and is intended only for the individual(s) or entity named above and others who have been specifically authorized to receive it. If you are not the intended recipient, please do not read, copy, and use or disclose the contents of this communication to others. Please immediately notify the sender that you have received this communication in error. Please then destroy the communication and any copies of it. Thank you.

**From:** Garbus, Martin [mailto:MGARBUS@dglaw.com]
**Sent:** Thursday, October 18, 2007 1:05 PM
**To:** Tom Reed
**Cc:** samantharonson@mac.com

**Subject:**

Tom, the faster you get me the consent, the faster the fees stop. The litigation was, up until recently, ongoing. I told both Samantha and you that the costs for this month until we stopped the litigation would be about $25,000 per week. The mere fact that no one responded does not mean that one can walk away from the case. A lawyer can't. You can't prejudice a client by not doing certain things.

Again, I strongly suggest you and Samantha resolve all the open issues as quickly as possible.

I do not know what Mr. Grodsky will do but I do doubt that he will take it on a contingency basis. I may be wrong, but I think Samantha should have a back-up.

IRS Circular 230 Disclosure:

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. For more information please click on the following link: http://www.dglaw.com/circular/

This message contains confidential information and is intended only for treed@afsg-la.com, samantharonson@mac.com. If you are not treed@afsg-la.com, samantharonson@mac.com you should not disseminate, distribute or copy this e-mail. Please notify MGARBUS@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

IRS Circular 230 Disclosure:

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. For more information please click on the following link: http://www.dglaw.com/circular/

This message contains confidential information and is intended only for treed@afsg-la.com, SamanthaRonson@mac.com. If you are not treed@afsg-la.com, SamanthaRonson@mac.com you should not disseminate, distribute or copy this e-mail. Please notify MGARBUS@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

11/28/2007



Exhibit Q

**From:** Garbus, Martin [MGARBUS@dglaw.com]

**Sent:** Thursday, October 18, 2007 1:05 PM

**To:**    Tom Reed

**Cc:**    samantharonson@mac.com

Tom, the faster you get me the consent, the faster the fees stop. The litigation was, up until recently, ongoing. I told both Samantha and you that the costs for this month until we stopped the litigation would be about $25,000 per week. The mere fact that no one responded does not mean that one can walk away from the case. A lawyer can't. You can't prejudice a client by not doing certain things.

Again, I strongly suggest you and Samantha resolve all the open issues as quickly as possible.

I do not know what Mr. Grodsky will do but I do doubt that he will take it on a contingency basis. I may be wrong, but I think Samantha should have a back-up.

IRS Circular 230 Disclosure:

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. For more information please click on the following link: http://www.dglaw.com/circular/

This message contains confidential information and is intended only for treed@afsg-la.com, samantharonson@mac.com. If you are not treed@afsg-la.com, samantharonson@mac.com you should not disseminate, distribute or copy this e-mail. Please notify MGARBUS@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.



| | |
|---|---|
| **From:** | Garbus, Martin |
| **Sent:** | Tuesday, October 23, 2007 9:48 AM |
| **To:** | 'Tom Reed (treed@afsg-la.com)'; 'samantharonson@mac.com' |
| **Subject:** | FW: Draft Summons and Verified Complaint.PDF |
| **Attachments:** | Draft Summons and Verified Complaint.PDF |

Dear Tom and Samantha:

Unless I hear from you by Wednesday on the bills, I shall file a suit in New York for the payment of the legal bills. A copy of the draft Summons and Verified Complaint is attached.

Please don't force me to do it. The blogs will pick it up.

Marty

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| DAVIS & GILBERT LLP, | |
| Plaintiff, | Index No. _____ |
| | Date of Filing: October ___, 2007 |
| -against- | **SUMMONS** |
| SAMANTHA RONSON, | Plaintiffs designate New York |
| Defendant. | County, as the place of trial based upon CPLR 503 (a). |

**TO THE ABOVE-NAMED DEFENDANT: SAMANTHA RONSON**

YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your answer on plaintiffs' attorneys within 20 days after service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York); and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
      October ___, 2007

                                DAVIS & GILBERT LLP

                                By:_____
                                    Martin Garbus
                                    1740 Broadway
                                    New York, New York 10019
                                    (212) 468-4800

Address:

Samantha Ronson
5210 North Rossmore Avenue
Apt. 102
Los Angeles, CA  90004

1153516v1 22736 0001-000                                          10/23/2007 11:35 am

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

DAVIS & GILBERT LLP,

              Plaintiff,

      -against-

SAMANTHA RONSON,

             Defendant.

**D R A F T**

Index No. _____

**VERIFIED COMPLAINT**

Davis & Gilbert LLP, as attorneys pro se, for its Verified Complaint against defendant hereby alleges as follows:

## AS AND FOR A FIRST CAUSE OF ACTION

### (Breach of Contract)

1.     Plaintiff Davis & Gilbert LLP ("D&G" or "Plaintiff") is a New York limited liability partnership which engages in the practice of law with its principal place of business in New York City.

2.     Upon information and belief, defendant Samantha Ronson ("Ronson") is an individual residing in the State of California, City of Los Angeles, with an address at 5210 North Rossmore Avenue, Apt 102, Los Angeles, CA 90004.

3.     Upon information and belief, Ronson transacts or has transacted business in the State of New York, and Plaintiff's claims arise from said transaction of business.

4.    Venue is proper pursuant to CPLR § 503 because plaintiff's principle place of business is in New York, and because the acts giving rise to the causes of action in this complaint occurred within New York County.

5.    By letter dated June 8, 2007, and agreed to on June 19, 2007, Ronson retained D&G as legal counsel to represent Ronson in connection with lawsuits to be filed against websites which defamed Ronson

6.    The services rendered by D&G and by Bingham McCutchen LLP ("Bingham"), California counsel retained by D&G, were duly accepted by Ronson

7.    Statements for the services rendered by D&G and by Bingham for Ronson and costs incurred by D&G and by Bingham on behalf of Ronson presently outstanding, total for Bingham $22,985.12 and for D&G $141,590.55, for a total of $164,575.67.

8.    Despite demands, Ronson has failed to pay D&G and Bingham.

9.    D&G and Bingham have performed all services required by them on behalf of Ronson.

10.    One of the defendants, Celebrity Babylon, sued in a libel case, by Plaintiffs, on behalf of Ronson, issued a retraction, agreed to feature that retraction on its website and agreed to have that retraction on Ronson's website. Celebrity Babylon also agreed to remove any references on its website to any allegations that Ronson ever used drugs. The other defendant, Mario Lavandeira, was to be deposed at the time that Plaintiffs were discharged

11.    Defendant, after stating she intended to pay for the services rendered, claimed she was unable to pay the legal fees. She failed to return calls, missed

appointments, and otherwise acted in an unprofessional manner, making the presentation of the case, and the settlement with Celebrity Babylon, exceedingly difficult. Defendant then discharged Plaintiffs to seek a contingency lawyer.

12. There is, at present, due to D&G from Ronson the sum of $164,575.67.

### AS AND FOR A SECOND CAUSE OF ACTION

#### (Unjust Enrichment)

13. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 12 of the Complaint as if set forth fully herein.

14. D&G and Bingham rendered services for, and incurred expenses on behalf of, Ronson.

15. Ronson knew such services were being performed and such expenses were being incurred by D&G and Bingham with the expectation of payment, and Ronson acquiesced to said services being performed and said expenses being incurred, and accepted the same and received the benefits therefrom.

16. Said services rendered by D&G and by Bingham, and expenses incurred by D&G and Bingham, on behalf of Ronson are reasonably worth the sum of $164,575.67.

17. There is at present due and owing to D&G from Ronson the sum of $164,575.67.

### AS AND FOR A THIRD CAUSE OF ACTION

#### (Statement of Account)

18.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 17 of the Complaint as if set forth fully herein.

19.    Plaintiff submitted a statement of account to Ronson for D&G for the period beginning June 6, 2007 and ending October 16, 2007, totaling $141,590.55, beyond the original retainer.

20.    Plaintiff submitted a statement of account to Ronson for Bingham's services for the period September 4, 2007 and ending September 30, 2007, totaling $22,985.12.

21.    Ronson accepted Plaintiff's statement of account, saying she would work out a payout but has failed to do so.

22.    There is presently due from Ronson to Plaintiffs the sum of $164,575.67, plus incterest from October 16, 2007.

WHEREFORE, Plaintiff demands judgment against Ronson as follows:

(a)    On the First Cause of Action, the sum of $164,575.67, plus interest from October 16, 2007;

(b)    On the Second Cause of Action, the sum of $164,575.67, plus interest from October 16, 2007;

(c)    On the Third Cause of Action, the sum of $164,575.67, plus interest from October 16, 2007;

(d)    The costs and disbursements of this action; and

(e)    Such other and further relief as the Court deems necessary and

proper.

Dated:    New York, New York
          October ____, 2007

                              DAVIS & GILBERT LLP


                    By: _____

                              Martin Garbus
                              Attorneys Pro Se
                              1740 Broadway
                              New York, New York 10019
                              (212) 468-4800

**VERIFICATION**

COUNTY OF NEW YORK          )
                           )  ss:
STATE OF NEW YORK          )

_____, being duly sworn, deposes and says:

I have read the foregoing Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true. This verification is made by me because I am a member of the firm of Davis & Gilbert LLP, the Plaintiff in the above-captioned matter, and am familiar with the facts therein.

_____
_____

Subscribed and sworn to before me
this _____ day of October 2007



Exhibit S

# DAVIS & GILBERT LLP
### 1740 BROADWAY
### NEW YORK, NEW YORK 10019
### (212) 468-4800

DIRECT DIAL NUMBER
(212) 468-4883
EMAIL ADDRESS
MGARBUS@DGLAW.COM

MAIN FACSIMILE
(212) 468-4888
PERSONAL FACSIMILE
(212) 621-0936

October 16, 2007

## BY FACSIMILE: (310) 201-0045

Bryan J. Freedman, Esq.
Freedman & Taitelman, LLP
1901 Avenue of the Stars, Suite 500
Los Angeles, CA 90067

Re:    *Samantha Ronson v. Sunset Photo and News, et al.*

Dear Mr. Freedman:

My firm and Bingham McCutchen have been discharged by Samantha Ronson. We no longer represent her in the suit against your client, Mario Lavandeira. Accordingly, we have no authorization to take any actions on her behalf.

We shall advise the Court of that today. The attorney that will represent her will contact you concerning the future scheduling of the deposition of Mario Lavandeira and will discuss with you the scheduling of briefs.

She has not yet chosen that attorney but it is clear that she will not have an attorney capable of taking the October 19th deposition and will require that that deposition be taken at a later date.

Very truly yours,

Martin Garbus

MG:fit
Cc:    D. Wayne Jeffries, Esq. (By Facsimile)



DAVIS & GILBERT LLP

1740 BROADWAY

NEW YORK, NEW YORK 10019

(212) 468-4800

<div style="float:left">

DIRECT DIAL NUMBER

(212) 468-4883

EMAIL ADDRESS

MGARBUS@DGLAW.COM

</div>

<div style="float:right">

MAIN FACSIMILE

(212) 468-4888

PERSONAL FACSIMILE

(212) 621-0936

</div>

October 16, 2007

**BY HAND**

Hon. Elihu M. Berle

Superior Court, Los Angeles County

111 N. Hill Street, Room 105-E

Los Angeles, CA  90012-3117

Re:    *Samantha Ronson v. Sunset Photo and News, et al*
          *No. BC 374174 (Action Filed July 17, 2007)*

Honorable Sir:

Samantha Ronson is now seeking other counsel to represent her in her suit against Perez Hilton. My firm and the Bingham McCutchen firm have been discharged. Accordingly, we have no authority to represent her.

I have advised Mr. Freedman, who represents Perez Hilton, of that fact and have enclosed a copy of the letter sent him earlier today.

The Court will recall that the deposition of Mr. Hilton was set for October 19, 2007 and the Court then set a briefing schedule with an argument to be held on November 1, 2007. Given the fact that Ms. Ronson has not yet chosen her new counsel, I advised Mr. Freedman that he would have to wait to hear from her for the scheduling of a new deposition date.

We shall move promptly for an Order permitting us to withdraw from the Ronson v. Hilton case.

DAVIS & GILBERT LLP

Hon. Elihu M. Berle
October 16, 2007
Page 2


Meanwhile, the case brought by Ms. Ronson against Celebrity Babylon has been settled and the Court file will reflect that.

Respectfully submitted,

Martin Garbus

MG:frt
Enclosure
Cc:         Bryan J. Freedman, Esq.
            D. Wayne Jeffries, Esq.



**Tourin, Fredda**

| | |
|---|---|
| **From:** | Jeffries, D. Wayne [Wayne.Jeffries@bingham com] |
| **Sent:** | Tuesday, October 16, 2007 9:19 AM |
| **To:** | Garbus, Martin; Friedman, Bruce A |
| **Cc:** | Pippo, Dale; McGee, Donna |
| **Subject:** | RE: Ronson |

In the office. Call me. Some judges do not except writings, other than filed documents. We need to move to withdraw from the case or have signed substitution. Writing to the judge will likely not help  wj

-----Original Message-----
From: Garbus, Martin [mailto:MGARBUS@dglaw com]
Sent: Tuesday, October 16, 2007 2:31 AM
To: Jeffries, D. Wayne; Friedman, Bruce A
Subject: Re: Ronson

Can you call me before your day starts
I want to write today to judge and tell him we  have been discharged and no longer have
authority to speak or act on behalf of Ronson

----- Original Message -----
From: Jeffries, D  Wayne <Wayne.Jeffries@bingham.com>
To: Garbus, Martin; Friedman, Bruce A. <Bruce.Friedman@bingham com>
Sent: Mon Oct 15 18:35:33 2007
Subject: Re: Ronson

No. In depo.

-----Original Message-----
From: Garbus, Martin
To: Jeffries, D. Wayne
Sent: Mon Oct 15 15:33:49 2007
Subject: Re: Ronson

Can you call me
9176580524

----- Original Message -----
From: Jeffries, D. Wayne <Wayne Jeffries@bingham.com>
To: Garbus, Martin; Friedman, Bruce A  <Bruce.Friedman@bingham.com>
Cc: Pippo, Dale <Dale.Pippo@bingham com>; McGee, Donna <Donna McGee@bingham.com>
Sent: Mon Oct 15 18:18:48 2007
Subject: Ronson

Got your voicemail. Very unlikely court will move dates. It would require ex parte app and
he said he denies opposed ex parte apps and they will oppose it. You are going to have to
take the depo on friday unless freedman agrees to move it. We cannot do ex parte app here.

===========================================================================
====
Bingham McCutchen LLP Circular 230 Notice:   To ensure compliance with
IRS requirements, we inform you that any U.S. federal tax advice contained in this
communication is not intended or written to be used, and cannot be used by any taxpayer,
for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this
message is being delivered to you solely for your use in connection with the matters
addressed herein and may not be relied upon by any other person or entity or used for any
other purpose without our prior written consent
===========================================================================
====

-----------------------------------------------------------------

1

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any U S.
federal tax advice contained in this communication (including any attachments) is not
intended or written to be used, and cannot be used, for the purpose of (i) avoiding
penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed herein   For more information please
click on the following link:
http://www.dglaw.com/circular/

This message contains confidential information and is intended only for
Wayne.Jeffries@bingham.com. If you are not Wayne Jeffries@bingham.com you should not
disseminate, distribute or copy this e-mail. Please notify MGARBUS@dglaw.com immediately
by e-mail if you have received this e-mail by mistake and delete this e-mail from your
system. E-mail transmission cannot be guaranteed to be secure or error-free as information
could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain
viruses. The sender therefore does not accept liability for any errors or omissions in the
contents of this message, which arise as a result of e-mail transmission. If verification
is required please request a hard-copy version.



Exhibit V

**From:**   Jeffries, D. Wayne [Wayne.Jeffries@bingham.com]

**Sent:**    Wednesday, October 24, 2007 7:02 AM

**To:**      Garbus, Martin

**Cc:**      Friedman, Bruce A.; McGee, Donna; Pippo, Dale

**Subject:** RE:

I have not reviewed them closely. The consent I recall seeing last week was not signed, but was with a correspondence to her business manager. Someone has to represent her in the case. She substitutes counsel for us or agrees to proceed with the case in pro per. She cannot just consent to our withdrawal and have that be it, as I understand how it works. So, since she is not substituting counsel, I think you still need a motion, as we previously communicated, with the supporting documents I said that you needed, with Bruce's approval. You need to communicate with Bruce and me on this. Wayne


**From:** Garbus, Martin [mailto:MGARBUS@dglaw.com]
**Sent:** Wednesday, October 24, 2007 6:46 AM
**To:** Jeffries, D. Wayne
**Subject:**

Wayne, you now have the consent and the order. Are they satisfactory?


IRS Circular 230 Disclosure:

To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. For more information please click on the following link: http://www.dglaw.com/circular/

This message contains confidential information and is intended only for Wayne.Jeffries@bingham.com. If you are not Wayne.Jeffries@bingham.com you should not disseminate, distribute or copy this e-mail. Please notify MGARBUS@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.


===========================================================================
Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.
===========================================================================



Exhibit W

**From:**          Garbus, Martin
**Sent:**          Wednesday, October 24, 2007 7:36 AM
**To:**            'treed@afsg-la.com'; 'SamanthaRonson@mac.com'
**Subject:**       Do you have a new lawyer

If not samantha must appear on her own behalf



Exhibit X

**From:**          samantharonson@mac.com
**Sent:**          Wednesday, October 24, 2007 7:44 AM
**To:**            Garbus, Martin; Tom Reed
**Subject:**       Re: Do you have a new lawyer


I'm tired of all this shit. I wanna drop it.
Sent via BlackBerry by AT&T

-----Original Message-----
From: "Garbus, Martin" <MGARBUS@dglaw.com>

Date: Wed, 24 Oct 2007 10:35:44
To:treed@afsg-la.com, samantharonson@mac.com
Subject: Do you have a new lawyer


If not samantha must appear on her own behalf

-------------------------------------------------------

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S.
federal tax advice contained in this communication (including any attachments) is not
intended or written to be used, and cannot be used, for the purpose of (i) avoiding
penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed herein. For more information please
click on the following link: http://www.dglaw.com/circular/

his message contains confidential information and is intended only for treed@afsg-la.com,
SamanthaRonson@mac.com. If you are not treed@afsg-la.com, SamanthaRonson@mac.com you
should not disseminate, distribute or copy this e-mail. Please notify MGARBUS@dglaw.com
immediately by e-mail if you have received this e-mail by mistake and delete this e-mail
from your system. E-mail transmission cannot be guaranteed to be secure or error-free as
information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete,
or contain viruses. The sender therefore does not accept liability for any errors or
omissions in the contents of this message, which arise as a result of e-mail transmission.
If verification is required please request a hard-copy version.

1



Exhibit Y

**From:** Garbus, Martin
**Sent:** Wednesday, October 24, 2007 8:04 AM
**To:** 'samantharonson@mac.com'
**Subject:** RE: Do you have a new lawyer

Will I be getting paid

-----Original Message-----
From: samantharonson@mac.com [mailto:samantharonson@mac.com]
Sent: Wednesday, October 24, 2007 10:44 AM
To: Garbus, Martin; Tom Reed
Subject: Re: Do you have a new lawyer

I'm tired of all this shit. I wanna drop it.
Sent via BlackBerry by AT&T

-----Original Message-----
From: "Garbus, Martin" <MGARBUS@dglaw.com>

Date: Wed, 24 Oct 2007 10:35:44
To:treed@afsg-la.com, samantharonson@mac.com
Subject: Do you have a new lawyer


If not samantha must appear on her own behalf

-----------------------------------------------------

RS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S.
federal tax advice contained in this communication (including any attachments) is not
intended or written to be used, and cannot be used, for the purpose of (i) avoiding
penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to
another party any transaction or matter addressed herein. For more information please
click on the following link: http://www.dglaw.com/circular/

This message contains confidential information and is intended only for treed@afsg-la.com,
SamanthaRonson@mac.com. If you are not treed@afsg-la.com, SamanthaRonson@mac.com you
should not disseminate, distribute or copy this e-mail. Please notify MGARBUS@dglaw.com
immediately by e-mail if you have received this e-mail by mistake and delete this e-mail
from your system. E-mail transmission cannot be guaranteed to be secure or error-free as
information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete,
or contain viruses. The sender therefore does not accept liability for any errors or
omissions in the contents of this message, which arise as a result of e-mail transmission.
If verification is required please request a hard-copy version.



Exhibit Z

**From:**         Garbus, Martin
**Sent:**         Wednesday, October 31, 2007 4:27 PM
**To:**            'treed@afsg-la.com'
**Subject:**     If I don't receive payment of substantial funds by friday I shall file the comlaint

I recognize you have no control of the situation

1



**From:**        Jeffries, D. Wayne [Wayne Jeffries@bingham com]
**Sent:**        Monday, October 15, 2007 3:19 PM
**To:**          Garbus, Martin; Friedman, Bruce A
**Cc:**          Pippo, Dale; McGee, Donna
**Subject:**     Ronson

Got your voicemail. Very unlikely court will move dates. It would require ex parte app and
he said he denies opposed ex parte apps and they will oppose it  You are going to have to
take the depo on friday unless freedman agrees to move it. We cannot do ex parte app here.

============================================================================
Bingham McCutchen LLP Circular 230 Notice:   To ensure compliance with IRS requirements,
we inform you that any U S. federal tax advice contained in this communication is not
intended or written to be used, and cannot be used by any taxpayer, for the purpose of
avoiding any federal tax penalties.  Any legal advice expressed in this message is being
delivered to you solely for your use in connection with the matters addressed herein and
may not be relied upon by any other person or entity or used for any other purpose without
our prior written consent
============================================================================

1



Exhibit BB

1  Bryan J. Freedman (SBN 151990)
   Jacqueline C. Brown (SBN 177970)
2  FREEDMAN & TAITELMAN, LLP
   1901 Avenue of the Stars, Suite 500
3  Los Angeles, California 90067
   Tel: (310) 201-0005
4  Fax: (310) 201-0045
   Email: bfreedman@ftllp.com
5          jbrown@ftllp.com

6  Gregory L. Doll (SBN 193205)
   Michael A. Amir (SBN 204491)
7  1888 Century Park East, Suite 1106
   Los Angeles, California 90067
8  Tel.: (310) 557-9100
   Fax: (310) 557-9101
9  email: gdoll@dollamir.com
          mamir@dollamir.com
10
   Attorneys for Defendant MARIO LAVANDEIRA
11

12              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

13                  FOR THE COUNTY OF LOS ANGELES

14  SAMANTHA RONSON,                    )  Case No. BC374174
                                        )
15              Plaintiff,              )  [Assigned to the Honorable Elihu M. Berle,
                                        )  Dept. 42]
16       vs.                            )
                                        )
17  SUNSET PHOTO AND NEWS, LLC;         )  DEFENDANT MARIO LAVANDEIRA'S
    JILL ISHKANIAN; MARIO LAVANDEIRA    )  SUPPLEMENTAL BRIEF IN SUPPORT OF
18  dba PEREZ HILTON; and DOES 1 through )  MOTION TO STRIKE THE COMPLAINT
    10, inclusive,                      )  PURSUANT TO CODE OF CIVIL
19                                      )  PROCEDURE SECTION 425.16;
                Defendants.             )  DECLARATION OF BRYAN J.
20                                      )  FREEDMAN IN SUPPORT THEREOF
                                        )
21                                      )  [Filed Pursuant to Order of Court]
                                        )
22                                      )  Date:      November 1, 2007
                                        )  Time:      8:30 a.m.
23                                      )  Dept.:     42
                                        )
24                                      )
                                        )  Action filed:   July 12, 2007
25                                      )
                                        )
26  _____)

27

28

1

## TABLE OF CONTENTS

2
Page

3  I.   INTRODUCTION & FACTUAL SUMMARY . . . . . . . . . . . . . . . . . . . 1

4  II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5      A.   Ronson's Action is Based on Lavandeira's
            Free Speech Rights . . . . . . . . . . . . . . . . . . . . . . . 2
6
            1.   Lavandeira's Website Is a Public Forum . . . . . . . . . . . 2
7
            2.   Lavandeira's Statements About Ronson
8                Involve Matters of Public Interest for
                 Purposes of Section 425.16 . . . . . . . . . . . . . . . . . 3
9
       B.   Ronson Failed to Demonstrate a Reasonable
10          Probability of Prevailing on Her Claim . . . . . . . . . . . . . 4

11          1.   Ronson Failed to Demonstrate that the
                 Statements Were False . . . . . . . . . . . . . . . . . . . 4
12
            2.   Ronson Failed to Refute that Lavandeira's
13               Subjective Statements of Opinion Do Not
                 Constitute Provably False Statements . . . . . . . . . . . . 5
14
            3    Ronson Failed to Refute that Lavandeira's
15               Statements Were Not Made With Actual
                 Malice . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
16
                 a.   Ronson Is a Public Figure for
17                    Purposes of Her Defamation Claim . . . . . . . . . . . 6

18               b.   Ronson Failed to Demonstrate by,
                      Clear and Convincing Evidence, that
19                    Lavandeira's Statements Were Made
                      With Actual Malice . . . . . . . . . . . . . . . . . . 6
20
   III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
21
22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### STATE CASES                                                    Page

3  Annette F. v. Sharon S.,
   119 Cal.App.4th 1146 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

4

5  Barrett v. Rosenthal,
   40 Cal.4th 33 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6  Christian Research Institute v. Alnor,
   148 Cal.App.4th 71 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

7

8  Hall v. Time Warner, Inc.,
   153 Cal.App.4th 1337 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

9  Ingels v. Westwood One Broadcasting Services, Inc.,
   129 Cal.App.4th 1050 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10

11 Kronemyer v. Internet Movie Data Base, Inc.,
   150 Cal.App.4th 941 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

12 McGarry v. University of San Diego,
   154 Cal.App.4th 97 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

13

14 Savage v. Pacific Gas & Electric Co.
   21 Cal.App.4th 434 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15 Seelig v. Infinity Broadcasting Corp.,
   97 Cal.App.4th 798 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

16

17 Vogel v. Felice,
   127 Cal.App.4th 1006 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6

18

### STATUTES

19

20 Civ. Code, § 45 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21 Civ. Code, § 46 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

22 Code of Civ. Proc., § 425.16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

23

### SECONDARY SOURCES

24

25 5 Witkin, Summary of California Law (10th ed. 2005) Torts, § 529 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26

27

28

LAVANDEIRA'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425.16

1    I.    **INTRODUCTION & FACTUAL SUMMARY**

2    　　　On October 10, 2007, the Court heard, for the second time, the motion to strike the

3    complaint pursuant to Code of Civil Procedure section 425.16 (the "Motion") brought by

4    defendant Mario Lavandeira ("Lavandeira") (the "Hearing No. 2"). During Hearing No. 2, the

5    Court granted plaintiff Samantha Ronson ("Ronson") permission to conduct a four-hour

6    deposition of Lavandeira to be completed no later than October 19, 2007. The Court also

7    ordered Ronson to submit a further supplemental opposition to the Motion no later than October

8    24, 2007, and Lavandeira to file a further supplemental reply no later than October 29, 2007.

9    　　　The parties agreed that Lavandeira's deposition would take place on October 19, 2007.

10   Declaration of Bryan J. Freedman ("Freedman Decl."), ¶ 2 & Ex. A. As a professional courtesy

11   to Ronson's counsel, Lavandeira's counsel arranged the court reporter for the deposition. Id., ¶

12   3. On October 16, 2007, Ronson's counsel, Martin Garbus of David & Gilbert LLP ("D&G"),

13   wrote to Lavandeira's counsel indicating that Ronson had discharged Bingham McCutchen

14   ("Bingham") and D&G as her counsel, and as a result, that they no longer had any authority to

15   act on her behalf. Mr. Garbus also indicated he would inform the Court of this development the

16   same day. He further indicated that Ronson's new attorney would contact Lavandeira's counsel

17   regarding the scheduling of the deposition and further briefing on the Motion. Id., ¶ 4 & Ex. B.

18   　　　***To date, no motion to be relieved as counsel or substitution of attorney form has been***

19   ***filed with the Court; Lavandeira's counsel has not been contacted by Ronson's new counsel;***

20   ***and Lavandeira's deposition did not take place by October 19, 2007 as ordered by the Court.***

21   Freedman Decl., ¶ 8. Instead, on October 22, 2007, Mr. Garbus faxed to Lavandeira's counsel a

22   declaration signed by Ronson stating that she consented to D&G and Bingham withdrawing as

23   her counsel. Id., ¶ 5 & Ex. C. Then, on October 26, 2007, Mr. Garbus, on behalf of Ronson,

24   emailed Lavandeira's counsel requesting that the parties settle the case. Id., ¶ 6 & Ex. D. On

25   October 29, 2007, Mr. Garbus wrote again indicating that Ronson was willing to settle with

26   Lavandeira based on certain terms. Id., ¶ 7, Ex. E.

27   　　　As Lavandeira has repeatedly demonstrated, Ronson has failed to meet her burden under

28   Code of Civil Procedure Section 425.16 ("Section 425.16"). By failing to take advantage of the

- 1 -

1    opportunity given to her by the Court to depose Lavandeira and submit another opposition to the

2    Motion, Ronson essentially has conceded the merit of the Motion. Accordingly, the Motion

3    should now be granted in its entirety for the following reasons:

4          1.    Ronson's claim arises from Lavandeira's exercise of his constitutionally protected

5                  right of free speech made in a public forum regarding a matter of widespread

6                  public interest; and

7          2     Ronson failed to demonstrate, by evidence admissible at trial, a reasonable

8                  probability of prevailing on her defamation claim because:

9               a     Ronson failed to demonstrate that the alleged defamatory statements were

10                       false;

11              b    Ronson failed to demonstrate that Lavandeira's subjective expressions of

12                       opinion are provably false; and

13              c     Ronson failed to present any evidence, let alone clear and convincing

14                       evidence, that Lavandeira acted with actual malice

15   **II.    ARGUMENT**

16        **A.    Ronson's Action Is Based on Lavandeira's Free Speech Rights**

17        Section 425.16(e)(3) defines acts in furtherance of free speech or petition as including

18   statements that are made (1) in a public forum and (2) in connection with an issue of public

19   interest Section 425.16(c)(3)  Ronson's claim falls directly within this category.

20                  **1.    Lavandeira's Website Is a Public Forum**

21        The California Supreme Court and the Courts of Appeal repeatedly have held that a web

22   site accessible to the public is a public forum for purposes of Section 425.16. _Barrett v._

23   _Rosenthal_, 40 Cal.4th 33, 41, fn. 4 (2006). In fact, *"[a]ll cases ... considering public Web sites*

24   *in this context have concluded that such a site constitutes a public forum within section*

25   *425.16."* _Vogel v. Felice_, 127 Cal App 4th 1006, 1015 (2005) (emphasis added).

26        Ronson alleges that each of Lavandeira's allegedly defamatory statements appeared on

27   the Website. Complaint, ¶¶ 6-7, 20-21. Lavandeira presented specific evidence demonstrating

28   that his Website constitutes a public forum  Lavandeira Decl in Support of Motion ("Lavandeira

- 2 -

1   Decl."), ¶ 4. *His evidence is uncontradicted.*

2           2.    **Lavandeira's Statements About Ronson Involve Matters of Public**

3                 **Interest for Purposes of Section 425.16**

4           The law is settled that a statement or other conduct relates to "an issue of public interest

5    . if the statement or conduct concerns a topic of widespread public interest and contributes in

6    some manner to a public discussion of the topic." Hall v. Time Warner, Inc., 153 Cal App 4th

7    1337, 1347 (2007). An event that is of "significant interest to the public and the media" satisfies

8    the public interest requirement. Seelig v. Infinity Broadcasting Corp., 97 Cal App 4th 798, 807-

9    808 (2002). Recent decisions interpreting the scope of Section 425.16 demonstrate that matters

10   of public interest increasingly involve the celebrities and popular culture.

11          For example, in Hall v. Time Warner, Inc., 153 Cal App 4th 1337 (2007), the former

12   housekeeper of Marlon Brando, who was named as the beneficiary of Brando's living trust, sued

13   the producers of the nationally broadcast television show "Celebrity Justice" after a reporter for

14   show interviewed the housekeeper in her room in a retirement home and portions of the

15   interview were televised. Id. at 1341-1342. Significantly, the court in Hall held:

16              "The public's fascination with Brando and widespread public
                interest in his personal life made Brando's decisions concerning
17              the distribution of his assets a public issue or an issue of public
                interest. *Although Hall was a private person and may not have*
18              *voluntarily sought publicity or to comment publicly on Brando's*
                *will, she nevertheless became involved in an issue of public*
19              *interest by virtue of being named in Brando's will."*

20   Hall, 153 Cal App 4th at 1347 (emphasis added).

21          Additionally, in Kronemyer v. Internet Movie Database, Inc., 150 Cal App 4th 941

22   (2007), the court held that the independent film "My Big Fat Greek Wedding" constituted a topic

23   of widespread public interest for purposes of Section 425.16. Id. at 949-950. In Seelig v. Infinity

24   Broadcasting Corp., 97 Cal App 4th 798 (2002), the court held that statements made about a

25   contestant on the television program "Who Wants to Marry a Multimillionaire" by radio talk

26   show hosts constituted a matter of public interest for purposes of Section 425.16(e)(3) because

27   the television program had generated considerable media attention and *"[b]y having chosen to*

28   *participate as a contestant in the Show, plaintiff voluntarily subjected herself to inevitable*

- 3 -

1  *public scrutiny and potential ridicule by the public and the media."* <u>Seelig</u>, 97 Cal App 4th at

2  807 (emphasis added).  Similarly, <u>Ingels v. Westwood One Broadcasting Servs., Inc.</u>, 129

3  Cal App 4th 1050 (2005), the court held that a live call-in radio talk show, targeted to men aged

4  25-34 and focused primarily on relationships between men and women, was a matter of public

5  interest for purposes of Section 425 16. <u>Id.</u> at 1056.

6      It is undisputed that Lohan is the subject of widespread media attention.  Additionally,

7  Ronson admits the Accident was the subject of widespread media attention.  Complaint, ¶¶ 10-

8  11.  As a result, the circumstances surrounding the Accident, the persons involved in the

9  Accident (<u>i.e.</u> Ronson), the cocaine found by the police, and whether Lohan was betrayed by the

10  friends are also matters of widespread public interest.  Therefore, regardless of whether Ronson

11  voluntarily sought publicity in connection with the Accident, she nevertheless became involved

12  in an issue of public interest by virtue of being involved in the Accident.

13      Ronson also has voluntarily and publicly associated herself with Lohan both

14  professionally and socially.  For example, on her website, Ronson repeatedly links herself

15  professionally to Lohan.  <u>See</u> RJN, Ex. B.  She has also been repeatedly photographed

16  performing professionally with Lohan.  Brown Decl, ¶ 10, Ex. M.  She is also frequently seen

17  and photographed partying with Lohan at clubs and various events.  <u>Id.</u>  Additionally, recently

18  Lohan told <u>Elle Magazine</u> that Ronson was her best friend.  <u>Id.</u>  Thus, by voluntarily and

19  publicly associating herself with Lohan, both professionally and socially, Ronson also voluntarily

20  subjected herself to the inevitable scrutiny and potential ridicule by the public and media.

21  Lavandeira's articles about Accident, the cocaine, and Ronson's relationship with Lohan

22  contributed to the public discussion of these issues.

23  B.    **Ronson Failed to Demonstrate a Reasonable Probability of Prevailing on Her**

24        **Defamation Claim**

25        1.    **Ronson Failed to Demonstrate that the Statements Were False**

26      The only declaration properly submitted by Ronson is the declaration submitted with her

27  opposition that was filed on or about September 13, 2007.  This declaration, which appeared

28  intentionally ambiguous and vague, gives rise to the to a reasonable implication that Lavandeira's

- 4 -

1    statements were substantially true. For example, in that declaration, Ronson states that "I have

2    never placed cocaine next to Lindsay Lohan in a car. I am not a drug user. I never arranged for a

3    photographer to take photographs of Lindsay Lohan while she was in a car." Ronson Decl., ¶ 2.

4    Significantly, however, these statements do not refute the alleged defamatory statements made

5    about her and upon which she sues.

6        The statements republished by Lavandeira did not state that *Ronson placed cocaine next*

7    *to Lohan in a car* or *that Ronson was a drug user.* Rather, the statements were that "Ronson was

8    the one who was holding the cocaine later found in Lindsay's car," and "the cocaine that was

9    found in Lohan's car after her crash may have been RONSON's!" Complaint, ¶¶ 13, 20. The

10    statements also did not indicate that *Ronson arranged for a photographer to take photographs of*

11    *Lohan while she was in a car.* Rather, the statement was that Ronson "allegedly entered into an

12    agreement with a photo agency to tip them off to her whereabouts with Lindsay, even creating

13    photo-ops for them." Complaint, ¶ 20.

14        Given the discrepancies between Ronson's declaration and the alleged defamatory

15    statements, her declaration raises more questions that it answers. Additionally, the ambiguity of

16    her declaration is all the more striking considering the presumptive ease with which she could

17    have stated the true facts. Her failure to plainly and unequivocally refute the alleged defamatory

18    statements by stating the true facts may be reasonably understood to imply that the statements

19    about her were substantially true. Vogel v. Felice, 127 Cal.App.4th 1006, 1021-1022 (2005).

20        **2.    Ronson Failed to Refute that Lavandeira's Subjective Statements of**

21        **Opinion Do Not Constitute Provably False Statements**

22        Ronson's claim is based on two categories of statements: (1) Lavandeira's subjective

23    statements of opinion about Ronson and (2) Lavandeira's republishing of statements made by

24    others about Ronson. Motion, p. 10; see also Complaint, ¶¶ 20-21. With regard to the first

25    category of statements, the law is well settled that statements of opinion are not actionable.

26    Savage v. Pacific Gas & Elec. Co., 21 Cal.App.4th 434, 445 (1993). Lavandeira demonstrated

27    that his subjective statements of opinion about Ronson (i.e., Ronson has been "toxic" to Lohan,

28    Lohan does not need enemies with friends like Ronson, and that Lavandeira blames Ronson for

1  Lohan's problems), are not actionable because they cannot be reasonably interpreted as stating

2  actual facts about Ronson. *Significantly, Ronson failed to address this issue in any way.*

3          3.      **Ronson Failed to Refute that Lavandeira's Statements Were Not**

4                  **Made with Actual Malice**

5               a.      **Ronson is a Public Figure for Purposes of Her Defamation**

6                  **Claim**

7        A person will be considered a "limited purpose" public figure if he voluntarily injects

8  himself *or* is drawn into a particular public issue, and thereby becomes a public figure for a

9  limited range of issues. McGarry v. University of San Diego, 154 Cal.App.4th 97, 113 (2007).

10  For the following reasons, Ronson is, at a minimum, a limited purpose public figure:

11        *First,* Ronson admits in her complaint that she is a public figure. She expressly alleges

12  that Lavandeira made the statements about her with "actual malice" and reckless disregard for the

13  falsity of the statements. Complaint, ¶ 22. Significantly, the essential elements of defamation do

14  not include actual malice. See Civ. Code, §§ 45-46; 5 Witkin, Summary of Cal. Law (10th ed.

15  2005) Torts, § 529, p. 782. In fact, a plaintiff need only allege actual malice if he or she is a

16  public figure. See Vogel, 127 Cal.App.4th at 1017. By alleging actual malice, Ronson admits

17  that she is a limited public figure.

18        *Second,* Ronson has injected herself and/or has been drawn into the issues surrounding

19  Lohan's drug and alcohol use, the Accident, the cocaine found in Lohan's car, and her

20  relationship with Lohan by (1) voluntarily and publicly associating herself with Lohan both

21  professionally and socially and (2) by being involved with the Accident, which is a matter of

22  widespread public interest.

23               b.      **Ronson Failed to Demonstrate, By Clear and Convincing**

24                  **Evidence, that Lavandeira's Statements Were Made With**

25                  **Actual Malice**

26        Ronson was required to present clear and convincing evidence that Lavandeira acted with

27  actual malice. Christian Research Institute v. Alnor, 148 Cal.App.4th 71, 84-85 (2007). This

28  standard "presents a heavy burden, far in excess of the preponderance sufficient for most civil

1    litigation  The burden of proof by clear and convincing evidence ... *must be sufficiently strong to*
2    *command the unhesitating assent of every reasonable mind."* Id., at 84 (citations omitted &
3    emphasis added).

4         Thus, to make her showing, Ronson was required to demonstrate that Lavandeira "either
5    knew his statement was false or subjectively entertained serious doubt that his statement was
6    truthful." Id. at 84  The test is *"a subjective test, under which the defendant's actual belief*
7    *concerning the truthfulness of the publication is the crucial issue."*  McGarry v. University of
8    San Diego, 154 Cal.App.4th 97, 114 (2007) (emphasis added). *It is not a negligence test*
9    *measured by whether a reasonably prudent person would have published, or would have*
10   *investigated before publishing, the defamatory statement.* Instead, the evidence must "permit
11   the conclusion that the defendant actually had a 'high degree of awareness of ... probable
12   falsity.'" Id. (citations omitted).

13        Lavandeira presented specific evidence demonstrating that he genuinely believed that the
14   statements regarding Ronson were true and he had no doubts of that they were false  Id., ¶¶ 11,
15   19. *This evidence is uncontradicted by Ronson.* As a result, she failed to meet her burden
16   under Section 425 16

17        Ronson asserts that *Lavandeira's declaration* demonstrates that the statements were made
18   with actual malice  She is wrong.  Ronson had the affirmative burden to present evidence of
19   actual malice  She failed to do so  Instead, she asserts that actual malice is shown by
20   Lavandeira's failure to independently investigate the statements and his ill-will toward her based
21   on his hand-written scribbles over Ronson's picture and the sweatshirt bearing the words "Blame
22   Samantha." Even if Ronson had presented evidence on these issues, they are insufficient,
23   individually or in combination, to establish actual malice. Annette F. v. Sharon S., 119
24   Cal App.4th 1146 (2004) (evidence of ill-will and lack of an investigation insufficient to show
25   actual malice by clear and convincing evidence). As a result, Ronson fails to demonstrate actual
26   malice and fails to meet her burden under Section 425.16

27   / / /
28   / / /

1    **III.    <u>CONCLUSION</u>**

2         For the foregoing reasons, Lavandeira respectfully requests that the Court grant his

3    motion in its entirety and award Lavandeira attorneys' fees and costs associated with this Motion.

4

5    DATED: October 29, 2007                    FREEDMAN & TAITELMAN, LLP

6

7                                              By: _____

8                                              JACQUELINE C. BROWN
                                               Attorneys for Defendant MARIO LAVANDEIRA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAVANDEIRA'S SUPPLEMENTAL BRIEF IN SUPPORT OF
MOTION TO STRIKE COMPLAINT PURSUANT TO CCP § 425.16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF BRYAN J. FREEDMAN

I, Bryan J. Freedman, declare:

1.    I am an attorney duly authorized to practice law in the State of California and a partner in the law firm Freedman & Taitelman, LLP, counsel of record for defendant Mario Lavandeira ("Lavandeira") in the above-referenced action. I have personal knowledge of the facts set forth herein and could and would testify competently to them if called to do so.

2.    Following the hearing on October 10, 2007 regarding Lavandeira's Motion to Strike the Complaint Pursuant to Code of Civil Procedure Section 425.16 (the "Motion"), I emailed counsel for plaintiff Samantha Ronson ("Ronson") indicating that Lavandeira would be available for deposition on October 19, 2007 from 1:00 p.m. to 5:00 p.m. A true and correct copy of my email to Ronson's counsel, D. Wayne Jeffries, is attached hereto as Exhibit A.

3.    On October 15, 2006, as a professional courtesy to Ronson's counsel, Martin Garbus, I caused a court reporter to be reserved for Lavandeira's deposition.

4.    On October 16, 2006, I received a letter from Mr. Garbus, via facsimile, indicating that he and his co-counsel, Bingham McCutchen ("Bingham"), had been discharged by Ronson and that her new counsel would contact me about Lavandeira's deposition and further briefing on the Motion. A true and correct copy of Mr. Garbus's letter is attached hereto as Exhibit B.

5.    On October 22, 2006, Mr. Garbus faxed to me a declaration of Samantha Ronson stating that she consented to Mr. Garbus and Bingham withdrawing as her counsel. A true and correct copy of this facsimile is attached hereto as Exhibit C.

1    6    On October 26, 2006, I received an email from Mr. Garbus, on behalf of Ronson,

2    requesting that the parties settle this case   A true and correct copy of Mr. Garbus's email is

3    attached hereto as Exhibit D   I have received no further contact from Mr  Garbus

4

5    7    On October 29, 2007, Mr. Garbus faxed me a letter indicating that he was

6    authorized by Ronson to communicate to me that she was willing to enter into a settlement

7    agreement with Lavandeira pursuant to certain terms.  A true and correct copy of Mr. Garbus's

8    letter is attached hereto as Exhibit E.

9

10    8    To date, I have not been served with a motion to be relieved as counsel from Mr.

11    Garbus or Bingham or a substitution of attorney form.  I also have not contacted by new counsel

12    for Ronson.  Additionally, the deposition of Lavandeira has not been conducted.

13

14    I declare under penalty of perjury under the laws of the State of California that the

15    foregoing is true and correct.

16

17    Executed this 29th day of October 2007 at Los Angeles, California

18

19

20    BRYAN J. FREEDMAN

21

22

23

24

25

26

27

28

DECLARATION OF BRYAN J. FREEDMAN



**From:**    Jeffries, D  Wayne [Wayne.Jeffries@bingham com]
**Sent:**    Wednesday, October 31, 2007 2:42 PM
**To:**      Garbus, Martin; Tourin, Fredda
**Cc:**      Friedman, Bruce A ; McGee, Donna
**Subject:** Ronson

Martin:
As I previously advised you, neither Bruce nor I plan to attend the hearing tomorrow. I take that you are planning to attend. Please advise.

Wayne

========================================================================
Bingham McCutchen LLP Circular 230 Notice: To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties. Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.
========================================================================



Exhibit DD

| From: | Jeffries, D. Wayne [Wayne.Jeffries@bingham.com] |
|-------|-------------------------------------------------|
| Sent: | Thursday, November 01, 2007 5:49 AM |
| To: | Garbus, Martin; bfreedman@ftllp.com |
| Cc: | McGee, Donna |
| Subject: | RE: I trust you have the faxed stipulation from Ronson |

Why would you ever conclude that!?! Of course not. I have received nothing. You may understand that I am not pleased with having to appear this morning, when you were going to do so. wj

-----Original Message-----
From: Garbus, Martin [mailto:MGARBUS@dglaw.com]
Sent: Thursday, November 01, 2007 5:41 AM
To: Jeffries, D. Wayne; bfreedman@ftllp.com
Subject: I trust you have the faxed stipulation from Ronson

---------------------------------------------------------

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein. For more information please click on the following link:
http://www.dglaw.com/circular/

This message contains confidential information and is intended only for ayne.Jeffries@bingham.com, bfreedman@ftllp.com. If you are not Wayne.Jeffries@bingham.com, bfreedman@ftllp.com you should not disseminate, distribute or copy this e-mail. Please notify MGARBUS@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

=====================================================================================
Bingham McCutchen LLP Circular 230 Notice:   To ensure compliance with IRS requirements, we inform you that any U.S. federal tax advice contained in this communication is not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding any federal tax penalties.  Any legal advice expressed in this message is being delivered to you solely for your use in connection with the matters addressed herein and may not be relied upon by any other person or entity or used for any other purpose without our prior written consent.
=====================================================================================



Exhibit EE

| | |
|---|---|
| 1 | SUPERIOR COURT OF THE STATE OF CALIFORNIA |
| 2 | FOR THE COUNTY OF LOS ANGELES |
| 3 | DEPARTMENT 42 |

HON. ELIHU M. BERLE, JUDGE

1

2

3

4

5   SAMANTHA RONSON,                    )
                                        )   **CERTIFIED COPY**
6           PLAINTIFF,                  )
                                        )
7                                       )
            V.                          )   BC 374174
8                                       )
                                        )
9    SUNSET PHOTO AND NEWS LLC;         )
     JILL ISHKANIAN; MARIO LAVANDEIRA   )
10   d/b/a PEREZ HILTON, and DOES       )
     1-10, inclusive,                   )
11                                      )
            DEFENDANTS.                 )
12   _____)

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15

16              THURSDAY, NOVEMBER 1, 2007

17   APPEARANCES:

18

19   FOR PLAINTIFF              BINGHAM McCUTCHEN LLP
     SAMANTHA RONSON:           BY:  D. WAYNE JEFFRIES
20                              The Water Garden
                                1620 26th Street
21                              Santa Monica, CA    90404
                                (310) 907-1000
22

23   FOR DEFENDANT             FREEDMAN & TAITELMAN, LLP
     MARIO LAVANDEIRA:         BY:   BRYAN J. FREEDMAN
24                             1901 Avenue of the Stars
                               Suite 500
25                             Los Angeles, CA    90067
                               (310) 201-0005
26

27

28                             LINDA NISHIMOTO, CSR 9147
                               OFFICIAL REPORTER

```
 1    CASE NUMBER:                    BC 374174

 2    CASE NAME:                      SAMANTHA RONSON, ET AL.,

 3                                    VERSUS

 4                                    SUNSET PHOTO AND NEWS LLC

 5    LOS ANGELES, CALIFORNIA         THURSDAY, NOVEMBER 1, 2007

 6    DEPARTMENT 42                   HON. ELIHU M. BERLE, JUDGE

 7    APPEARANCES:                    (AS HERETOFORE NOTED.)

 8    REPORTER:                       LINDA NISHIMOTO, CSR NO. 9147

 9    TIME:                           A.M. SESSION

10                          ****

11                     (In open court:)

12         THE COURT:  Calling the case of Ronson versus

13    Sunset Photo.

14         MR. JEFFRIES:  Wayne Jeffries of Bingham McCutchen

15    for plaintiff.

16         MR. FREEDMAN:  Bryan Freedman, Freedman and

17    Taitelman, on behalf of defendant Mario Lavandeira.

18         THE COURT:  Good morning.  The matter is here on a

19    motion to strike the complaint pursuant to Code of Civil

20    Procedure section 425.16.

21              Does anyone wish to be heard on this?

22         MR. JEFFRIES:  No, your Honor.

23         MR. FREEDMAN:  I just want to make sure, your

24    Honor, that you received our supplemental brief that was

25    filed in support of the motion to strike.

26         THE COURT:  Yes.

27              Let me ask a couple of questions on

28    procedure.
```

1              First of all, I received a document which

2    seemed to be quite strange. This was a request for

3    dismissal of the complaint of the entire action and it was

4    signed by Mr. Martin Garbus, and Mr. Martin Garbus, of

5    course, is not counsel of record. Although he was granted

6    permission to appear pro hac vice, it was only for the

7    limited purpose of appearance with regard to the anti-SLAPP

8    motion.

9              Do you know anything about this piece of

10   paper?

11             MR. JEFFRIES: I am not sure I have seen that piece

12   of paper, your Honor. I know he wrote the court a letter.

13   I saw a copy of that, but I don't recall seeing a request

14   for dismissal by Mr. Garbus.

15             THE COURT: I consider this to be a nullity and of

16   no significance whatsoever because Mr. Garbus is not

17   attorney of record and he has no authority to dismiss this

18   case.

19             I take it from the appearance here, that as

20   far as Bingham McCutchen is concerned, the case is still

21   pending and you are attorney of record?

22             MR. JEFFRIES: Yes, your Honor. I am attorney of

23   record and the case is still pending.

24             THE COURT: And you did not dismiss the case as

25   attorney of record?

26             MR. JEFFRIES: No, your Honor.

27             THE COURT: And then the next thing I received was

28   a letter, which the court does not accept any letters, but

1   we have to acknowledge that we did receive a letter, but it

2   is of no legal significance. It was some letter and counsel

3   was copied on it, Mr. Freedman and Mr. Jeffries, and I am

4   not going to state what is in the letter because it's of no

5   significance. The way to file documents in a court

6   proceeding is to file appropriate pleadings, not to send

7   letters.

8            So with all of that, we will proceed with

9   the hearing today. I do note one other thing, which is that

10  at the hearing held on October 10, 2007, the court gave

11  plaintiff permission to file additional opposition to the

12  anti-SLAPP motion by October 24th and then defendant would

13  have permission to file an additional reply by October 29th.

14  I did receive additional papers from the defendant. I did

15  not receive any additional opposition from the plaintiff.

16            Is it correct that plaintiff did not file

17  anything in addition?

18       MR. JEFFRIES: That is my understanding, your

19  Honor.

20       THE COURT:  Okay, anything further?

21            Plaintiff, you indicated, Mr. Jeffries, that

22  you don't have anything further to say.

23            Defendant, Mr. Freedman, do you have

24  anything to add?

25       MR. FREEDMAN: Not unless the court has any

26  specific questions with respect to the motion to strike.

27       THE COURT:  Thank you.

28            Counsel, why don't you take a seat? This

 1   that defendants made any statements with malice, which as I
 2   said is a necessary requirement for plaintiff to be able to
 3   prevail given the fact plaintiff is at the very minimum a
 4   limited public figure, if not a public figure herself,
 5   plaintiff has not presented evidence to show that any
 6   statements made by the defendants were made with malice or
 7   reckless indifference.

 8              Plaintiff has not filed any supplemental
 9   papers, notwithstanding the fact that the court gave
10   plaintiff an opportunity to take the deposition of defendant
11   and to file supplemental papers.  Thus, plaintiff has not
12   met her burden to show a probability of prevailing even on
13   the minimum evidentiary standard that is required in a SLAPP
14   motion, and that is the standard of showing that she can
15   establish the elements of her case even by the standard that
16   is required of oppositions to summary judgment motions.

17              Defendant having met the burden to show that
18   this action involves statements made in a public forum on a
19   matter of public interest involving a public figure and the
20   burden having shifted to the plaintiff on the defamation
21   claim of a public figure, the court finds that plaintiff has
22   not met her burden of showing any evidence of malice, and,
23   therefore, the court is going to grant the motion of the
24   defendant to strike the complaint under Code of Civil
25   Procedure 425.16.

26              I would ask the defendant to give notice.
27                   Thank you, counsel.
28         MR. JEFFRIES:  Thank you, your Honor.

1          MR. FREEDMAN:  Thank you, your Honor.

2                Your Honor, we will submit a motion for

3    attorneys' fees.

4          THE COURT:  Yes.  Thank you.  Submit it on regular

5    notice.

6                Thank you, counsel.

7          MR. JEFFRIES:  Thank you, your Honor.

8                (Proceeding adjourned.)

1    SUPERIOR COURT OF THE STATE OF CALIFORNIA

2     FOR THE COUNTY OF LOS ANGELES

3 DEPARTMENT 42     HON. ELIHU M. BERLE, JUDGE

4

5 SAMANTHA RONSON,      )
             )
6            )
             )
7     PLAINTIFF    )
    V.        ) BC 374174
8            ) REPORTER'S
             ) CERTIFICATE
9 SUNSET PHOTO AND NEWS, LCC, et al., )
             )
10           )
     DEFENDANTS.    )
11 ―――――――――――――――――――――――――――――)

12

13 STATE OF CALIFORNIA )
         ) SS
14 COUNTY OF LOS ANGELES)

15

16   I, Linda Nishimoto, Official Reporter of the Superior

17 Court of the State of California, for the County of Los

18 Angeles, do hereby certify that the foregoing pages, 1

 through 17, inclusive, comprise a full, true and correct

19 transcript of the proceedings held on Thursday, November

20 1, 2007, in the matter of the above-entitled cause.

21

22   Dated this 8th day of November, 2007.

23

24

25

26 _____ C.S.R. 9147
  Official Reporter

27

28



Exhibit FF

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 11/01/07                                                          DEPT. 42

HONORABLE ELIHU M. BERLE        JUDGE | N DIGIAMBATTISTA        DEPUTY CLERK

HONORABLE                      JUDGE PRO TEM |                    ELECTRONIC RECORDING MONITOR
6
        C ELLIS/C.A.        Deputy Sheriff | L NISHIMOTO                Reporter

8:32 am | BC374174

        SAMANTHA RONSON                    Plaintiff
        VS                                Counsel      D. WAYNE JEFFRIES (X)
        SUNSET PHOTO AND NEWS LLC ET AL   Defendant
                                          Counsel      BRYAN J. FREEDMAN (X)

        170.6-SOHIGIAN/DEFT

**NATURE OF PROCEEDINGS:**

MOTION OF DEFENDANT, MARIO LAVANDEIRA, TO STRIKE THE
COMPLAINT PURSUANT TO CODE OF CIVIL PROCEDURE SECTION
425.16

Matter comes on for hearing.

The court advises counsel that the dismissal as to the
complaint lodged with the court on October 15, 2007,
by Mr. Garbas is considered a nullity and will not be
filed because Mr. Garbas is not counsel of record.

The motion to strike the complaint pursuant to Code of
Civil Procedure Section 425.16 is granted. Defendants
have met their burden to show that this libel action
involves claimed statements of defendants made in a
public forum on a matter of public interest about a
public figure or a limited public figure. Thus, de-
fendants have demonstrated that this action is within
the ambit of Code of Civil Procedure Section 425.16.
In response, plaintiff has not presented evidence to
establish a probability that plaintiff will prevail on
her claim for libel. Specifically, plaintiff has not
presented any evidence to show malice on the part of
defendants, a necessary element for a claim of defa-
mation by a public figure.

Accordingly, the complaint is ordered dismissed this
date. The case management conference set for Decem-
ber 12, 2007, is advanced to this date and ordered

                Page    1 of  2    DEPT. 42

MINUTES ENTERED
11/01/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 11/01/07 | | | DEPT. 42 |
|---|---|---|---|
| HONORABLE ELIHU M. BERLE | JUDGE | N DIGIAMBATTISTA | DEPUTY CLERK |
| HONORABLE 6 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| C ELLIS/C.A. | Deputy Sheriff | L NISHIMOTO | Reporter |

| 8:32 am | BC374174 | Plaintiff Counsel | D. WAYNE JEFFRIES (X) |
|---|---|---|---|
| | SAMANTHA RONSON VS SUNSET PHOTO AND NEWS LLC ET AL | Defendant Counsel | BRYAN J. FREEDMAN (X) |
| | 170.6-SOHIGIAN/DEFT | | |

**NATURE OF PROCEEDINGS:**

vacated.

Counsel for defendants is to give notice and to pre-
pare the appropriate order. Any motion for attorney's
fees is to be filed on regular notice.

Page   2 of  2    DEPT. 42

MINUTES ENTERED
11/01/07
COUNTY CLERK



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

DAVIS & GILBERT LLP,

        Plaintiff,

   -against-

SAMANTHA RONSON,

        Defendant.

Index No. 60 8759/07

Date of Filing: November 13, 2007.

**SUMMONS**

Plaintiffs designate New York
County, as the place of trial based
upon CPLR 503 (a).

**TO THE ABOVE-NAMED DEFENDANT: SAMANTHA RONSON**

YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a
copy of your answer on plaintiffs' attorneys within 20 days after service of this Summons,
exclusive of the day of service (or within 30 days after the service is complete if this
Summons is not personally delivered to you within the State of New York) and in the case
of your failure to appear or answer, judgment will be taken against you by default for the
relief demanded in the Complaint.

Dated: New York, New York
     November 7, 2007

                         DAVIS & GILBERT LLP

                         By:
                            Martin Garbus
                            1740 Broadway
                            New York, New York 10019
                            (212) 468-4800

Address:

Samantha Ronson
5210 North Rossmore Avenue
Apt. 102
Los Angeles, CA 90004

NEW YORK
COUNTY CLERK'S OFFICE

NOV 13 2007

NOT COMPARED
WITH COPY FILE

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

DAVIS & GILBERT LLP,

        Plaintiff,

   -against-

SAMANTHA RONSON,

        Defendant.

Index No.  603759/07

**VERIFIED COMPLAINT**

Davis & Gilbert LLP, as attorneys pro se, for its Verified Complaint against defendant hereby alleges as follows:

## AS AND FOR A FIRST CAUSE OF ACTION

### (Breach of Contract)

1.     Plaintiff Davis & Gilbert LLP ("D&G" or "Plaintiff") is a New York limited liability partnership which engages in the practice of law with its principal place of business in New York City.

2.     Upon information and belief, defendant Samantha Ronson ("Ronson") is an individual residing in the State of California, City of Los Angeles, with an address at 5210 North Rossmore Avenue, Apt. 102, Los Angeles, CA 90004.

3.     Upon information and belief, Ronson transacts or has transacted business in the State of New York, and Plaintiff's claims arise from said transaction of business.

NEW YORK
COUNTY CLERK'S OFFICE

  ₹ 2007

NOT COMPARED
WITH COPY FILE

4.    Venue is proper pursuant to CPLR § 503 because plaintiff's principle place of business is in New York, and because the acts giving rise to the causes of action in this complaint occurred within New York County.

5.    By letter dated June 8, 2007, and agreed to on June 19, 2007, Ronson retained D&G as legal counsel to represent Ronson in connection with lawsuits to be filed against websites which defamed Ronson

6.    The services rendered by D&G and by Bingham McCutchen LLP ("Bingham"), California counsel retained by D&G, were duly accepted by Ronson.

7.    Statements for the services rendered by D&G and by Bingham for Ronson and costs incurred by D&G and by Bingham on behalf of Ronson presently outstanding, total for Bingham $23,340.17 and for D&G $141,590.55, for a total of $164,930.72.

8.    Despite demands, Ronson has failed to pay D&G and Bingham.

9.    D&G and Bingham have performed all services required by them on behalf of Ronson.

10.    One of the defendants, Celebrity Babylon, sued in a libel case, by Plaintiffs, on behalf of Ronson, issued a retraction, agreed to feature that retraction on its website and agreed to have that retraction on Ronson's website. Celebrity Babylon also agreed to remove any references on its website to any allegations that Ronson ever used drugs. The other defendant, Mario Lavandeira, was to be deposed at the time that Plaintiffs were discharged.

11.    Defendant, after stating she intended to pay for the services rendered, claimed she was unable to pay the legal fees. She failed to return calls, missed

2

appointments, and otherwise acted in an unprofessional manner, making the presentation of the case, and the settlement with Celebrity Babylon, exceedingly difficult. Defendant then discharged Plaintiffs to seek a contingency lawyer.

12.     There is, at present, due to D&G from Ronson the sum of $164,930.72.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Unjust Enrichment)

13.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 12 of the Complaint as if set forth fully herein.

14     D&G and Bingham rendered services for, and incurred expenses on behalf of, Ronson

15     Ronson knew such services were being performed and such expenses were being incurred by D&G and Bingham with the expectation of payment, and Ronson acquiesced to said services being performed and said expenses being incurred, and accepted the same and received the benefits therefrom.

16.     Said services rendered by D&G and by Bingham, and expenses incurred by D&G and Bingham, on behalf of Ronson are reasonably worth the sum of $164,930.72.

17.     There is at present due and owing to D&G from Ronson the sum of $164,930.72.

3

## AS AND FOR A THIRD CAUSE OF ACTION

### (Statement of Account)

18.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 17 of the Complaint as if set forth fully herein.

19.    Plaintiff submitted a statement of account to Ronson for D&G for the period beginning June 6, 2007 and ending October 16, 2007, totaling $141,590.55 beyond the original retainer.

20.    Plaintiff submitted a statement of account to Ronson for Bingham's services for the period September 4, 2007 and ending September 30, 2007, totaling $23,340.17.

21.    Ronson accepted Plaintiff's statement of account, saying she would work out a payout but has failed to do so.

22.    There is presently due from Ronson to Plaintiffs the sum of $164,930.72, plus incterest from October 16, 2007.

WHEREFORE, Plaintiff demands judgment against Ronson as follows:

(a)    On the First Cause of Action, the sum of $164,930.72, plus interest from October 16, 2007;

(b)    On the Second Cause of Action, the sum of $164,930.72, plus interest from October 16, 2007;

(c)    On the Third Cause of Action, the sum of $164,930.72, plus interest from October 16, 2007;

(d)    The costs and disbursements of this action; and

4

(e)    Such other and further relief as the Court deems necessary and

proper.

Dated:        New York, New York
              November _9_, 2007


                                      DAVIS & GILBERT LLP


                            By: _____
                                      Martin Garbus
                                      Attorneys Pro Se
                                      1740 Broadway
                                      New York, New York 10019
                                      (212) 468-4800

5

## VERIFICATION

COUNTY OF NEW YORK    )
                           ) ss:

STATE OF NEW YORK      )

       MARTIN GARBUS, being duly sworn, deposes and says:

       I have read the foregoing Complaint and know the contents thereof; the same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe it to be true. This verification is made by me because I am a member of the firm of Davis & Gilbert LLP, the Plaintiff in the above-captioned matter, and am familiar with the facts therein.

Subscribed and sworn to before me
this _13th_ day of November 2007

LYNN M. LITTLE
Notary Public, State of New York
No. 01L-16043500
Qualified in Kings County
Commission Expires June 19, 20__
Certification File in NY County

6



Exhibit HH

Dec 11  2007  3:51PM    David Bass & Associates                    No 5869    P  6

MC–050

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| David M. Bass (State Bar No. 117199)<br>Michael J. Gulden (State Bar No. 243383)<br>DAVID M. BASS & ASSOCIATES<br>2029 Century Park East, 14th Floor<br>Los Angeles, CA 90067 | **ORIGINAL FILED**<br>LOS ANGELES |

TELEPHONE NO.: (310) 789-1152   FAX NO. *(Optional)*: (310) 789-1149
E-MAIL ADDRESS *(Optional)*: dbass@basslawla.com
ATTORNEY FOR *(Name)*: Plaintiff Samantha Ronson

DEC 17 2007

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

SUPERIOR COURT
By: ___ VICTOR E. SINO-CRUZ
DEPUTY

CASE NAME: Samantha Ronson v. Sunset Photo and News, LLC et al

| SUBSTITUTION OF ATTORNEY—CIVIL<br>(Without Court Order) | CASE NUMBER:<br>BC374174 |
|---|---|

THE COURT AND ALL PARTIES ARE NOTIFIED THAT *(name)*: Samantha Ronson    makes the following substitution:

1 Former legal representative  ☐ Party represented self  ☒ Attorney *(name)*: Martin Garbus, James Levine
2 New legal representative  ☐ Party is representing self*  ☒ Attorney David M. Bass
  a Name: David M. Bass          b State Bar No *(if applicable)*: 117199
  c. Address *(number, street, city, ZIP, and law firm name, if applicable)*: David M. Bass & Associates, 2029
   Century Park East, 14th Floor, Los Angeles, CA 90067.

  d. Telephone No *(include area code)*:    (310) 789-1152
3 The party making this substitution is a  ☒ plaintiff ☐ defendant ☐ petitioner ☐ respondent ☐ other *(specify)*:

---

**\*NOTICE TO PARTIES APPLYING TO REPRESENT THEMSELVES**

- Guardian
- Conservator
- Trustee
- Personal Representative
- Probate fiduciary
- Corporation
- Guardian ad litem
- Unincorporated association

If you are applying as one of the parties on this list, you may NOT act as your own attorney in most cases. Use this form to substitute one attorney for another attorney. SEEK LEGAL ADVICE BEFORE APPLYING TO REPRESENT YOURSELF.

---

**NOTICE TO PARTIES WITHOUT ATTORNEYS**
A party representing himself or herself may wish to seek legal assistance. Failure to take timely and appropriate action in this case may result in serious legal consequences.

4 I consent to this substitution
  Date: December 17, 2007

Samantha Ronson
  (TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY)

5 ☒ I consent to this substitution
  Date: December 12, 2007

Martin Garbus (Admitted Pro Hac Vice)
  (TYPE OR PRINT NAME)                                    (SIGNATURE OF FORMER ATTORNEY)

6 ☒ I consent to this substitution
  Date: December 11, 2007
David M. Bass
  (TYPE OR PRINT NAME)                                    (SIGNATURE OF NEW ATTORNEY)

Page 1 of 2

Form Adopted For Mandatory Use
Judicial Council of California
MC-050 [Rev. January 1 2007]

(See reverse for proof of service by mail)
SUBSTITUTION OF ATTORNEY—CIVIL
(Without Court Order)

Legal
Solutions
& Plus

Code of Civil Procedure, §§ 284(1), 285;
Cal Rules of Court, rule 3.1362

1

**PROOF OF SERVICE**
[C C P , §§1013(a) and 2015.5]

2

3    **STATE OF CALIFORNIA**          )    Case No. BC374174
                                       )
4    **COUNTY OF LOS ANGELES**        )

5        I am employed in the county of Los Angeles, State of California. I am over the age of
18 and not a party to the within action; my business address is 2029 Century Park East,
6    14th Floor, Los Angeles, California 90067

7        On December 17, 2007, I served the foregoing document described as
**SUBSTITUTION OF ATTORNEY** on all interested parties in this action by placing the
8    original/true copies thereof enclosed in (a) sealed envelope(s) addressed as stated below:

9    Bryan J. Freedman, Esq.                    Gregory L. Doll, Esq
     Jacqueline C. Brown, Esq.                  Michael A. Amir, Esq
10   Freedman & Taitelman, LLP                  Doll, Amir & Eley LLP
     1901 Avenue of the Stars, Suite 500        1888 Century Park East, Suite 1106
11   Los Angeles, CA 90067-6027                 Los Angeles, CA 90067

12
     Maurice Wainer, Esq.                       Martin Garbus, Esq.
13   Snipper, Wainer & Markoff                  Davis & Gilbert LLP
     Penthouse, 270 North Canon Drive           1740 Broadway
14   Beverly Hills, CA 90210                    New York, NY 10019

15   Bruce A. Friedman, Esq.
     Bingham McCuthen LLP
16   1620 26th Street
     Fourth Floor, North Tower
17   Santa Monica, CA 90404

18   ☒    **BY MAIL**    I am "readily familiar" with the firm's practice of collection and
          processing of correspondence for mailing. Under that practice it would be deposited
19        with U.S. Postal Service on that same day with postage thereon fully prepaid at Los
          Angeles, California in the ordinary course of business. I am aware that on motion of the
20        party served, service is presumed invalid if postal cancellation date or postage meter
          date is more than one day after date of deposit for mailing in affidavit.

21   ☐    **BY (OVERNIGHT COURIER)**    I deposited such envelope in the receptacle for
          **Federal Express** and requested that it be delivered to the above-named
22        attorneys/parties by way of priority next day delivery (to be delivered by 10:00 a.m. the
          following morning).
23

24       I declare under penalty of perjury under the laws of the State of California that the
     foregoing is true and correct.
25
         Executed on December 17, 2007, at Los Angeles, California.
26

27        _____
                          Joon Kim
28

PROOF OF SERVICE



Exhibit II

1 | David M. Bass (State Bar No. 117199)
Peter M. Cho (State Bar No. 213870)

2 | DAVID M. BASS & ASSOCIATES
1900 Avenue of the Stars, Suite 200

3 | Los Angeles, California 90067
Telephone: (310) 789-1152

4 | Facsimile: (310) 789-1149
Email: dbass@basslawla.com

5

6 | Attorneys for Plaintiff
SAMANTHA RONSON

7

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 0 1 2008

John A. Clarke, Executive Officer/Clerk

BY MARY GARCIA, Deputy

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | FOR THE COUNTY OF LOS ANGELES

10

11 | SAMANTHA RONSON, an individual,        Case No.    BC390043

12 |              Plaintiff,               COMPLAINT FOR:

13 | vs.                                   1)    NEGLIGENCE;

14 | MARTIN GARBUS, an individual; DAVIS   2)    BREACH OF CONTRACT;
     & GILBERT, LLP, a New York limited
15 | liability partnership; BINGHAM        3)    BREACH OF THE IMPLIED
     McCUTCHEN LLP, a Massachusetts             COVENANT OF GOOD FAITH
16 | limited liability partnership; and DOES 1   AND FAIR DEALING; AND
     through 20, inclusive,
17 |                                       4)    BREACH OF FIDUCIARY DUTY
                  Defendants.
18

19 | ///

20 | ///

21 | ///

22 | ///

23 | ///

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

COMPLAINT